TRB Loan #

# LOAN AGREEMENT

THIS LOAN AGREEMENT (this "Agreement") dated effective as of January 30, 2020 ("Date Hereof"), is made by and between TEXAS REPUBLIC BANK, N.A. ("Lender"), and FHC ACQUISITION, LLC, a Texas limited liability company (individually and collectively, the "Borrower").

## ARTICLE I.
## DEFINITIONS

For purposes of this Agreement, in addition to other terms defined herein, the following terms shall have the respective meanings assigned to them.

**1.1 Advance.** The term "Advance" shall mean a disbursement from Lender's account to or for the benefit of Borrower of any of the proceeds of the Loan in accordance with any of the provisions of this Agreement or of any of the other Loan Documents.

**1.2 Affiliate.** The term "Affiliate" shall mean, with respect to any Person, another Person that directly or indirectly through one or more intermediaries, Controls, or is Controlled by or is under common Control with, the Person specified.

**1.3 Approved Purpose.** The term "Approved Purpose" means the proceeds of the Loan are to be used to acquire the Property.

**1.4 Assignment of Contract Rights.** The term "Assignment of Contract Rights" shall mean the Assignment of Contract Rights and Proceeds, pursuant to which Borrower will assign to Lender all of its rights, titles, and interests in and to the Master Development Agreement, the Performance Agreements, and all proceeds related thereto, as each may be amended, supplemented or modified from time to time.

**1.5 Assignment of Licenses.** The term "Assignment of Licenses" shall mean the Assignment of Licenses, Permits, and Approvals pursuant to which Borrower will assign all of its rights, titles, and interests in and to any and all governmental instrumentalities and authorities in connection with the acquisition, ownership, operation, construction, use, leasing or occupancy of the land and improvements on the Property.

**1.6 Assignment of Money Market Account.** The term "Assignment of Money Market Account" shall mean that certain Assignment of Money Market Account Agreement executed by Borrower and assigning to Lender the Reserve Account as more particularly described therein.

**1.7 Assignment of Leases.** The term "Assignment of Leases" shall mean that certain Assignment of Leases and Rents pursuant to which Borrower will assign to Lender all of the landlord's interest in the Leases, lease proceeds and/or rents from the Property.

**1.8 <u>Code</u>.** The term "Code" shall mean the Uniform Commercial Code of the State of Texas.

**1.9 <u>Consultant</u>.** The term "Consultant" shall mean all architects, engineers, landscape architects, consultants and other professionals providing services to Borrower in connection with the operation and management of the Property and approved by Lender.

**1.10 <u>Control</u>.** The term "Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract, or otherwise. Without limiting the generality of the foregoing, a Person (the "subject Person") shall be deemed to be "Controlled" by another Person if such other Person possesses, directly or indirectly, power to vote 50% or more of the securities having ordinary voting power for the election of directors, managing general partners, or equivalent governing body of the subject Person.

**1.11 <u>Debt</u>.** The term "Debt" shall mean for any Person: (i) all indebtedness, whether or not represented by bonds, debentures, notes or other evidences of indebtedness, for the repayment of money borrowed; (ii) all indebtedness representing deferred payment of the purchase price of property or assets; (iii) all indebtedness under any lease which, in conformity with GAAP, is required to be capitalized for balance sheet purposes; (iv) all indebtedness under the guaranty, endorsements, assumptions or other contingent obligations, in respect of, or to purchase or otherwise acquire, indebtedness to others; and (v) all indebtedness secured by a Lien existing on property owned, subject to such Lien, whether or not the indebtedness secured thereby shall have been assumed by the owner thereof.

**1.12 <u>Debtor Relief Laws</u>.** The term "Debtor Relief Laws" shall mean any applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, insolvency, reorganization, or similar laws affecting the rights or remedies of creditors generally, as in effect from time to time.

**1.13 <u>Default Rate</u>.** The term "Default Rate" shall mean the rate of interest per annum equal to the Maximum Rate.

**1.14 <u>Event of Default.</u>** The term "Event of Default" shall have the meaning set forth in Section 5.1 of this Agreement.

**1.15 <u>Environmental Indemnity Agreement</u>.** The term "Environmental Indemnity Agreement" shall mean that certain Hazardous Materials Indemnity Agreement dated of even date herewith, executed by Borrower and Guarantor, as indemnitor, for the benefit of Lender, as the same may be amended, supplemented or modified from time to time.

**1.16 <u>FCDC Performance Agreement</u>.** The term "FCDC Performance Agreement" shall mean that certain Performance Agreement dated effective as of December 30, 2019 between Frisco Community Development Corporation, a Texas non-profit corporation, and Borrower.

**1.17 <u>FEDC Performance Agreement</u>.** The term "FEDC Performance Agreement" shall mean that certain Performance Agreement dated effective as of December 31, 2019 between Frisco Economic Development Corporation, a Texas non-profit corporation, and Borrower.

**1.18 <u>Financial Statements</u>.** The term "Financial Statements" shall mean the balance sheets, profit and loss statements, reconciliations of capital and surplus, changes in financial condition, schedules of sources and applications of funds, and other financial information of Borrower and Guarantor, heretofore furnished to Lender or required to be furnished to Lender under the terms of this Agreement or any other of the Loan Documents from time to time, which statements shall be prepared in such scope, detail and form as shall be acceptable to Lender, and shall be certified by such parties.

**1.19 <u>Financing Statements</u>.** The term "Financing Statements" shall mean the Form UCC-1 or other Code financing statements perfecting the security interest securing the Loan, to be filed with the appropriate offices for the perfection of a security interest in any of the Property.

**1.20 <u>GAAP</u>.** The term "GAAP" shall mean generally accepted accounting principles in the United States set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or such other principles as may be approved by a significant segment of the accounting profession in the United States, that are applicable to the circumstances as of the date of determination, consistently applied.

**1.21 <u>Governmental Authority</u>.** The term "Governmental Authority" shall mean the United States, the State of Texas, the County of Collin, the City of Frisco, or any other political subdivision in which the Property is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Borrower, the Property, or the Improvements.

**1.22 <u>Governmental Requirements</u>.** The term "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Borrower, Guarantor, or the Property.

**1.23 <u>Guaranty</u>.** The term "Guaranty" shall mean that certain Guaranty of even date herewith executed by Guarantor for the benefit of Lender.

**1.24 <u>Guarantor</u>.** The term "Guarantor" mean Timothy Barton.

**1.25 <u>Hazardous Materials</u>.** The term "Hazardous Materials" shall have the meaning set forth in Section 3.19 of this Agreement.

**1.26 <u>Hazardous Materials Laws</u>.** The term "Hazardous Materials Laws" mean all laws, ordinances and regulations relating to Hazardous Materials, including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 <u>et</u> <u>seq</u>.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 <u>et</u> <u>seq</u>.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 <u>et</u> <u>seq</u>.; the Comprehensive

Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; and, all comparable state and local laws, laws of other jurisdictions or orders and regulations (including, without limitation, the Texas Water Code, the Texas Health & Safety Code and the Texas Solid Waste Disposal Act).

**1.27 Improvements.** The term "Improvements" shall mean all improvements now or hereafter located on the Property.

**1.28 Inspecting Consultants/Engineers.** The term "Inspecting Consultants/Engineers" shall mean the engineer chosen by Lender, or its replacement as selected by Lender.

**1.29 Laws.** The term "Laws" shall mean all applicable statutes, laws, ordinances, regulations, orders, writs, injunctions, decisions, opinions or decrees of any Governmental Authority or any Tribunal.

**1.30 Leases.** The term "Leases" shall mean all leases, master leases, subleases, licenses, concessions, or other agreements (whether written or oral) that grant to third parties a possessory interest in or the right to use or occupy any part of the Property, together with all security and other related deposits or payments made in connection therewith.

**1.31 Lien.** The term "Lien" shall mean any lien, mortgage, security interest, pledge, charge, or encumbrance of any kind, including, without limitation, a mechanic's lien, a materialman's lien, the rights of a vendor, lessor, or similar party under any conditional sales agreement or other title retention agreement or lease substantially equivalent thereto, and any other right of or arrangement with any creditor to have his claim satisfied out of any property or assets, or the proceeds therefrom, prior to the general creditors of the owner thereof.

**1.32 Loan.** The term "Loan" shall mean the Loan by Lender to Borrower, in an amount not to exceed the Maximum Funding Obligation, to be used for the Approved Purpose, as well as any involuntarily advanced funds in excess of the principal Loan amount which Lender deems necessary to advance to maintain the quality of the Improvements and the Property, and to preserve and to protect collateral covered by the Loan Documents and Lender's status as a first lienholder as to the Property, Improvements, and other collateral for the Loan.

