Jeff P. Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
(817) 877-8855 ● (817) 877-4151 Fax
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

*Attorneys for Palisades TC, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **DALLAS REAL ESTATE INVESTORS, LLC,** | § | **Case No. 21-41488-elm11** |
| | § | |
| | § | **Emergency Consideration Requested** |
| **Debtor.** | § | |

**PALISADES TC, LLC'S EMERGENCY MOTION FOR ORDER FINDING STAY DOES NOT APPLY OR, ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY TO FILE MEMORANDUM OF AGREEMENT IN REAL PROPERTY RECORDS**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Palisades TC, LLC ("Palisades"), a party in interest in the above-referenced case, and hereby files this *Emergency Motion for Order Finding Stay Does Not Apply or, Alternatively, for Relief from the Automatic Stay to File Memorandum of Agreement in Real Property Records* (the "Motion"). In support of the Motion, Palisades would respectfully show the Court as follows:

**JURISDICTION**

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This bankruptcy case and all related proceedings have been referred to this Court pursuant to 28 U.S.C. § 157. This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has full constitutional jurisdiction to enter a final order on this Motion.



**EXHIBIT "B"**

## EXECUTIVE SUMMARY

2. Palisades files the instant Motion seeking the entry of an order finding the stay does not apply to preclude it from filing the *Memorandum of Agreement* attached hereto as **Exhibit A** in the real property records in Collin County, Texas pertaining to the ownership of the Frisco Property (defined below) or, alternatively, granting it relief from the stay to file the Memorandum of Agreement. For the reasons described below, Palisades is concerned that the Debtor and its principal, Tim Barton, may be attempting to sell or take other action with respect to the Frisco Property without Palisades' consent in clear violation of the terms of the agreements governing the relationship between DREI and Palisades. As discussed in greater detail herein, Palisades' concern stems from, e.g., (i) the Debtor's misrepresentation of its ownership interest in FHC Acquisition, LLC, the entity which owns the Frisco Property, in its bankruptcy schedules, (ii) an approximately $3 million loan on the Frisco Property is about to expire on July 31, 2021 and the Debtor has not sought Palisades' consent or provided any documentation to Palisades relating to a proposed extension of the loan as required by the controlling agreements between the Debtor and Palisades, (iii) the Debtor incorrectly identified the name of the owner of the Frisco Property in its bankruptcy schedules; (iv) the Debtor overstated the value of the Frisco Property in its schedules, (vi) the Debtor did not file a monthly operating report for June 2021, and (vii) the Debtor is not providing Palisades with the financial reporting required under the terms of the controlling agreements between the parties. Palisades thus seeks to file the Memorandum of Agreement to give third parties notice regarding the correct ownership of the Frisco Property, which is not property of the Debtor's bankruptcy estate, to ensure that such property will not be sold or otherwise affected without Palisades' knowledge and consent.

## BACKGROUND

3. On June 22, 2021 (the "Petition Date"), Dallas Real Estate Investors, LLC ("Debtor" or "DREI") filed a voluntary petition commencing a bankruptcy case under chapter 11

of the Bankruptcy Code, 11 U.S.C. § 101, et seq. The Debtor continues to operate its business as a debtor-in-possession.

**A. Relationship Between Palisades, the Debtor, DREL and FHC Acquisition**

4. The Debtor and Palisades each own fifty percent (50%) of Dallas Real Estate Lenders, LLC ("DREL"), which owns 100% of FHC Acquisition, LLC ("FHC Acquisition"). FHC Acquisition owns certain real property described as "Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas" (the "Frisco Property").




5. A copy of the *Company Agreement of Dallas Real Estate Lenders, LLC* (the "DREL Operating Agreement") is attached hereto as **Exhibit B**. As set forth in section 1.06 of

the DREL Operating Agreement, until Palisades is "Redeemed in Full," the sole purpose of DREL is to manage and own 100% of the membership interests in FHC Acquisition and develop the Frisco Property, which is described as a "mixed use project located [on the Frisco Property] which is planned to include a luxury hotel, residences, restaurant, and retain components." See DREL Operating Agreement, § 1.06.