**1.33 Loan Documents.** The term "Loan Documents" shall mean this Agreement, the Mortgage, the Note, the Guaranty, the Assignment of Licenses, the Assignment of Contract Rights, the Assignment of Leases, the the Assignment of Money Market Account, the Environmental Indemnity Agreement, the Financing Statements, and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower, Guarantor, or any other party to Lender pursuant to this Agreement.

**1.34** **Management Agreement.** The term "Management Agreement" shall mean any property management agreement for the Property executed by and between Borrower and Property Manager, and approved by Lender in writing.

**1.35** **Master Development Agreement.** The term "Master Development Agreement" shall mean that certain Master Development Agreement dated effective as of December 31, 2019 between the City of Frisco, Texas, a municipal corporation of the State of Texas and a home rule municipality, Frisco Economic Development Corporation, a Texas non-profit corporation, Frisco Community Development Corporation, a Texas non-profit corporation, and Borrower.

**1.36** **Material Agreement.** The term "Material Agreement" shall mean any material written or oral agreement, contract, commitment, promissory note, lease or understanding executed by Borrower requiring payments, pledges, or performance by Borrower executed in connection with the Property over the term of any such agreement, contract, commitment or understanding in excess of Fifty Thousand and No/100 Dollars ($50,000.00) to which the person or entity in question is a party, by which such person or entity is directly or indirectly bound, jointly or severally bound, contingently or directly liable, or to which any assets of such person or entity may be subject, which is not cancelable by such person or entity upon thirty (30) days' or less notice without liability for further payment other than a nominal penalty.

**1.37** **Maximum Funding Obligation**. The term "Maximum Funding Obligation" shall mean an amount not to exceed Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00).

**1.38** **Maximum Rate.** The term "Maximum Rate" shall mean during the term of the Loan the maximum permissible amount which may be paid or agreed to be paid to Lender or the holder of the Note, or collected by Lender or such holder, for the use, forbearance, or detention of the Loan or for the payment of or performance of any covenant obligation contained in any of the Loan Documents under applicable federal or state usury laws.

**1.39** **Mortgage.** The term "Mortgage" shall mean that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing conveying to David L. Baty, as Trustee for the benefit of Lender, the Property as security for the payment of the Obligations and the payment and performance of all obligations specified in the Mortgage, this Agreement, and the other Loan Documents, as the same may be amended, supplemented or modified from time to time.

**1.40** **Note.** The term "Note" shall mean that certain Promissory Note from Borrower to Lender of even date herewith in the amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00) and evidencing the Loan, and all extensions, renewals and modifications thereof.

**1.41** **Obligated Party.** The term "Obligated Party" shall mean Borrower, Guarantor, any Person that now or hereafter guarantees the Obligations, and their respective successors and assigns.

**1.42 <u>Obligations</u>.** The term "Obligations" shall mean all obligations, indebtedness and liabilities of any Obligated Party to Lender, now existing or hereafter created, acquired or incurred, whether direct, indirect, primary or secondary, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, regardless of whether such present or future indebtedness, obligations and liabilities may, prior to their acquisition by such Obligated Party, be or have been in favor of some other person or have been acquired by such Obligated Party in a transaction with one or more borrowers, together with any and all renewals and extensions of such indebtedness, obligations and liabilities, including, without limitation, the obligations, indebtedness and liabilities of any Obligated Party under this Agreement, the Note, the Guaranty, and the other Loan Documents, and all interest accruing thereon and all attorneys' fees and other expenses incurred in the enforcement or collection thereof, and including interest and fees that accrue after the commencement by or against any Obligated Party or any Affiliate thereof of any proceeding under any Debtor Relief Laws naming such Person as the debtor in such proceeding, regardless of whether such interest and fees are allowed claims in such proceeding.

**1.43 <u>Origination Fee</u>.** The term "Origination Fee" shall mean a loan origination fee in the amount of Twenty-Nine Thousand Six Hundred Fifty-Seven and 83/100 Dollars ($29,657.83) to be paid to Lender on the date hereof, if not previously paid, in consideration of Lender's originating the Loan to Borrower and of the commitment of Lender to make the proceeds of the Loan available to Borrower from time to time during the term of this Agreement in accordance with the terms hereof.

**1.44 <u>Performance Agreements</u>.** The term "Performance Agreements" shall mean, collectively, the FCDC Performance Agreement and the FEDC Performance Agreement.

**1.45 <u>Person</u>.** The term "Person" shall mean any individual, trustee, corporation, general partnership, limited partnership, limited liability company, joint stock company, trust, unincorporated organization, bank, business association, firm, joint venture, or Governmental Authority.

**1.46 <u>Property</u>.** The term "Property" shall mean the real property described as being **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas**, together with the Improvements and all other property described in the Mortgage.

**1.47 <u>Property Manager</u>.** The term "Property Manager" shall mean such entities engaged to provide property management services to the Property as selected by Borrower and approved by Lender pursuant to the terms of this Agreement.

**1.48 <u>Reserve Account</u>.** The term "Reserve Account" means the account to be established by Borrower with Lender and pledged to Lender as security for the Loan, as more particularly described in the Assignment of Account.

**1.49 Taxes.** The term "Taxes" shall mean all taxes, assessments, fees, levies, imposts, duties, deductions, withholdings, or other charges of any nature whatsoever from time to time or at any time imposed by any Laws or by any Tribunal.

**1.50 Title Company.** The term "Title Company" shall mean Chicago Title Insurance Company.

**1.51 Tribunal.** The term "Tribunal" shall mean any court, department, commission, board, bureau, agency, or instrumentality of any Governmental Authority.

**1.52 Underwriting Fee.** The term "Underwriting Fee" shall mean an underwriting fee in the amount of Two Thousand and No/100 Dollars ($2,000.00) to be paid to Lender on the date hereof, if not previously paid, in consideration of Lender's underwriting of the Loan.

**1.53 Writings.** The term "Writings" shall have the meaning set forth in Section 3.13 of this Agreement.

## ARTICLE II.
## ADVANCES

**2.1 Commitment of Lender.** Subject to the provisions of this Agreement, and provided that an Event of Default has not occurred, and no event or condition which with the giving of notice or the passage of time or both would constitute an Event of Default has occurred and remains uncured to Lender's sole satisfaction, Lender will extend the Loan to Borrower in a single Advance for the Approved Purpose. Notwithstanding the forgoing to the contrary, Lender has the right, but not the obligation, to make Advances of principal under the Loan in excess of the Maximum Funding Obligation (i) pay any portion of the Obligations that may be due and owing at any time under the Loan Documents; and (ii) preserve the Collateral or the Property, or enforce its rights under the Loan Documents.

**2.2 General Conditions Precedent.** Lender shall not be obligated to disburse all or any portion of the Loan, unless at or prior to the time of the making of such disbursement, the following conditions have been fulfilled:

(a) All representations and warranties set forth in this Agreement and in all other Loan Documents shall be true and complete.

(b) Borrower is in full compliance with all of the covenants, agreements, obligations and undertakings required to be performed by Borrower under this Agreement and under the other Loan Documents unless compliance thereof shall have been waived in writing by Lender.

(c) No Event of Default as defined herein or in any other Loan Documents, and no event or condition which with the notice or the passage of time or both as prescribed herein or in such other Loan Documents, would constitute any such Event of Default has occurred.

(d) There shall have been no material adverse change in the net income or condition of the Property or in the business or financial condition or management of Borrower or Guarantor and the Property shall not have suffered any damage by fire or other casualty, and no condemnation or adverse zoning or usage change proceedings shall have been commenced or threatened.

(e) All statements contained in all certificates, statements and data furnished to Lender by or on behalf of Borrower or in connection with the transactions contemplated by this Agreement or any of the other Loan Documents are true and complete, and there are no facts or events known to Borrower which, if disclosed to Lender, would make such statements, certificates or data untrue.

(f) All documentation shall at all times be in form and content acceptable to Lender.

**2.3 Interest on the Loan.** Interest on the Loan, at the rate specified in the Note, shall be (i) computed on the unpaid principal balance which exists from time to time, as more particularly set forth in the Note; and (ii) paid in accordance with the terms and provisions of the Note.

**2.4 Use of Advances.** Borrower shall disburse all Advances for payment of costs and expenses related to the Approved Purpose.