6. Although the membership interests in DREL are divided equally (50%-50%) between Palisades and the Debtor, Palisades' initial investment in DREL was $3.5 million dollars ($3,500,000.00) and the Debtor's initial investment was ten dollars ($10.00). The remaining capital used to acquire the Frisco Property by FHC Acquisition was acquired from an approximately $3 million loan (the "FHC Loan") from Texas Republic Bank, N.A. ("Texas Republic") pursuant to the "Loan Documents" as defined in section 1.06 of the DREL Operating Agreement. In exchange for its $3.5 million investment in DREL, Palisades was granted certain rights to a preferred equity return, which are set forth in section 5.02 of the DREL Operating Agreement, which (among other things) requires the repayment in full of Palisades' capital contribution in DREL plus interest and payment of Palisades' preferred profit participation before any distributions can be made to the Debtor.

**B. DREL Is a Member-Managed Limited Liability Company**

7. The DREL Operating Agreement governs the relationship between Palisades and the Debtor with respect to FHC Acquisition and the Frisco Property. Section 2.03 of the DREL Operating Agreement provides that "the Voting Members [Palisades and DREI] shall manage the Company and shall have the right to vote, in their capacity as Manager(s), upon all matters upon which Managers have the right to vote under the Act or under this Agreement, in proportion to their respective Percentage Voting Interests in the Company." Although section 2.03 provides that DREL is a member-managed LLC, section 2.08 provides that, until Palisades has been "redeemed in full" or a "Redemption Default" has occurred under the DREL Operating

Agreement, the Debtor "shall be the Manager responsible for the day-to-day management of the Company [DREL]."

8. Despite the Debtor's responsibility for DREL's day-to-day management, section 2.08 of the DREL Operating Agreement expressly precludes the Debtor from taking certain actions on behalf of DREL in relation to its ownership of FHC Acquisition (an "Opco" under the DREL Operating Agreement) or the Frisco Property (which is owned by FHC Acquisition) without Palisades' consent. The actions that the Debtor is expressly prohibited from taking under the DREL Operating Agreement relating to FHC Acquisition or the Frisco Property (the "Project" under the DREL Operating Agreement) include, e.g.:

> (a) leasing, selling, disposing, exchanging, mortgaging, pledging, or transferring the Project [the Frisco Property] or any material portion thereof …;
>
> * * *
>
> (c) applying for or modifying any existing zoning for the Project;
>
> (d) entering into any brokerage or exclusive listing agreement for the sale or l easing of any portion of the Project;
>
> * * *
>
> (g) entering into, amending, modifying, terminating or canceling any contract, lease, loan agreement, letter of credit, mortgage, note, guaranty of indebtedness or other instrument evidencing indebtedness that requires future payments by or to the Company or any OpCo of more than $100,000 in any year except as provided in the Project Budget;
>
> (h) entering into, amending, modifying, terminating or canceling any contract that grants any form of encumbrance (defined as any lien, easement, lease, hypothecation, or other restriction on transfer or use) over an asset of the Company or any OpCo;
>
> * * *
>
> (dd) modifying or amending any of the Loan Documents or paying in full all amounts due under the Loan Documents[1] prior to Palisades being Redeemed in Full;

[1] The term "Loan Documents" is defined in paragraph 1.06 of the DREL Operating Agreement as a loan in the approximate amount of $3 million from Texas Republic Bank to FHC Acquisition.

(ee) Incurring on behalf of the Company or any OpCo any loan or other indebtedness including loans or advances from Members of the Company or any OpCo (other than under the Loan Documents or indebtedness that constitutes customary third-party trade payables incurred by the Company or any OpCo in the ordinary course of business) or guaranty or other contingent liability, approving the form of the loan documents evidencing such indebtedness, or making any material election under such loan documents.

See DREL Operating Agreement, Ex. B, § 2.08 (a), (c), (d), (g), (h), (dd) and (ee).