**2.5 Direct Disbursement and Application by Lender.** Lender shall have the right, but not the obligation, to disburse and apply the proceeds of any Advance to the satisfaction of any of Borrower's obligations hereunder directly to the Title Company and any other person or firm to whom payment is due under this Agreement or any other Loan Documents. Any Advance by Lender for such purpose shall be part of the Loan and shall be secured by the Loan Documents. Borrower hereby authorizes Lender to hold, use, disburse, and apply the Loan for the Approved Purpose, expenses incident to the Loan and the Property, and the payment or performance of any portion of the Obligations, including, without limitation, interest on the Loan, any Loan fees owing to Lender, legal fees of Lender's attorneys which are payable by Borrower, and such other sums as may be owing from time to time by Borrower to Lender with respect to the Obligations. Such payments may be made, at the option of Lender, by (a) debiting or charging Borrower's Loan account in the amount of such payments without first disbursing such amounts to Borrower, or (b) advancing all or any part of the amount of such payments to Borrower and then invoicing Borrower therefor. No further direction or authorization from Borrower shall be necessary to warrant such direct Advances and all such Advances shall satisfy pro tanto the obligations of Lender hereunder and shall be secured by the Loan Documents as fully as if made directly to Borrower. Notwithstanding the other provisions of this paragraph, nothing in this Agreement is intended to be for the benefit of, nor may be enforced by, nor should be relied upon by, any person, firm or corporation other than Borrower.

**2.6 Advances Do Not Constitute A Waiver.** No Advance shall constitute a waiver of any of the conditions precedent to Lender's obligations to make further Advances nor, in the event Borrower is unable to satisfy any such condition, shall any such waiver have the effect of

precluding Lender from thereafter declaring such inability to be an Event of Default or any event which with notice and/or passage of time could be an Event of Default.

**2.7 <u>Conditions to the Single Advance</u>.** As a condition precedent to the single Advance hereunder, Borrower must satisfy the conditions required hereby and set forth elsewhere in this Agreement and deliver to Lender, the documents, certificates, and other items that are set forth below, together with such other documents, instruments, and certificates as Lender, or its legal counsel, may require from time to time:

(a) The general conditions set forth in Section 2.2 of this Agreement shall have been satisfied;

(b) The Origination Fee;

(c) The Underwriting Fee;

(d) The Loan Documents duly executed and in recordable form by Borrower and, other parties thereto, if applicable;

(e) A mortgagee's title insurance policy, in form and content satisfactory to Lender, to be obtained at Borrower's expense insuring that the Mortgage constitutes a valid first Lien in the Property, free and clear of all defects and encumbrances except (i) the Lien secured by the Deed of Trust, (ii) such defects and encumbrances as Lender shall approve in writing and shown on the Commitment for Title Insurance issued by Title Company in connection with the Loan under G.F. No. 4712010652 (the "Permitted Exceptions"), (iii) the electric services agreement to be entered into between Grantor and CoServ in place of an existing electric services agreement that is the subject of a recorded memorandum of electric services agreement, and (iv) the Performance Agreements, and naming Lender as insured mortgagee, issued by the Title Company, in the maximum principal amount of the indebtedness owing or to be owing to Lender on account of the Loan, with no exceptions or exclusions other than as may be approved by Lender in writing and containing any endorsements required by Lender;

(f) The insurance policies or certificates of such insurance policies as specified in Section 4.8 herein;

(g) Borrower's compliance with or satisfaction of all conditions, covenants, and requirements, applicable to the Leases;

(h) Evidence that all applicable zoning ordinances or restrictive covenants affecting the Property permit the use for which the Property is intended and have been or will be complied with;

(i) Evidence of the Property's compliance with the requirements of all applicable "environmental protection" laws, rules, codes and regulations, whether federal, state, or municipal and that the Improvements, if any, are in compliance

with all Governmental Requirements relating to the use, occupancy and operation thereof and construction of the Improvements and evidence of the Property's compliance with the National Earthquake Hazards Reduction Program Recommended Provisions;

(j) Evidence that all of the streets providing access to the Property either have been dedicated to public use or established by private easement, duly recorded in the records of the County in which the Property is located, and have been fully installed and accepted by the applicable Governmental Authority, with all costs and expenses of the installation and acceptance thereof having been paid in full, and that there are no restrictions on the use and enjoyment of such streets that adversely affect, limit, or impair Borrower's ability to develop and construct the Property or operate the Property for the purposes and in the manner represented to Lender;

(k) Evidence of the availability for hook-up at the boundaries of the Property of all utilities and other related services to the Property including specifically, but without limitation, gas, electricity, telephone, waste removal, water services and storm and sanitary sewer facilities;

(l) Evidence satisfactory to Lender's legal counsel that all necessary action on the part of Borrower and Guarantor has been taken with respect to the execution and delivery of this Agreement and the Loan Documents and the consummation of the transactions contemplated hereby, so that this Agreement and all Loan Documents to be executed and delivered by or on behalf of Borrower and Guarantor will be valid and binding upon Borrower, Guarantor, or the person or entity executing and delivering such document in accordance with its terms. Such evidence shall include the legal opinion of legal counsel for Borrower and Guarantor, as approved by Lender, confirming such authority, validity, and binding effect of the documents in accordance with their terms, confirming that neither the Loan nor any of the financing arrangements contemplated by this Agreement violate the usury laws of the State of Texas, and covering such other matters as Lender may require in form and content reasonably acceptable to Lender's legal counsel and containing no exceptions other than such as may be acceptable to Lender and its legal counsel;

(m) An environmental audit for the Property, either a ASTM Transaction Screen or a Phase 1, conducted by an environmental firm acceptable to Lender, and certified to Lender, in form and content satisfactory to Lender;

(n) An appraisal and appraisal review of the Property acceptable to Lender and addressed to Lender;

(o) Satisfaction of such other assurances, certificates, documents, consents, evidence of perfection of all Liens securing the Obligations, or opinions as Lender may require;

(p) The governing documents of Borrower;

(q) The Assignment of Money Market Account;

(r) Evidence that Borrower has opened its primary operating account with Lender prior to Loan closing;

(s) An executed copy of the FCDC Performance Agreement, which FCDC Performance Agreement shall be in form and substance satisfactory to Lender;

(t) An executed copy of the FEDC Performance Agreement, which FEDC Performance Agreement shall be in form and substance satisfactory to Lender;

(u) An executed copy of the Master Development Agreement, which Master Development Agreement shall be in form and substance satisfactory to Lender; and

(v) Executed Lease between Borrower and each tenant of the Property in form and substance satisfactory to Lender.

**2.8 Conditions Precedent for the Benefit of Lender.** All conditions precedent to the obligation of Lender to make any Advance are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make any Advance in the absence of strict compliance with such conditions precedent. All requirements of this Agreement may be waived by Lender, in whole or in part, at any time.

**2.9 Maximum Funding Obligation.** Lender shall have no obligation to make Advances in excess of amounts Borrower has properly qualified in advance to receive in accordance with the terms of this Agreement, and Lender shall have no obligation to make Advances under this Loan in excess of the Maximum Funding Obligation; provided however, such Maximum Funding Obligation is subject to the terms of Section 2.1 hereof.

**2.10 Setoff.** Lender shall have the right to set off and apply against the Obligations in such manner as Lender may determine, without prior notice to Borrower, any and all deposits (general or special, time or demand, provisional or final) or other sums at any time credited by or owing from Lender to Borrower. As further security for the Obligations of Borrower, Borrower hereby grants to Lender a security interest in all money, instruments and other property of Borrower now or hereafter held by Lender, including, without limitation, property held in safekeeping. In addition to Lender's right of setoff and as further security for the Obligations of Borrower, Borrower hereby grants to Lender a security interest in all deposits (general or special, time or demand, provisional or final) and other accounts of Borrower now or hereafter on deposit with or held by Lender and all other sums at any time credited by or owing from Lender to Borrower. The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

**2.11 Auto-Debit.** Borrower shall repay the accrued but unpaid interest and unpaid principal amount of the Loan in accordance with the terms as more particularly described in the Note. Borrower authorizes and instructs Lender to debit Borrower's accounts established with Lender each time a payment comes due under the Note and apply same towards satisfaction of the Obligations as they come due.

**2.12 Reserve Account.** At the initial closing of the Loan, Borrower shall deposit its own funds in cash in the amount of $372,500.00 into the Reserve Account. The funds on deposit in the Reserve Account shall be used for servicing the first twelve (12) months of interest accrual on the Note and ad valorem taxes on the Property and may be paid in accordance with the auto-debit provisions set forth in Section 2.11 above. Borrower authorizes and instructs Lender to debit the Reserve Account as and when the Obligations come due without notice to Borrower or Guarantor. To the extent sums are not available in the Reserve Account to service the principal and interest payments due under the Note, Borrower shall be responsible for making any shortfall payments to keep the Obligations current. Notwithstanding anything contained in the foregoing to the contrary, Borrower is and remains responsible for the payment and performance of the Obligations and for the performance all covenants, obligations, and agreements contained in the Loan Documents.

## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES OF BORROWER

**3.1 The Financial Statements.** The Financial Statements are true, correct, and complete as of the dates specified therein and fairly present the financial condition of Borrower and Guarantor as of the dates specified. No material adverse change has occurred in the financial condition of Borrower or Guarantor.

**3.2 Suits, Actions, Etc.** There are no actions, suits, or proceedings pending or threatened in any court or before or by any Governmental Authority against or affecting Borrower, Guarantor or the Property, or involving the validity, enforceability, or propriety of any of the Loan Documents, at law or in equity. The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the other Loan Documents, will not result in a breach of, or constitute a default in, any mortgage, deed of trust, deed to secure debt, lease, promissory note, loan agreement, credit agreement, operating agreement, or other agreement to which Borrower or Guarantor is a party or by which Borrower or Guarantor may be bound or affected.

**3.3 Valid and Binding Obligation.** All of the Loan Documents, and all other documents referred to herein to which Guarantor or Borrower is a party, upon execution and delivery will constitute valid and binding obligations of Borrower and Guarantor, enforceable in accordance with their terms.

**3.4 Title to the Property.** Borrower holds good and indefeasible legal and equitable title to the Property.

**3.5 No Default.** Borrower and Guarantor are not in default in the payment of the principal of, or interest on, any Debt, nor are Borrower or Guarantor in default under any

instrument or agreement under or subject to which any Debt has been issued, and no event has occurred under the provisions of any instrument which, with or without the lapse of time or the giving of notice or both, constitutes or will constitute an event of default of Borrower or Guarantor thereunder.

**3.6** **Approval and Consent.** No approval, authorization, or consent of any Tribunal or Governmental Authority that has not yet been received, is required for the proper execution, delivery, and performance of this Agreement or the other Loan Documents.

**3.7** **Flood Plain and Wetlands.** No portion of the Property is located within a designated flood hazard area as identified by the Secretary of Housing and Urban Development in the Flood Disaster Protection Act of 1973 (42 U.S.C. § 4001-4128) or is designated a wetlands area requiring a Section 404(b) Permit under the Federal Water Pollution Control Act, as amended or the Rivers and Harbors Act of 1899.

**3.8** **Taxes.** All federal, state, foreign, and other tax returns of Borrower and Guarantor required to be filed have been filed, and no deficiency, claim, controversy or dispute exists with respect to any federal, state, foreign, and other taxes imposed upon Borrower or Guarantor.

**3.9** **Purpose of Loan.** None of the proceeds of the Advances will be used for any purpose that is contrary to, or that would result in a violation of, any Laws.

**3.10** **Properties; Liens.** Borrower has good and indefeasible title to all properties listed as assets on Borrower's Financial Statements, and there is no Lien on any asset of Borrower, except for the Lien held by Lender on the Property.

**3.11** **Financial Condition.** Borrower and Guarantor are solvent and there has been no material adverse change in the financial condition of Borrower or Guarantor between the date of the most recent Financial Statements submitted to Lender and the date this warranty is made or deemed to have been made.

**3.12** **Damage; Condemnation.** No casualty or damage of any kind has occurred to the Property, any portion thereof, any improvements thereon or any appurtenances thereto. Borrower has not received notice with respect to (and Borrower does not know of) any actual or threatened taking of the Property or any portion thereof, for any public or quasi-public purpose by the exercise of the right of condemnation or eminent domain.

**3.13** **General.** There are no facts or conditions relating to the Loan Documents, the Property, and/or the financial condition and business of Borrower or any Guarantor and which have not been related, in writing, to Lender. Additionally, all writings heretofore or hereafter exhibited or delivered to Lender by or on behalf of Borrower ("Writings") are and will be genuine and in all respects are what they purport and appear to be, and the Writings do not omit or fail to disclose facts of such character that, if omitted, would cause the Writings as submitted to be materially misleading.

**3.14 Material Agreements.** Borrower is not directly, indirectly, or contingently obligated with respect to any Material Agreements relating to the Property.

**3.15 Property Compliance.** The Property will comply, during the term of this Agreement, with all applicable subdivision, platting, building, land use, environmental, safety and zoning Laws and requirements and all requirements contained within any of the title exceptions approved by Lender in writing.

**3.16 Roads.** The Property has access to and from public streets and roads adequate for its intended use, subject to temporary closing for construction purposes; all such streets and roads have been completed, dedicated to the public use and accepted for all purposes (including, but not limited to, maintenance) by the appropriate Governmental Authority.

**3.17 Utility Services.** All utility services, in sufficient size and capacity, necessary for the construction of the Improvements and the operation thereof for the intended use of the Property are available at the boundaries of the Property, consisting of water supply, storm and sanitary sewer facilities, electric, gas, and telephone facilities.

**3.18 Permits.** Borrower has secured all necessary building and other permits and consents (such permits and consents to be unconditional) for the operation of the Property.

**3.19 Hazardous Materials.** No portion of the Property has been used to generate, store or dispose of, on, under or about the Property, or transport to or from the Property, any hazardous wastes, toxic substances or related materials ("Hazardous Materials"). For purposes of this Section 3.19, Hazardous Materials shall include, but not be limited to, substances defined as "Hazardous Substances" or "Toxic Substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9061, et seq.; and in the regulations adopted and publications promulgated pursuant to such statute now or in the future.

**3.20 Federal Small Business Certification.** Borrower represents, warrants and certifies to Lender, that none of the principals of Borrower or their affiliates have been convicted of, or pleaded nolo contender to, any offense covered by 42 U.S.C. §16911(7). For purposes of this subsection, the term "principal" means: (a) with respect to a sole proprietorship, the proprietor; (b) with respect to a partnership, each managing partner and each partner who is a natural person and holds a twenty percent (20.00%) or more ownership interest in the partnership; and (c) with respect to a corporation, limited liability company, association or development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of twenty percent (20.00%) or more of the ownership stock or stock equivalent of the entity.

**3.21 Leases.** There are no Leases affecting the Property or any portion thereof.

## ARTICLE IV.
## COVENANTS AND AGREEMENTS OF BORROWER

**4.1 Compliance with Governmental Requirements.** Borrower shall timely comply with all Governmental Requirements and deliver to Lender evidence thereof. Borrower assumes full responsibility for the compliance of the Property with all Governmental Requirements and requirements of the Leases and with sound building and engineering practices and, notwithstanding any approvals by Lender, Lender shall have no obligation or responsibility whatsoever for any matter incident to the Property.

**4.2 Inspection of the Property.** Borrower shall permit Lender, Inspecting Consultants/Engineers, and any Governmental Authority, and their agents and representatives, to enter upon the Property for the purpose of inspection of the Property.

**4.3 Notices by Governmental Authority, Fire and Casualty Losses, Etc.** Borrower shall timely comply with and promptly furnish to Lender true and complete copies of any official notice or claim by any Governmental Authority pertaining to the Property. Borrower shall immediately notify Lender of any fire or other casualty or any notice of taking or eminent domain action or proceeding affecting the Property.

**4.4 Costs and Expenses.** Borrower shall promptly pay Lender upon demand all costs and expenses incurred by Lender in connection with: (a) the preparation of this Agreement and all other Loan Documents and the closing of the Loan and any amendment, supplement, or modification of, or any waiver or consent under or with respect to, any of the Loan Documents; and (b) the enforcement or satisfaction by Lender of any of Borrower's obligations under this Agreement or the other Loan Documents. For all purposes of this Agreement, Lender's costs and expenses shall include, without limitation, all appraisal fees, cost engineering and inspection fees, legal fees, environmental consultant fees and the cost to Lender of any title insurance premiums and title surveys (including, without limitation, the costs and expenses of the inspection of the Property by the Inspecting Consultants/Engineers). Borrower recognizes and agrees that formal written appraisals of the Property and Improvements by a licensed independent appraiser may be required by Lender's internal procedures and/or federal regulatory reporting requirements on an annual and/or specialized basis and that Lender may, at its option, require inspection of the Property and Improvements by an independent supervising consultant and/or cost engineering specialist.

**4.5 Additional Documents.** Borrower shall execute and deliver to Lender, from time to time as requested by Lender, such other documents as shall be necessary to provide the rights and remedies to Lender granted or provided for by the Loan Documents.

**4.6 Inspection of Books and Records.** Borrower shall permit Lender, at all any time, to examine and copy the books and records of Borrower pertaining to the Loan and the Property. Such books and records of Borrower shall be kept in accordance with GAAP.