9. In other words, although the Debtor is responsible for DREL's day-to-day management, it cannot make any major decisions regarding the company, which is a member-managed LLC, without Palisades' consent, including any decisions regarding leasing, selling or mortgaging the Frisco Property, applying for or modifying the existing zoning for the Frisco Property, listing the Frisco Property for sale, obtaining any new loans requiring payments of over $100,000 by DREL or FHC Acquisition, granting any form of encumbrance on the assets of DREL or FHC Acquisition, modifying or amending the existing loan documents on the Frisco Property, or incurring any loans on behalf of the DREL or FHC Acquisition.

**D. The Officers of FHC Acquisition Are Subject to the DREL Operating Agreement**

10. DREL is the 100% owner and sole member of FHC Acquisition, which owns the Frisco Property. A copy of the Company Agreement of FHC Acquisition, LLC dated January 29, 2019 is attached hereto as **Exhibit C** (the "FHC Operating Agreement"). Article X, paragraph 1 provides that the Managing Member of FHC Acquisition, which is DREL, "shall manage and control the operation of" FHC Acquisition. Likewise, Article X, paragraph 2 provides that the "powers of the Company shall be exercised by or under the authority of, and the business affairs of the Company shall be managed under the direction of the Managing Members," which is DREL. Article X, paragraph 2(b) provides that the Managing Member of FHC Acquisition (DREL) may designate one or more individuals as officers of FHC Acquisition, who have the right to perform such powers and duties as are assigned to them by the Managing Member (DREL).

11. However, the ability of the officers of FHC Acquisition to act on behalf of FHC Acquisition is expressly subject to the terms of the DREL Operating Agreement, including the terms requiring Palisades' consent to the taking of certain actions relating to FHC Acquisition and the Frisco Property. Specifically, Article X, paragraph 8 provides as follows:

> 8. Controlling Management Limitation. Notwithstanding any other provision of this Agreement, no Member or officer of the Company including, without limitation, the President or Treasurer may take any action on behalf of the Company which would acquire the approval of the Voting Members of Dallas Real Estate Lenders, LLC, a Delaware limited liability company and Sole Member of the Company ("DREL") or Palisades pursuant to the Company Agreement of DREL.

As the foregoing language makes clear, an officer of FHC Acquisition cannot take any action on behalf of FHC Acquisition that would require either the approval of the Voting Members or Palisades' consent under the DREL Operating Agreement, including any actions regarding leasing, selling or mortgaging the Frisco Property, applying for or modifying the existing zoning for the Frisco Property, listing the Frisco Property for sale, obtaining any new loans requiring payments of over $100,000 by DREL or FHC Acquisition, granting any form of encumbrance on the assets of DREL or FHC Acquisition, modifying or amending the existing FHC Loan on the Frisco Property, or incurring any loans on behalf of the DREL or FHC Acquisition.

**E. Debtor's Financial Reporting Requirements under the DREL Operating Agreement**

12. Under section 7.07(a) of the DREL Operating Agreement, the Debtor is required to cause to be prepared and delivered to each of the members (including Palisades) the following monthly and annual financial reporting: (i) monthly management reports for the Frisco Property, including progress reports on development activity and a report detailing expenditures, (ii) monthly financial statements for DREL, including balance sheets, income statements, and cash flow statements, and (iii) annual financial statements, including year-end balance sheets, income statements, cash flow statements, the amount of the Members' unreturned capital contributions, and a summary report describing the financial and business activities of DREL

during the calendar year.

13. In addition, under section 7.07(b), the Debtor is required to promptly deliver to Palisades any notices of default under any loan, including the Loan Documents relating to the FHC Loan, or any "Development Agreements" relating to the Frisco Property (as defined in section 2.08(ff) of the DREL Operating Agreement.

### F. The Imminent Expiration of the FHC Loan and the Debtor's Failure to Comply with the DREL Operating Agreement

14. The Debtor has not been providing Palisades with the financial reporting required under the DREL Operating Agreement. Moreover, Palisades believes that the FHC Loan payable to Texas Republic was originally set to mature on or around January 30, 2021. In addition, Palisades believes that the Debtor negotiated a six-month extension of the FHC Loan in January 2021, which Palisades believes is set to expire on or around July 30, 2021.