**4.7 No Liability of Lender.** Lender shall not be obligated to inspect the Property, nor be liable for the performance or default of Borrower, Consultant, the Inspecting Consultants/Engineers, or any other party, or for the performance of any obligation of Borrower

whatsoever. Nothing, including without limitation any Advance or acceptance of any document or instrument, shall be construed as a representation or warranty, express or implied, to any party by Lender.

**4.8** **Insurance.** Borrower shall maintain in full force until full payment of the Loan such insurance on the Property as is satisfactory in all respects to Lender, including, without limitation:

> (a) Commercial general liability insurance covering Borrower, in such amounts as Lender may require, but in any event not less than One Million and No/100 Dollars ($1,000,000.00) bodily injury and/or property damage liability per occurrence.

Lender reserves the right herein, when it deems it necessary, to require additional physical damage hazard insurance. Casualty and business interruption or rental insurance policies shall name Lender as mortgagee under New York (or equivalent, in other areas) long form noncontributory endorsement and evidenced by the delivery of the original or certified copy of the policy to Lender. Liability and worker's compensation insurance shall be evidenced by a certificate of insurance issued to Lender. All insurance required herein shall be issued by responsible carriers acceptable to Lender and guarantee at least thirty (30) days prior written notice to Lender of cancellation, non-renewal or material change.

**4.9** **No Conditional Sale Contracts, Etc.** No materials, equipment, or fixtures shall be supplied, purchased, or installed for the construction or operation of the Improvements pursuant to security agreements, conditional sale contracts, lease agreements, or other arrangements or understandings whereby a security interest or title is retained by any party or the right is reserved or accrues to any party to remove or repossess any materials, equipment, or fixtures intended to be utilized in the construction or operation of the Improvements.

**4.10** **Defense of Actions.** Lender may (but shall not be obligated to) commence, appear in, or defend any action or proceeding purporting to affect the Loan, the Property, or the respective rights and obligations of Lender and Borrower pursuant to this Agreement. Lender may (but shall not be obligated to) pay all necessary expenses, including attorneys' fees and expenses incurred in connection with such proceedings to actions, which Borrower agrees to repay to Lender upon demand.

**4.11** **Bills of Sale.** Borrower shall deliver to Lender, on demand, any contracts, bills of sale, statements, receipted vouchers or agreements under which Borrower claims title to any materials, fixtures or articles incorporated in the Improvements or subject to the Lien or security title of the Loan Documents.

**4.12** **Leases.** Borrower shall not, without the prior written consent of Lender, enter into any Leases. Borrower shall deliver to Lender copies of all Leases affecting the Property upon the execution of same and upon the renewal of same.

**4.13** **Additional Security.** As additional security for the payment of the Loan, Borrower hereby irrevocably assigns to Lender and grants to Lender a security interest in all

Advances disbursed to Borrower and Borrower's interest in all Loan funds held by Lender, whether or not disbursed. Lender shall have, in addition to all rights and remedies provided herein, and in the other Loan Documents, all of the rights and remedies of a "secured party" under the Code.

**4.14 <u>Prohibition on Transfers</u>.** Borrower shall not, without the prior written consent of Lender, transfer, convey, assign, encumber or otherwise dispose of the Property, the Improvements, or any part thereof or any interest of Borrower therein, except for Borrower's obligations under that certain Parking Development and Easement Agreement among Borrower, IGO – USA LP, a Texas limited partnership and IGO – Frisco 1 LLC, a Texas limited liability company, and Lender dated December 19, 2019 and recorded in the Real Property Records of Collin County (the "Parking Development and Easement Agreement"), to dedicate one hundred twenty (120) parking spaces to IGO – USA LP, a Texas limited partnership, IGO – Frisco 1 LLC, a Texas limited liability company, and their Benefitted Parties (as that term is set forth in the Parking Development and Easement Agreement) and grant IGO – USA LP, a Texas limited partnership, IGO – Frisco 1 LLC, a Texas limited liability company, and their Benefitted Parties (as that term is set forth in the Parking Development and Easement Agreement) an easement for pedestrian and vehicular ingress and egress, all as more particularly set forth in the Parking Development and Easement Agreement.

**4.15 <u>No Assignment by Borrower</u>.** This Agreement may not be assigned by Borrower without the written consent of Lender. If Lender approves an assignment hereof by Borrower, Lender shall be entitled to make Advances to such assignee and such Advances shall be secured by the Loan Documents. Borrower shall remain liable for payment of all sums advanced hereunder before and after such assignment.

**4.16 <u>Further Assurance of Title</u>.** If at any time Lender's legal counsel is of the opinion that any Advance is not secured or will or may not be secured by the Loan Documents as a first Lien or first priority security interest on the Property, then Borrower shall, upon demand, do all things and matters necessary to assure to the satisfaction of Lender's counsel that any advance previously made hereunder or to be made hereunder is secured or will be secured by the Loan Documents as a first Lien or first priority security interest on the Property, and Lender, at its option, may decline to make further Advances hereunder until Lender has received such assurance.

**4.17 <u>Payment of Claims</u>.** Borrower shall promptly pay or cause to be paid when due all costs and expenses incurred in connection with the Property, and Borrower shall keep the Property free and clear of any Liens, charges, or claims other than Liens held by Lender.

**4.18 <u>Restrictions and Annexation</u>.** Borrower shall not impose any restrictive covenants, easements, sharing agreements or encumbrances upon the Property, execute or file any subdivision plat affecting the Property, or consent to any assessments burdening the Property without the prior written consent of Lender.

**4.19 <u>Advertising by Lender</u>.** Borrower agrees that during the term of the Loan Lender shall have the right to place a sign for display upon the Property describing in general terms Lender's participation in such transaction.

**4.20** **Financial Statements; Tax Returns; Other Information**. Borrower shall furnish, or cause Guarantor to furnish, to Lender the following financial statements and information:

a. As soon as available, but in no event later than thirty (30) days after filing of same with the Internal Revenue Service each year, in any event no later than October 31st of each year, a true and correct copy of Borrower's and Guarantor's annual tax return, including all schedules and K-1 filings, for the immediately preceding calendar year, signed by Borrower and Guarantor, respectively, and filed with the Internal Revenue Service.

b. Annually on December 31 of each year, proof of insurance on the Property and Borrower's assets as required in the Loan Documents.

c. Annually, and at least before January 31 of each year evidence that all ad valorem taxes on the Property have been paid.

d. Promptly, such additional information concerning Borrower and Guarantor as Lender may request.

Borrower shall cause the Guarantor to deliver to Lender such Financial Statements and tax returns as required under the Guaranty.

**4.21** **Notification of Adverse Changes.** Borrower and Guarantor shall promptly notify Lender of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Borrower or Guarantor or would materially and adversely affect the value of the Property or any portion thereof.

**4.22** **Indemnification. Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all claims, charges, actions, suits, proceedings, lawsuits, obligations, liabilities, fines, penalties, costs and expenses, including, but not limited to, attorneys' fees incurred by Lender, alleged by or in favor of Borrower or any principal, partner, stockholder, officer, director, employee or agent thereof, or by or in favor of any broker, realtor, agent or other party claiming brokerage commissions or finder's fees in connection with entering into this Agreement or the transactions contemplated hereby (other than for claims for commissions or fees claimed by persons or parties employed or engaged by Lender), or in connection with making or collecting the Loan or enforcing the Loan Documents. Borrower shall further indemnify Lender and hold Lender harmless against any and all liabilities (including any and all taxes and special assessments levied against the Property or any improvements, fixtures, or personal property located thereon), obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses, and disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against Lender, in any way relating to, or arising out of, the Loan Documents or any of the transactions contemplated therein, or the construction and/or operation of the Property, to the extent that any such indemnified liabilities result, directly or indirectly, from any claims made or actions, suits, or proceedings commenced by or on behalf of any person or entity other than Lender. The obligations and provisions of this**

**paragraph shall continue and remain in full force and effect after the Loan and other obligations of Borrower under this Agreement and under the other Loan Documents have been paid or discharged in full and shall survive the termination of this Agreement and the repayment of the Loan.**

**4.23 Termination.** Lender, at its option, may terminate this Agreement and its obligation to make any Advance upon the occurrence of any Event of Default.

**4.24 Third-Party Agreements; Management Fee.** Borrower shall not execute or enter into any agreement with any unrelated third party providing for management and operation of the Property and/or the Improvements without the prior written consent of Lender. Borrower shall not terminate, replace or appoint any Property Manager or terminate or amend any Management Agreement for the Property and/or the Improvements without Lender's prior written approval. Any change in ownership or control of any Property Manager shall be cause for Lender to reapprove such Property Manager and Management Agreement. Each Property Manager shall hold and maintain all necessary licenses, certifications and permits required by law. Borrower shall fully perform all of its covenants, agreements and obligations under any Management Agreement.