15. As indicated, the Debtor cannot amend or modify the FHC Loan without Palisades' consent. The Debtor also cannot list the Frisco Property for sale, seek to modify the zoning for the Frisco Property, or incur any additional debt on the Frisco Property without Palisades' consent. Following the extension of the FHC Loan in January 2021, Palisades did not receive any communication from the Debtor regarding the status of the FHC Loan or any other financial reporting from the Debtor. Indeed, only after multiple requests from Palisades' counsel regarding the status of the FHC Loan on Wednesday, July 21, 2021 (**Exhibit D**), Friday, July 23, 2021 (**Exhibit E**), and Sunday, July 25, 2021 (**Exhibit F**), and Monday, July 26, 2021 (**Exhibit G**), did Palisades learn that the FHC Loan is supposedly in the process of being renewed (see **Exhibit H**). However, the Debtor unequivocally cannot modify or amend the FHC Loan Documents under section 5.02(dd) of the DREL Operating Agreement without Palisades' consent and such consent has never even been requested. In addition, despite requests by Palisades' counsel, the Debtor likewise has not provided Palisades with any of the documentation relating to the purported extension of the FHC Loan.

## G. The Memorandum of Agreement to be filed by Palisades

16. Palisades does not have any information regarding the current status of the FHC Loan, nor has it seen any documentation regarding the terms of any purported extension being contemplated without Palisades' consent. Palisades likewise does not have current information regarding any actions taken by DREI to list, sell, apply for rezoning, refinance or otherwise affect the Frisco Property although its consent for any such action is also required. However, because it appears the FHC Loan will likely expire in a matter of days (or be extended without its consent), Palisades is concerned that the Debtor may attempt to take some action with respect to the Frisco Property without Palisades' consent in violation of the DREL Operating Agreement. Palisades' concern is well-founded and based on the following:

(a) The Debtor is apparently negotiating an extension of the FHC Loan without Palisades' consent in violation of section 5.02(dd) of the DREL Operating Agreement;

(b) The Debtor has not provided any documentation regarding the purported extension of the FHC Loan in response to requests from Palisades' counsel;

(c) The Debtor incorrectly stated its ownership interest in FHC Acquisition on its bankruptcy schedule A/B (a copy of which is attached as **Exhibit I**) as 100% when the Debtor unequivocally *does not* own 100% of FHC Acquisition. Instead, as indicated above, the Debtor owns 50% of DREL, which owns 100% of FHC Acquisition;

(d) The Debtor incorrectly identified the name of FHC Acquisition as "FHC LLC";

(e) The Debtor appears to have overstated the value of the Frisco Property as $10 million, which the Collin County Appraisal District reflects is only worth $6.34 million (see **Exhibit J**);[2]

(f) A number of the alleged creditors on the Debtor's schedules, which include architectural, engineering, and industrial design firms, appear to be creditors of FHC Acquisition rather than creditors of the Debtor. Specifically, a number of these creditors were listed on the closing statement for the Frisco Property (see **Exhibit K**), indicating that they either were not properly paid at closing or are creditors are FHC Acquisition (rather than the Debtor);

---

[2] Palisades does not have any information regarding the basis for the Debtor's $10 million valuation of the Frisco Property, including whether its valuation is based on a re-zoning of the property, a third party offer to acquire the property, or some other information relating to the Frisco Property that has not been disclosed to Palisades.

(g) The Debtor failed to timely file a monthly operating report for June 2021;

(h) The Debtor is not providing the financial reporting information to Palisades required under the terms of the DREL Operating Agreement.