**4.25 Prohibition on Additional Debt and Transfer of Assets**. **BORROWER WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER (WHICH MAY BE WITHHELD IN LENDER'S SOLE AND ABSOLUTE DISCRETION), (A) CREATE, INCUR OR ASSUME ANY ADDITIONAL DEBT, EXCEPT DEBT OWED TO LENDER; (B) SELL, TRANSFER, MORTGAGE, ASSIGN, PLEDGE, LEASE, GRANT A SECURITY INTEREST IN OR ENCUMBER ANY OF BORROWER'S ASSETS, INCLUDING, WITHOUT LIMITATION, THE PROPERTY; OR (C) SELL WITH RECOURSE ANY OF BORROWER'S ACCOUNTS, EXCEPT TO LENDER.** In addition, Borrower hereby acknowledges and agrees that notwithstanding anything contained in the organizational documents of the Borrower, while the Loan is outstanding, Borrower shall not (a) now or in the future own any asset or property other than (i) the Property and (ii) incidental personal property necessary for the ownership or operation of the Property, or (b) engage in any business other than the ownership, development, management, leasing and operation of the Property, and conduct and operate its business other than as presently conducted and operated.

**4.26 Maintenance of Existence**. Borrower will maintain and preserve its existence and assets and all rights, franchises and other authority necessary for the conduct of its business and will maintain and preserve its property, equipment and facilities in good order, condition and repair. Lender may, at any time, visit and inspect any of the properties of Borrower.

**4.27 Dissolution or Change of Ownership**. (a) Borrower shall not dissolve or liquidate, or merge with or be consolidated into any other entity, or attempt to do any of the same, without the prior written consent of Lender; and (b) Borrower shall not allow, consent or permit any member of Borrower or any Person having a controlling interest in any member of Borrower to sell, assign, transfer, convey, pledge, mortgage, encumber or grant a security interest in any of the membership interests in Borrower or ownership interest in any member of Borrower, without the prior written consent of Lender.

**4.28** **Restricted Payments**. Borrower will not declare or pay any dividends or make any other payment or distribution (in cash, property, or obligations) on account of its equity interests, or redeem, purchase, retire, or otherwise acquire any of its equity interests, or set apart any money for a sinking or other analogous fund for any dividend or other distribution on its equity interests or for any redemption, purchase, retirement, or other acquisition of any of its equity interests.

**4.29** **Mergers, Acquisitions and Dissolutions**. Borrower will not become a party to a merger or consolidation, or purchase or otherwise acquire all or a substantial part of the assets of any Person or any shares or other evidence of beneficial ownership of any Person, nor shall Borrower be permitted to dissolve or liquidate.

**4.30** **Management**. Borrower shall not change and shall not permit to be changed the persons holding the executive management positions of Borrower, without the prior written consent of Lender. For purposes of this Section 4.30, executive management positions shall mean the Chief Executive Officer, President, General Partner, Managing Member, and/or Manager of Borrower.

**4.31** **Subordination Agreements.** All Debt owed by Borrower to members of Borrower and any Affiliates of Borrower shall be subordinated to the Debt owed to Lender, and Borrower shall cause such members and Affiliates to execute subordination agreements in form and substance satisfactory to Lender.

**4.32** **Limitation on Liens.** Borrower will not incur, create, assume, or permit to exist any Lien upon any of its property, assets, or revenues, whether now owned or hereafter acquired.

**4.33** **Contingent Liabilities.** Borrower will not assume, guarantee, endorse, contingently agree to purchase or otherwise become liable upon the obligation of any Person.

**4.34** **Loans and Investments**. Borrower will not make any advance, loan, extension of credit, or capital contribution to, or investment in, or purchase, any stock, bonds, notes, debentures, or other securities of, any Person, other than investments approved by Lender.

**4.35** **Limitation on Issuance of Equity**. Borrower will not at any time issue, sell, assign, or otherwise dispose of (a) any of its equity interests, (b) any securities exchangeable for or convertible into or carrying any rights to acquire any of its equity interests, or (c) any option, warrant, or other right to acquire any of its equity interests.

**4.36** **Transactions With Affiliates**. Borrower will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Borrower, however Borrower may utilize a related Affiliate of Borrower for the purpose of managing the Property and for performing certain pre-development activities on the Property related to any architectural and concept plans and other similar activities.

**4.37 Depository Relationship.** To induce Lender to establish the interest rate provided for in the Note, and if and to the extent permitted by applicable laws, Borrower will establish and maintain with Lender its primary operating account.

**4.38 Hotel Agreements.** Notwithstanding any conflict herein or within any Loan Document, Lender consents to Borrower negotiating and entering into any hotel management, franchise, brand, license, services, or related agreement related to the operation and management of a hotel, including any leasing of residences as part of a project developed on the Property at, on, or above market terms, provided (i) Borrower provides to Lender an executed copy of any such hotel management, franchise, brand, license, services, or related agreement executed by Borrower upon execution, and (ii) Lender approves any subordination, non-disturbance, and attornment agreement or similar type agreement.

## ARTICLE V.
## EVENTS OF DEFAULT

**5.1 Default.** Any one or more of the following events shall constitute an "Event of Default" hereunder and under the Loan Documents:

(a) The failure or refusal of any Obligated Party shall fail to pay when due the Obligations or any part thereof, and such default in payment is not cured within ten (10) days after written notice of same is sent to Borrower; provided, however, Lender shall not be required to furnish such notice more than two (2) times in any calendar year;

(b) The failure or refusal of any Obligated Party to punctually and properly to perform, observe and comply with any covenant, agreement or condition contained in any of the Loan Documents (which does not otherwise include the payment of the monetary Obligations covered by Section 5.1(a) above) and such failure to perform, observe, or comply is not fully cured within thirty (30) days after written notice of same is sent to Borrower;

(c) An "Event of Default" as such term is defined in the Mortgage or any other Loan Document;

(d) Any representation or warranty made by Borrower to Lender in any of the Loan Documents or in any other certificate or document furnished to Lender in connection with the Loan or in furtherance of the requirements of this Agreement or of any other Loan Documents shall be incorrect or misleading at the time when made or at the time when reaffirmed or deemed reaffirmed by the terms of this Agreement relating to conditions precedent to Lender's obligation to make Advances;

(e) If a Lien for the performance of work or the supply of materials or any other Lien, whether for federal, state or local taxes or otherwise is filed against the Property, tor any part thereof;

(f) If a receiver, liquidator or trustee of Borrower, Guarantor, or of the Property or of any substantial portion of Borrower's or any Guarantor's properties, shall be appointed; if a petition in bankruptcy or for reorganization or for protection under any Debtor Relief Laws shall have been filed against Borrower or Guarantor and the same is not withdrawn, dismissed, cancelled or terminated within ninety (90) days; if Borrower or Guarantor make an assignment for the benefit of creditors or files or consent to the filing of a petition in bankruptcy or for protection under any Debtor Relief Laws or commence or consent to the commencement of any proceeding under the Federal Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of Borrower or Guarantor or the arrangement or rearrangement or readjustment of the debts of Borrower or Guarantor or having the effect of enjoining or staying the exercise of rights or remedies by creditors, it being understood that the filing against Borrower or Guarantor of such a petition by a member or manager of Borrower shall be deemed to be a filing with the consent of Borrower; if there is an attachment or sequestration of or relating to the Property or to any other substantial portion of any other assets of Borrower or Guarantor and the same is not promptly discharged;

(g) If Borrower shall cause, institute or fail to contest any proceeding for the dissolution or termination of Borrower;

(h) If Borrower ceases to do business or terminates its business as presently conducted for any reason whatsoever;

(i) If any condemnation, eminent domain or other taking proceedings shall have commenced against the Property (or any portion thereof) which Lender, in its sole judgment, believes will adversely affect the value of the Property;

(j) If any Obligated Party shall die or cease to exist;

(k) The failure or refusal by any of the Guarantor to comply with the terms and covenants of the Guaranty;

(l) The sale, encumbrance or other unauthorized transfer of the Property or any portion thereof, without Lender's prior written consent;

(m) If, in the opinion of Lender, there is a material adverse change in the financial condition of any Obligated Party, or Lender deems itself not fully secured based on the value of the Property;

(n) If Borrower shall fail to perform, observe and comply with any covenant, agreement or condition contained in the Master Development Agreement, and such failure continues beyond all applicable notice and cure periods set forth in the Master Development Agreement;

(o) If Borrower shall fail to perform, observe and comply with any covenant, agreement or condition contained in the Performance Agreements, and such failure continues beyond all applicable notice and cure periods set forth in the Performance Agreements; or

(p) If any member of Borrower or any Person having a controlling interest in any member of Borrower sells, assigns, transfers, conveys, pledges, mortgages, encumbers or grants a security interest in any of the membership interests in Borrower or ownership interest in any member of Borrower, without the prior written consent of Lender.