17. Consequently, in order to protect its interest in the Frisco Property based on its ownership interest in DREL and DREL's ownership of FHC Acquistion, Palisades would like to file the Memorandum of Agreement in the real property records in Collin County relating to the Frisco Property to give notice to third parties that (i) FHC Acquisition is the owner of the Frisco Property, (ii) DREL is the sole owner and manager of FHC Acquisition, (iii) Palisades is a 50% member in DREL, (iv) no Member or officer of FHC Acquisition may take any action on behalf of FHC Acquisition which would require the approval of the Voting Members (including Palisades) or Palisades' consent under the DREL Operating Agreement, and (v) consequently, the authority to take any action on behalf of FHC Acquisition (including any sales, transfers, encumbrances, or liens) should be confirmed in writing through Palisades. Palisades believes the filing of the Memorandum of Agreement is necessary to protect its interest in the Frisco Property. Although Palisades does not believe the automatic stay prevents it from filing the Memorandum of Agreement, it nevertheless files the instant Motion out of an abundance of caution seeking entry of an order finding that the stay does not apply or, alternatively, granting relief from the automatic stay to file the Memorandum of Agreement.

## I. ARGUMENTS AND AUTHORITIES

### A. The Automatic Stay Does Not Apply to the Property of FHC Acquisition

18. The automatic stay provision in section 362(a) of the Bankruptcy Code reads, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced

> before the commencement of the case under this title, or to recover a claim ***against the debtor*** that arose before the commencement of the case under this title:
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to ***exercise control over property of the estate***;
>
> (4) any act to create, perfect, or enforce any ***lien against property of the estate***.

11 U.S.C. § 362(a) (emphasis added). The automatic stay thus "imposes a moratorium" on all actions against the debtor or its property and assets." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987).

19. However, by its express terms, the automatic stay applies only to the debtor and property of the estate *and not* against non-debtor third parties. *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *see also, Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983). Indeed, the Fifth Circuit has noted that "section 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Id.* (*citing Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001).

20. Moreover, the general rule that the automatic stay does not extend to non-debtors includes a debtor's subsidiaries and the property of a debtor's subsidiaries. This is so because "it is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity. *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007). Indeed,

> The fact that a parent corporation has an ownership interest in a subsidiary, however, does not give the parent any direct interest in the *assets* of the subsidiary. Although [debtor] could have established an ownership interest in the property, it chose not to do so. Instead, it created an LLC for the purpose of holding title to the property. Having assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the LLC in order to escape its disadvantages.

*Id.* at 214 (emphasis in original). Thus, because the assets of a subsidiary belong to the subsidiary, they do not form part of a debtor's bankruptcy estate. *Id.* Moreover, while property

Case 21-41438-elm11 Doc 39 Filed 08/02/21 Entered 08/02/21 15:17:34 Desc

of the estate includes the debtor's stock in a subsidiary, it does not include the assets of the subsidiary. *In re Penn*, 2010 Bankr. LEXIS 1546, *6 (Bankr. N.D. Ga. Apr. 2, 2010).

21. Consequently, because the assets of a subsidiary do not constitute property of the debtor's estate, an action to obtain possession or exercise control over a subsidiary's property does not violate the automatic stay. *Kreisler*, 478 F.3d at 214*; accord, Nat'l Bank v. Panther Mt. Land Dev., LLC (In re Panther Mt. Land Dev., LLC)*, 686 F.3d 916, 923 (8th Cir. 2012) (finding courts will not "simply brush aside" the consequences flowing from the creation of separate corporate entities and, consequently, that "the automatic stay does not, in general, apply to actions against parties who enjoy factual or legal relationships with a debtor, such as a debtor's wholly owned subsidiaries); *In re Hitchcock*, 2020 Bankr. LEXIS 2175, *4 (Bankr. D. Neb. Aug. 14, ,2020) (same); *Manson v. Richard Friedberg & Oldstone Ventures, LLC*, 2013 U.S. Dist. LEXIS 83488, *9 (Bankr. S.D.N.Y. June 13, 2013) (finding the assets owned by the debtor's wholly owned subsidiary were not protected by the debtor's automatic stay where the subsidiary did not file its own bankruptcy petition). Such is the case even where the action may have the effect of reducing the value of the debtor's interest in the subsidiary. *Kreisler*, 478 F.3d at 214 (finding the automatic stay does not prevent the taking of actions that might reduce the value of the debtor's ownership interest in a subsidiary because the nature and extent of the debtor's ownership interest in the subsidiary would remain unchanged). Instead, if a subsidiary or separate legal entity established to hold property desires bankruptcy protection, it must file its own petition. *Kreisler*, 478 F.3d at 213-145; *In re Penn*, 2010 Bankr. LEXIS 1546 at *5; *Manson*, 2013 U.S. Dist. LEXIS 83488 at *9.