## ARTICLE VI.
## RIGHTS AND REMEDIES OF LENDER

**6.1 Rights of Lender.** Upon the occurrence of any one or more Events of Default, Lender shall have the right, in addition to any other right or remedy of Lender under the Loan Documents or at equity or under applicable law, but not the obligation, in its own name or through an agent or in the name of Borrower, to enter into possession of the Property; to perform all work necessary to complete the construction and equipping of the Improvements substantially in accordance with Governmental Requirements, and the requirements of any Lease approved by Lender; and to do anything necessary or desirable in Lender's sole judgment to fulfill the obligations of Borrower hereunder and under the other Loan Documents, including the right to avail itself of and procure performance of any construction contract and subcontractors or to let new or additional contracts with a new general contractor or the same subcontractors or to others; and to employ watchmen and other safeguards to protect the Property. Without restricting the generality of the foregoing, and for the purposes aforesaid, Borrower hereby appoints Lender as the attorney-in-fact of Borrower, with full power of substitution, and in the name of Borrower, if Lender elects to do so, upon the occurrence of an Event of Default, to (a) use such sums as are necessary, including any proceeds of the Loan to employ such consultants, engineers, inspectors, rental agents, managers and contractors as may be required for the purpose of completing the construction of the Improvements substantially in the manner contemplated by the plans and Governmental Requirements, (b) execute all applications and certificates in the name of Borrower which may be required for completion of construction of the Improvements, (c) endorse the name of Borrower on any checks or drafts representing proceeds of the insurance policies, or other checks or installments payable to Borrower with respect to the Property, (d) do every act with respect to the construction of the Improvements which Borrower may do, (e) prosecute or defend any action or proceeding incident to the Property, (f) to do all things necessary in Lender's sole judgment, to complete construction, finishing and equipping of the Improvements and to rent, operate and manage the Improvements, and to pay operating costs and expenses, including management fees, of every kind and nature in connection therewith so that the same shall be operational and usable for its intended purpose, all in the name of Borrower, Lender or both; (g) pay interest when due on all amounts disbursed hereunder (either by adding such interest to the principal balance of the Loan or paying the same in cash); (h) pay, settle or compromise all existing bills and claims which may be or become Liens or security interests, or to avoid such bills and claims becoming Liens against the Property, or against fixtures or equipment, or as may be necessary or desirable for the completion of construction or for the equipping and operation of the Improvements; (i) prosecute and defend all actions or

proceedings in connection with the Property or any equipment or fixtures; (j) the right, to be exercised in Lender's sole discretion, to terminate any remaining obligations under this Agreement; (k) apply for and obtain, by appropriate judicial action, appointment of a receiver or receivers for all or any part of the Property as a matter of right, without regard to the sufficiency of the security, without any showing of insolvency, fraud or mismanagement on the part of Borrower and without the necessity of filing judicial proceedings (other than for the appointment of the receiver(s)) to protect or enforce the rights of Lender (and Borrower hereby consents to such appointment); and (l) exercise any right or remedy as may be available to Lender under the Loan Documents or at equity or under applicable law. The power-of-attorney granted hereby is a power coupled with an interest and is irrevocable. Lender shall have no obligation to undertake any of the foregoing actions, and if Lender should do so, it shall have no liability to Borrower for the sufficiency or adequacy of any such actions taken by Lender. All cost and expenses, including all attorneys' fees in connection with the matters contemplated in this Section 6.1 shall be payable by Borrower on demand, and if not promptly paid, shall be added to the principal of the Loan and shall be secured by all of the Loan Documents. The power-of-attorney granted hereby is a power coupled with an interest and irrevocable by action of Borrower without the joinder of Lender. Lender shall have no obligation to undertake any of the foregoing actions, and if Lender should do so, it shall have no liability to Borrower for the sufficiency or adequacy of any such actions taken by Lender.

**6.2** **Acceleration.** Upon the occurrence of an Event of Default, Lender may, at its option, declare the Loan immediately due and payable without notice of any kind, Borrower hereby waiving expressly, but not by way of limitation, notice of default, notice of intent to accelerate and notice of acceleration.

**6.3** **Cessation of Advances.** Upon the occurrence of an Event of Default, the obligation of Lender to make any Advance and all other obligations of Lender hereunder and under the Loan Documents shall at Lender's option, immediately terminate; provided, however, that nothing in this paragraph shall be deemed to limit the other provisions of this Agreement setting forth the conditions precedent to Lender's obligation to make any Advance or the conditions under which Lender may refuse to make further disbursements or to limit Lender's option to make further Advances at Lender's sole option notwithstanding the occurrence of one or more Events of Default.

**6.4** **Funds of Lender.** Any funds of Lender used for any purpose referred to in this Article VI shall constitute Advances secured by the Loan Documents and shall bear interest at the Default Rate.

**6.5** **No Waiver or Exhaustion.** No waiver by Lender of any of its rights or remedies hereunder, in the other Loan Documents, or otherwise, shall be considered a waiver of any other or subsequent right or remedy of Lender; no delay or omission in the exercise or enforcement by Lender of any rights or remedies shall ever be construed as a waiver of any right or remedy of Lender; and, no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of Lender.

**6.6** **Performance by Lender.** Should any covenant, duty, or agreement of Borrower fail to be performed after the occurrence of an Event of Default (or during a potential Event of

Default if, in Lender's opinion, an emergency exists) in accordance with the terms of the Loan Documents, Lender may, at its option, perform, or attempt to perform, such covenant, duty, or agreement on behalf of Borrower. In such event, Borrower shall, at the request of Lender, promptly pay to Lender any amount expended by Lender in such performance or attempted performance, together with interest thereon at the Default Rate from the date of such expenditure by Lender until paid. Notwithstanding the foregoing, it is expressly understood that Lender does not assume and shall never have, except by express written consent of Lender, any liability or responsibility for the performance of any duties of Borrower hereunder or in connection with all or any part of the Property.

**6.7 Use or Operation by Lender.** Should all or any part of the Property come into the possession of Lender, Lender may use or operate the same for the purpose of preserving it or its value, or pursuant to the order of a court of appropriate jurisdiction, or in accordance with any other rights held by Lender in respect thereof. The risk of accidental loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for failure to obtain or maintain insurance, or to determine whether any insurance ever in force is adequate as to amounts or as to the risks insured, or for decline in the value of the Property.

**6.8 Diminution in Collateral Value.** Lender does not assume, and shall never have, any liability or responsibility for any loss or diminution in the value of all or any part of the Property.

**6.9 Cumulative Rights.** All rights available to Lender under the Loan Documents shall be cumulative of and in addition to all other rights granted to Lender at law or in equity, whether or not any sums be due and payable to Lender and whether or not Lender shall have instituted any suit for collection, foreclosure, or other action in connection with the Loan Documents.

**6.10 Acceptance of Assignments and Items Delivered.** By acceptance of delivery of copies of, or by taking an assignment of or security interest in, any of the items delivered to or received by Lender pursuant to this Agreement, including, but not limited to, the Material Agreements, Lender shall not be deemed to have approved same or to have assumed any liability, obligation, or responsibility whatsoever in connection therewith except as expressly stated in the Loan Documents.

**6.11 Delegation of Duties and Rights.** Lender may exercise any of its duties and/or exercise any of its rights under the Loan Documents by or through its officers, directors, employees, attorneys, agents, or other representatives.

**6.12 Lender Not in Control.** None of the covenants or other provisions contained in this Agreement shall, or shall be deemed to, give Lender the right or power to exercise control over the affairs of Borrower, the power of Lender being limited to the right to exercise the remedies provided in this Article VI and elsewhere in the Loan Documents.

## ARTICLE VII.
## GENERAL TERMS AND CONDITIONS

**7.1 Modifications.** No provision of this Agreement or the other Loan Documents may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver or termination is sought to be enforced.

**7.2 Severability.** In case any of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided, however, if the disregard of such provision would frustrate the intent and purposes of this Agreement, Lender may petition any court having jurisdiction in equity to render a judgment modifying the disregarded provision(s) of this Agreement so as to carry out such intent and purposes.