22. Here, the Debtor has a 50% ownership interest in DREL. DREL, in turn, has a 100% ownership interest in FHC Acquisition. FHC Acquisition, in turn, owns the Frisco Property. The Frisco Property, which is an asset owned by an entity in which the Debtor has an indirect interest, does not constitute part of the Debtor's bankruptcy estate. Consequently, the filing of the Memorandum of Agreement by Palisades in the Collin County property records to

give notice regarding the ownership of the Frisco Property and the rights of DREL and Palisades in relation to same, does not constitute an action against the Debtor, an act to exercise control over property of the debtor, or an act to create, perfect or enforce a lien against property of the estate. As such, the automatic stay does not apply to or prevent the filing of the Memorandum of Agreement relating to the Frisco Property. Consequently, Palisades requires entry of an order finding the stay does not apply to the filing of the Memorandum of Agreement.

**B. Alternatively, if the Automatic Stay Applies to the Property of FHC Acquisition, Cause Exists to Grant Palisades Relief to File the Memorandum of Agreement**

23. For the reasons discussed at length above, Palisades does not believe that the automatic stay in the Debtor's bankruptcy case applies to the Frisco Property. However, it acknowledges that, in certain unusual situations, the automatic stay may be extended to encompass actions against certain nonbankrupt parties, such as where the debtor and nonbankrupt party can be considered one entity or as having such a unitary interest that a judgment against the nonbankrupt entity will be binding upon the debtor's estate. *In re S.I. Acquisition*, 817 F.2d at 1148 (citing *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1985)); *see also, Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (citing *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("Several courts have held that under specific circumstances nondebtors may be protected by the automatic stay—even though such protection may be temporary—if it contributes to the debtor's efforts to achieve rehabilitation.")).

24. Palisades does not believe that the Frisco Property is property of the Debtor's bankruptcy estate subject to the automatic stay or that the filing of the Memorandum of Agreement would violate the automatic stay. Nevertheless, should the Court disagree and find that the automatic stay in the Debtor's bankruptcy case does extend to the Frisco Property, then cause exists to grant Palisades relief from the stay to file the Memorandum of Agreement under section 362(d). The interests of Palisades, DREL and FHC Acquisition in the Frisco Property

are not adequately protected. As discussed above, the Debtor is taking actions with respect to the Frisco Property without Palisades' consent in violation of the DREL Operating Agreement. The Debtor is also not providing Palisades with the required financial reporting information under the DREL Operating Agreement. In addition, the Debtor has misrepresented its ownership in FHC Acquistion in its bankruptcy schedules as a 100% ownership interest and incorrectly identified FHC Acquisition as "FHC, LLC," which may potentially obscure the actual ownership of FHC Acquisition. As a result, because it appears the Debtor is attempting to extend the FHC Loan in a matter of days without Palisades' consent or even informing Palisades of the terms of such extension, Palisades is concerned that the Debtor may also cause FHC Acquisition to sell or take other action with respect to the Frisco Property without Palisades' consent in violation of the FHC Acquisition Operating Agreement and the DREL Operating Agreement. Palisades needs relief from the automatic stay to protect its interests in DREL, FHC Acquisition and the Frisco Property because it does not have up to date information regarding the status or terms of the FHC Loan and the Debtor is not providing it with regular financial reporting as required under the DREL Operating Agreement. Likewise, although counsel for Palisades has requested documentation regarding the purported extension of the FHC Loan, Palisades still has not received such documentation.