**7.3 Election of Remedies.** Lender shall have all of the rights and remedies granted in the Loan Documents in addition to such rights and remedies that may be available to Lender at law or in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower, Guarantor, or any property covered under the Loan Documents at the sole discretion of Lender. The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and such exercise or failure to exercise shall be nonexclusive.

**7.4 Form and Substance.** All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender and its legal counsel.

**7.5 Savings Clause.** It is the intention to the parties hereto to comply with all applicable federal and state laws relating to usury; that is, laws limiting charges for the use, detention or forbearance of money and governing contracts relating thereto; accordingly, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity hereof, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or obligation contained herein or in any other document evidencing securing or pertaining to the Loan, exceed the Maximum Rate. If from any circumstance whatsoever fulfillment of any provision hereof or of any such other document, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Lender shall ever receive anything of value deemed interest by applicable law which would exceed the Maximum Rate, an amount equal to any excessive interest shall be applied to the reduction of the principal amount owing under the Note or on account of any other principal indebtedness of Borrower to Lender, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of such principal and such other indebtedness, such excess shall be refunded to Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness of Borrower to Lender shall, to the extent permitted by applicable law, be

amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full in such manner as permitted by law so as to avoid any portion of the interest on the Loan becoming usurious. The terms and provisions of this Section 7.5 shall control and supersede every other provision of all agreements between Borrower and Lender in the event of a conflict in such provisions.

**7.6 Rights of Third Parties.** All conditions of the obligations of Lender hereunder, including the obligation to make Advances, are imposed solely and exclusively for the benefit of Lender and its successors and assigns and no other person or entity shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make Advances in the absence of strict compliance with any or all thereof, and no other person or entity shall, under any circumstances, be deemed to be a beneficiary of this Agreement, any and all of the terms and conditions of which may be freely waived in whole or in part by Lender at any time if in its sole discretion it deems it desirable to do so, and Lender reserves the right to enter into modifications or amendments of this Agreement with Borrower without notification to or the consent of any other party. In particular, Lender makes no representations and assumes no obligations as to third parties concerning the quality of the construction of the Improvements by Borrower or the absence therefrom of defects. In this connection Borrower agrees to and shall indemnify, defend and hold harmless Lender from and against any liabilities, claims or losses resulting from the disbursement of the proceeds of the Loan or from the condition of the Property whether related to the quality of construction or otherwise and whether arising during or after the term of the Loan. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

**7.7 Evidence of Satisfaction of Conditions.** Any condition of this Agreement which requires the submission of evidence of the existence or non-existence of a specified fact or facts implies as a condition the existence or non-existence, as the case may be, of such fact or facts and Lender shall, at all times, be free independently to establish to its satisfaction and in its sole discretion such existence or non-existence.

**7.8 All Matters Satisfactory to Lender.** All proceedings taken in connection with the transactions provided for herein, all surveys, appraisals and documents required or contemplated by this Agreement or the Loan Documents and the person responsible for the execution and preparation thereof, contractor and all subcontractors, all sureties, insurers, the form of the construction contract and all subcontracts, all leases, bonds, guaranties and policies of insurance shall be satisfactory to Lender and to Lender's counsel which shall receive copies (or certified copies where appropriate in Lender's counsel judgment) of all documents which it may request in connection therewith.

**7.9 No Agency.** Lender is not the agent or representative of Borrower, and Borrower is not the agent or representative of Lender, and nothing in this Agreement shall be construed to make Lender liable to anyone for goods delivered or services performed upon the Property or for debts or claims accruing against Borrower.

**7.10 No Partnership or Joint Venture.** Nothing herein nor the acts of the parties hereto shall be construed to create a partnership or joint venture between Borrower and Lender.

**7.11 Number and Gender.** Whenever used herein, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders. The duties, covenants, obligations, and warranties of Borrower in this Agreement shall be joint and several obligations of Borrower, and of each Borrower if more than one.

**7.12 Conflicts.** In the event of any conflict between the provisions of this Agreement and those of the Mortgage, the provisions of this Agreement shall govern.

**7.13 Time of Essence.** Time is of the essence in performance of this Agreement by Borrower.

**7.14 Participation.** Lender shall have the right, at its sole discretion, to invite participants to participate in or to purchase all or portions of the Loan, and to disclose all information pertaining to Borrower as may be in Lender's possession, and Borrower agrees to execute any documents requested by Lender in connection with any such participation or purchase.

**7.15 Further Assurances.** Borrower shall do, execute, acknowledge and deliver, at the sole cost and expense of Borrower, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Lender may require from time to time in order to better assure, convey, assign, transfer and confirm unto the Lender, the rights now or hereafter intended to be granted to the Lender under the Loan Documents for carrying out the intention of facilitating the performance of the terms of this Agreement.

**7.16 Captions.** The captions, headings, and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

**7.17 APPLICABLE LAW. THIS AGREEMENT AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE. PROPER VENUE FOR ANY MATTER ARISING OUT OF THE SUBJECT MATTER OF THE LOAN DOCUMENTS SHALL LIE IN COLLIN COUNTY, TEXAS.**

**7.18 Notices.** Any notice, consent or other communication required or permitted to be given under any of the Loan Documents to Lender or Borrower must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

If to Lender:

Texas Republic Bank, N.A.
Attention: David L. Baty
2595 Preston Road
Frisco, Texas 75034
(972) 334-0700

If to Borrower: FHC Acquisition, LLC, a Texas limited liability company
1755 Wittington Place, Suite 340
Dallas, Texas 75234

With a copy to
(including by email): Vance McMurry
McMurry Law, PLLC
508 W. Lookout, Suite 508 – 14
Richardson, Texas 75080
vance@mcmurrylegal.com

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 7.18. Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

**7.19 Counterparts.** This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement.

**7.20 Certain Rules of Construction.** No implications or inferences shall be drawn from the deletion from the terms and provisions of this Agreement of any terms or provisions contained in unexecuted drafts of this Agreement. In addition, all parties hereto acknowledge that counsel for same have participated in the preparation of this Agreement and that, therefore, in the event of any ambiguity in, or controversy with respect to the meaning of, any term or provision contained in this Agreement, no presumption shall exist against any party's interpretation of this Agreement solely by reason of such party's or its counsel's participation in the preparation of this Agreement.

**7.21 RELIEF FROM AUTOMATIC STAY. AS A MATERIAL INDUCEMENT AND AS FURTHER CONSIDERATION TO INDUCE LENDER TO MAKE THE LOAN, BORROWER HEREBY STIPULATES, AGREES, CONSENTS TO AND ACKNOWLEDGES THAT IN THE EVENT THAT A PROCEEDING UNDER TITLE 11 OF THE U.S. CODE IS COMMENCED, EITHER VOLUNTARY OR INVOLUNTARY, BY OR AGAINST BORROWER, LENDER IS ENTITLED TO IMMEDIATE RELIEF FROM ANY AUTOMATIC STAY IMPOSED UNDER SECTION 362 OF TITLE 11 OF THE U.S. CODE, AS AMENDED, OR OTHERWISE, ON OR AGAINST THE EXERCISE OF THE RIGHTS AND REMEDIES OTHERWISE AVAILABLE TO LENDER, WITHOUT REQUIRING LENDER TO FILE A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IN ADDITION TO THE FOREGOING, BORROWER FURTHER STIPULATES, AGREES AND ACKNOWLEDGES THAT BORROWER SHALL NOT OPPOSE OR OBJECT TO LENDER'S MOTION FOR RELIEF FROM ANY AUTOMATIC STAY OR ANY VALUATION OF THE PROPERTY SUBJECT TO THE AUTOMATIC STAY CONDUCTED BY LENDER.**

**7.22 WAIVER OF JURY TRIAL. IN THE EVENT LITIGATION SHOULD ARISE OUT OF THE TRANSACTIONS CONTEMPLATED BY ANY OF THE LOAN DOCUMENTS OR ANY OTHER MATTER RELATED THERETO WHATSOEVER OR**

**IN CONNECTION WITH ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OR INACTIONS BY LENDER, IT IS HEREBY STIPULATED AND AGREED BY BORROWER THAT BORROWER SHALL WAIVE AND DO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS TO DEMAND A TRIAL OF ANY SUCH MATTER BY OR BEFORE A JURY. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO COMMIT TO MAKE THE LOAN.**

EXECUTED AND DELIVERED on the date first above recited.

**LENDER:**
Texas Republic Bank, N.A.

By:____________________________________
(Signature)

______________________________________
(Printed Name and Title)

**BORROWER:**
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

By:____________________________________
Timothy Barton, President