25. In addition, the Debtor does not have any equity in the Frisco Property and such property is not necessary to an effective reorganization. Indeed, the Debtor's only property interest here is its 50% ownership interest in DREL which, in turn, owns FHC Acquisition (which owns the Frisco Property). Even so, the Frisco Property is listed in the Collin County Appraisal District as having a value of only $6.34 million. As discussed, the property is currently subject to the FHC Loan of approximately $3 million plus interest. In addition, Palisades is entitled to a return on its preferred capital contribution in DREL, which was $3.5 million, plus another approximately $1.5 million in interest and minimum profit participation before the Debtor would be entitled to any recovery on account of its membership interest in DREL. See Ex. B, DREL

Case 21-41418-elm11 Doc 39 Filed 08/02/21 Entered 08/02/21 12:10:31 Desc

Operating Agreement, § 5.02(a). Because the Frisco Property does not appear to be worth more than the approximately $3 million in outstanding debt and approximately $5 million owed to Palisades on account of its preferred equity interest, the Debtor does not have any equity in its ownership interest in DREL (arising from its ownership of FHC Acquistion which, in turn owns the Frisco Property).

26. The Frisco Property also is not necessary to an effective reorganization. Indeed, Palisades does not believe the Debtor has any ability to reorganize in this case. In addition to the fact that the Debtor has no equity in its ownership interest in DREL, even as the "Manager" of DREL the Debtor cannot take any material action with respect to either FHC Acquisition or the Frisco Property without Palisades' consent, including any action to sell, mortgage, transfer or refinance the Frisco Property. Indeed, it is not entirely clear what the Debtor hopes to accomplish through the instant chapter 11 bankruptcy case. Regardless, because the Debtor does not have any equity in the Frisco Property and is precluded by the terms of the DREL Operating Agreement from taking any action with respect to such property without Palisades' consent, the Frisco Property cannot be necessary to an effective reorganization. As a result, Palisades should be granted leave from the automatic stay so that it can file the Memorandum of Agreement to put third parties on notice with respect to the rights as between the Debtor, Palisades, DREL and FHC Acquisition as they pertain to the Frisco Property.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Palisades TC, LLC respectfully requests that, upon hearing of this Motion, the Court: (i) enter an order finding the automatic stay in the Debtor's bankruptcy case does not extend to the Frisco Property and does not prohibit Palisades from filing the Memorandum of Agreement, (ii) alternatively, if the automatic stay does apply, enter an order granting Palisades relief from the automatic stay to file the Memorandum of Agreement, and (iii) granting Palisades such other and further relief as is just and equitable.

A copy of Palisades' proposed order granting the alternative forms of relief requested herein is attached hereto as **Exhibit L.**

DATED: July 27, 2021.

Respectfully Submitted,

/s/ Suzanne K. Rosen
Jeff P. Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
(817) 877-8855 Telephone
(817) 877-4151 Facsimile
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

ATTORNEYS FOR PALISADES TC, LLC

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on July 25-26, 2021, the undersigned contacted Debtor's counsel, Joyce Lindauer, to inquire regarding the Debtor's position as to whether the filing of the Memorandum of Agreement would violate the automatic stay in the Debtor's bankruptcy case. Ms. Lindauer responded that she would check with her client. As of the time of filing of this Motion, no response as to the Debtor's position regarding the applicability (or non-applicability) of the automatic stay has been received from counsel for the Debtor. As a result, the undersigned will file an amended certificate of conference once a response is received. In the meantime, the relief requested herein must be deemed as opposed.

/s/ Suzanne K. Rosen
Suzanne K. Rosen

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021 a copy of the foregoing document was served through the Court's ECF system on those parties receiving ECF notice, and as indicated below on the parties reflected below.

*Via Email*
Joyce Lindauer (joyce@joycelindauer.com)

*Via Email*
Erin Schmidt (erin.schmidt2@usdoj.gov)

/s/ Suzanne K. Rosen
Suzanne K. Rosen