# Exhibit "J"

# COMPANY AGREEMENT
# OF
# FHC ACQUISITION, LLC
# A TEXAS LIMITED LIABILITY COMPANY

## JANUARY 29, 2019

THE MEMBERSHIP INTERESTS OF FHC ACQUISITION, LLC HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, NOR PURSUANT TO THE PROVISIONS OF ANY STATE SECURITIES ACT.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS .......... 5**
**ARTICLE II. ORGANIZATION .......... 8**
1. Certificate of Formation .......... 8
2. Term .......... 8
3. No State-Law Partnership .......... 8

**ARTICLE III. NAME; PLACE OF BUSINESS; REGISTERED OFFICE AND AGENT . 8**
1. Name .......... 8
2. Assumed Names .......... 8
3. Registered .......... 8

**ARTICLE IV. PURPOSE .......... 9**
**ARTICLE V. MEMBERS .......... 9**
1. Members .......... 9
2. Admission of Additional Members .......... 9

**ARTICLE VI. CAPITAL CONTRIBUTIONS AND INTERESTS .......... 9**
1. Capital Contributions .......... 9
2. Interests .......... 10
3. Capital Accounts .......... 10
4. Return of Capital Contributions .......... 11
5. Interest .......... 11
6. Loans from Members .......... 11

**ARTICLE VII. ALLOCATIONS AND DISTRIBUTIONS .......... 12**
1. Allocation of Income and Loss. .......... 12
2. Determination of Income and Loss .......... 12
3. Cash Distributions .......... 12
4. Distributions of Other Property .......... 12

**ARTICLE VIII. OWNERSHIP OF COMPANY ASSETS .......... 13**
**ARTICLE IX. FISCAL MATTERS; BOOKS AND RECORDS .......... 13**
1. Bank Accounts; Investments .......... 13
2. Records Required by Act; Right of Inspection .......... 13
3. Books and Records of Account .......... 14
4. Tax Returns and Information .......... 14
5. Delivery of Financial Statements to Members .......... 14
6. Audits .......... 14
7. Fiscal Year .......... 14
8. Tax Elections .......... 15

**ARTICLE X MANAGEMENT OF THE COMPANY .......... 15**
1. Control by the Members .......... 15
2. Management .......... 15
3. Powers of the Managing Members .......... 16
4. Powers of the President .......... 17
5. Ownership of Information and Materials .......... 17
6. Licenses .......... 17

7. Resignation and Removal ........ 17
**ARTICLE X. RIGHTS, POWERS AND OBLIGATIONS OF MEMBERS ........ 18**
1. Authority; Liability to Third Parties. ........ 18
2. Breach. ........ 19
3. Remedies. ........ 19
4. Transfers of Interests ........ 19
5. Effect of Transfer of Member's Interest ........ 20
6. Admission of Transferee as Member ........ 20
7. Other Business ........ 20
8. Voting by Members ........ 21
**ARTICLE XI. MEETINGS OF MEMBERS ........ 21**
1. Place of Meeting ........ 21
2. Annual Meeting ........ 21
3. Special Meetings ........ 21
4. Notice ........ 21
5. Waiver of Notice ........ 22
6. Quorum and Attendance ........ 22
7. Voting ........ 22
8. Adjournment ........ 22
9. Conduct of Meetings ........ 22
10. Telephone Meetings ........ 22
11. Action by Written Consent ........ 23
12. Proxies ........ 23
13. Information ........ 23
**ARTICLE XII. INTENTIONALLY OMITTED ........ 24**
**ARTICLE XIII. DISSOLUTION AND WINDING UP ........ 24**
1. Events Causing Dissolution ........ 24
2. Winding Up ........ 24
3. Compensation of Liquidator ........ 25
4. Distribution of Company Assets and Proceeds of Sale Thereof ........ 25
5. Final Audit ........ 26
6. Deficit Capital Accounts ........ 26
**ARTICLE XIV. INDEMNIFICATION AND INSURANCE ........ 26**
1. Indemnification and Advance of Expenses ........ 26
2. Insurance ........ 27
3. Limit on Liability of Members ........ 27
**ARTICLE XV. MISCELLANEOUS PROVISIONS ........ 27**
1. Entire Agreement ........ 27
2. Law Governing ........ 27
3. Conference Telephone Meetings ........ 27
4. Successors and Assigns ........ 28
5. Severability ........ 28
6. Headings ........ 28
7. Construction ........ 28
8. Offset ........ 28
9. Effect of Waiver or Consent ........ 28

10. Further Assurance ............ 28
11. Waiver of Certain Rights ............ 29
12. Counterparts and Binding Effect ............ 29
13. Attorney's Fees ............ 29
14. Amendment of Agreement ............ 29
15. Joinder of Managing Members ............ 29
16. Notices ............ 29
**SCHEDULE A............ 32**

This **Company Agreement** ("Company Agreement") of **FHC Acquisition, LLC**, a Texas limited liability company, is adopted effective as of the date set forth above by the undersigned Sole Member of the Company representing 100% of the total Membership Interests in the Company on the date set forth on the cover page hereof.

## ARTICLE I.

## DEFINED TERMS

The capitalized terms used in this Company Agreement shall, unless the context otherwise requires, have the meanings specified in this Article I.

**Act.** The Texas Business Organization Code as it may be amended from time to time, and any successor to such Act.

**Additional Capital Contribution(s).** Any Capital Contributions in excess of the Initial Capital Contribution as may be approved in accordance with the provisions of Article VI hereof.

**Affiliate(s).** As applied to a Person, any other Person directly or indirectly controlling, controlled by, or under common control with that Person. Controlling, controlled by or under common control means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that Person, whether through ownership of voting securities or otherwise.

**Approved by the Members.** Unless otherwise stated, shall mean a decision, direction, approval and/or consent of the Members that has been determined by a Majority-in-Interest of the Members.

**Approval of the Managing Members**. Unless otherwise stated, shall mean a decision, direction, approval and/or consent of the Managing Members that has been determined by a Majority of the Managing Managers. Unless stated otherwise, as long as notice is given to all Managing Members, consent of all Managing Members shall be implied unless a Managing Member expressly dissents.

**Assets.** All interest, assets and rights of any type owned by the Company, whether owned by the Company at the date of its formation or thereafter acquired.

**Bankruptcy.** Bankruptcy under the federal Bankruptcy Code or insolvency under any state insolvency act.

**Business Day.** Any day other than a Saturday, Sunday and those legal public holidays specified in 5 U.S.C. '6103 (a), as may be amended from time to time.

**Capital Account.** The Capital Account maintained for each Member pursuant to Article VI, Section 3 of this Company Agreement.

**Capital Contributions.** The total amount of cash or property contributed to the Company by all the Members or any one Member, as the case may be.

**Certificate of Formation.** The Certificate of Formation of the Company described in Article II, Section 1 of this Company Agreement.

**Code.** The Internal Revenue Code of 1986, as it has been and may be amended.

**Company.** FHC Acquisition, LLC, as such limited liability company may from time to time be constituted.

**Company Agreement.** This Company Agreement, including any Schedules, as originally executed and as they may be subsequently amended from time to time, by requisite vote of the Members.

**Initial Capital Contribution.** Such amounts designated as such on Schedule A hereof.

**Interest(s).** All rights and interests of a Member with regard to the Company, under this Company Agreement and the Act, including (i) the right of a Member, expressed as a percentage on Schedule A, to receive distributions of revenues, allocations of income and loss and distributions of liquidation proceeds under this Company Agreement, and (ii) all management rights, voting rights or rights to consent.

**Majority-in-Interest of the Members.** Members who are holding more than fifty percent (50%) of the total Interest who are entitled to vote hereunder at the applicable date after receipt by all Members of notice of such item requiring a vote.

**Managing Members.** At any time, the Person who is then managing the business of the Company in accordance with Article X of this Company Agreement. Upon the effective date of this Company Agreement, the Managing Member is Dallas Real Estate Lenders, LLC, a Delaware limited liability company.

**Member(s).** At any time, the Person(s) who then own Interests in the Company. The Members are listed on Schedule A.

**Notification.** A writing containing any information required by this Company Agreement to be communicated to any Persons which may be personally delivered, sent by registered or certified mail, postage prepaid, electronic mail with delivery confirmation to the email address specified in the Company records, or sent by facsimile transmission with delivery confirmation, to such Person, at the last known address of such Person in the Company records. Any such Notification shall be deemed to be given (i) when delivered, in the case of personal delivery, (ii) on the third business day after it is deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as aforesaid, in the case of mail, and (iii) when transmitted properly (being 9:00 a.m. to 5:00 p.m., local time for the recipient, on any Business Day) in the case of facsimile transmission. Any communication containing information sent to any Person other than as required by the foregoing sentences, but which is actually received by such Person, shall constitute

Notification as of the date of such receipt by such person for all purposes of this Company Agreement.

**Operating Budget.** The annual budget prepared by the Managing Members and submitted to and approved by the Members. The Operating Budget shall reflect all costs and expenses projected or expected to be incurred by the Company during the Company's fiscal year.

**Operating Costs.** Any costs incurred by or on behalf of the Company or the Partnership pursuant to the Operating Budget.

**Operating Plan.** The annual business plan prepared by the Managing Members and submitted to and approved by the Members and the Company. The Operating Plan shall reflect all activities to be undertaken by the Company during each fiscal year of the Company, including, without limitation, any development work.

**Option.** The option of each Member hereto to purchase the other Member's Interest as set forth in Article XIII hereof.

**Persons.** Any natural person, limited liability company, general partnership, limited partnership, corporation, joint venture, trust, business trust, cooperative or association.

**Purpose.** The "Purpose" of the Company as set forth in Article IV hereof.

**Schedule A.** The schedule attached hereto and labeled "Schedule A", containing: (i) the identity of each initial Member, (ii) Initial Capital Contributions, (iii) each Member's Interest and (iv) profit/loss sharing ratio.

**Transfer.** Any assignment, hypothecation or change in the record ownership of an Interest, whether made voluntarily or involuntarily by operation of law, including, but not limited to, the following:

1. a sale, pledge, encumbrance, assignment, gift or other transfer to any Person;

2. a general assignment for the benefit of creditors, or any assignment to a creditor resulting from the creditor's foreclosure upon or execution against such Interest;

3. the filing by the transferor Member of a voluntary Bankruptcy petition; or

4. the entry of a judicial order granting the relief requested by the petitioner in an involuntary Bankruptcy proceeding filed against the transferor Member.

**Updated Business Plan.** Annual revisions to the Business Plan, or more frequently, if revisions are agreed upon, which provisions shall be prepared by the Managing Members and approved by the company.

## ARTICLE II.

## ORGANIZATION

1. Certificate of Formation. The Certificate of Formation for the Company were filed with, and a Certificate of Formation was issued by, the Secretary of State of the State of Texas.

2. Term. Pursuant to the Act, the existence of the Company began upon the effective date of the Certificate of Formation. The Company shall exist for the duration specified in the Certificate of Formation unless sooner terminated in accordance with this Company Agreement.

3. No State-Law Partnership. No provision of this Company Agreement (including, without limitation, the provisions of Article X) shall be deemed or construed to constitute the Company a partnership (including, without limitation, a limited partnership) or joint venture, or any Member a partner or joint venturer of any other Member or Managing Members, for any purposes other than federal and state tax purposes.

## ARTICLE III.

## NAME; PLACE OF BUSINESS; REGISTERED OFFICE AND AGENT

1. Name. The name of the Company is "FHC Acquisition, LLC." The name may not be changed without the approval of the Members as long as such name conforms with state law.

2. Assumed Names. The Managing Members may cause the Company to do business under one or more assumed names. In connection with the use of any such assumed names, the Managing Members shall cause the Company to comply with the Act.

3. Registered Office; Registered Agent; Principal Office in the United States; Other Offices. The registered office of the Company required by the act to be maintained in the State of Texas shall be the initial registered office named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Managing Members may designate, from time to time in the manner provided by law. The registered agent of the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Managing Members may designate, from time to time in the manner provided by law. The principal office of the Company in the United States shall be at such place as the Managing Members may designate, from time to time, which need not be in the State of Texas, and the Company shall maintain records there as required by the Act. The Company may have such other offices as the Managing Members may designate from time to time.

## ARTICLE IV.

## PURPOSE

The purpose of the Company is to any and all business and/or activity (including but not limited to purchase agreements, equity and debt financing, development agreements, incentive agreements, zoning, etc.) related to the acquisition of real property described as "Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas" ("Property") and the development of a mixed use project on the Property which may consist of a luxury hotel, restaurant, retail, and/or residences.

## ARTICLE V.

## MEMBERS

1. Members. The names and addresses of the Members of the Company are as set forth on Schedule A of this Company Agreement which shall be updated as necessary.

2. Admission of Additional Members. Additional Members of the Company may be admitted as follows:

   (a) If the proposed additional Member desires to purchase an Interest from the Company, such purchase may be made and the admission of the additional Member shall become effective only if the identity of the proposed additional Member and the amount of the Capital Contribution to be made by such proposed additional Member in exchange for such proposed additional Member's Interest is approved by the Managing Members.

   (b) If the proposed additional Member desires to acquire an Interest in a Transfer from an existing Member, such Transfer may be made and the admission of the additional Member shall become effective only in accordance with Article XI, Section 2 hereof and Article XIII, Section I hereof. All other attempted Transfers of any Interest or right, or any part thereof, in or in respect of the Company shall be null and void ab initio.

   (c) The Managing Members may deny the membership of any proposed additional member for any reason.

## ARTICLE VI.

## CAPITAL CONTRIBUTIONS AND INTERESTS

1. Capital Contributions.

(a) Each Member shall contribute to the capital of the Company the amounts set forth as such Member's Initial Capital Contribution on Schedule A. The Initial Capital Contribution shall be in the form of cash and shall be paid simultaneously with the execution by each respective Member of this Company Agreement. Schedule A may not be amended without the written approval of all Members, unless modifications to Interests occur by virtue of other provisions of this Company Agreement.

(b) In the event any Member fails to make full payment of its Initial Capital Contribution, as and when required by Article VI, Section I (a) hereof, said Member shall be deemed in default hereunder and shall automatically, and without notice or further proceeding, forfeit its full Interest in and to the Company. Upon such default, the non-defaulting Member's shall be entitled to acquire the defaulting Member's forfeited Interest upon payment of the amount of Capital Contribution unpaid as to the defaulting Member's Interest prior to the date of Closing, as scheduled or as the same may be extended.

2. Interests.

(a) Upon making the Capital Contribution specified on Schedule A, in a timely manner, each Member shall own the Interest set forth opposite such Member's name on Schedule A.

(b) The Interests may, with the approval of the Managing Members, be evidenced by certificates issued by the Company which, if issued, shall be in such form and incorporate such legends, recitals and provisions as the Managing Members shall deem necessary or advisable. If certificates are issued, the Managing Members shall establish reasonable procedures for the delivery and reissuance of certificates in connection with Transfers of Member's Interests, split-ups or combinations of certificates, loss or destruction of certificates and other eventualities. Among other matters, such procedures may set forth required fees, indemnifications, documentation and signatures (including guarantees thereof) to be obtained from parties requesting reissuance of certificates. Such procedures need not be incorporated into this Company Agreement, but a copy thereof shall be delivered to all Members.

(c) Additional Capital Contributions may be made with the consent of no less than 50% of all Members. Membership Interests may be adjusted accordingly to reflect such additional capital contributions upon approval of the Majority In-Interest of the Members.

3. Capital Accounts. A capital account shall be established and maintained for each Member. Each Member's capital account (a) shall be increased by (i) the amount of money contributed by that Member to the Company, (ii) the fair market value of property contributed by that Member to the Company (net of liabilities secured by the contributed property that the Company is considered to assume or take subject to as provided in Section 752 of the Code), and (iii) allocations to that Member of Company income and gain (or items thereof),

including income and gain exempt from tax and income and gain described in Treas. Reg. §1.704-1(b)(2)(iv)(g), but excluding income and gain described in Treas. Reg. § 1.704-1(b)(4)(i), and (b) shall be decreased by (i) the amount of money distributed to that Member by the Company, (ii) the fair market value of property distributed to that Member by the Company (net of liabilities secured by the distributed property that the Member is considered to assume or take subject to as provided in Section 752 of the Code), (iii) allocations to that Member of expenditures of the Company described in Section 705 (a)(2)(B) of the Code, and (iv) allocations of Company loss and deduction (or items thereof), including loss and deduction described in Treas. Reg. §1. 704-1 (b)(2)(iv)(g), but excluding items described in clause (b)(iii) above and loss or deduction described in Treas. Reg. § 1.704 (b) (4) (i) or § 1.704-1 (b) (4) (iii). The Members' capital accounts shall also be maintained and adjusted as permitted by the provisions of Treas. Reg. § 1.704-1 (b) (2) (iv) (f) and as required by the other provisions of Treas. Reg. § 1. 704-1 (b)(2)(iv) and § 1.704-1 (b) (4), including adjustments to reflect the allocations to the Members of depreciation, depletion, amortization, and gain or loss as computed for book purposes rather than the allocation of the corresponding items as computed for tax purposes, as required by Treas. Reg. § 1. 704-1 (b) (2) (iv) (g). A Member that has more than one Interest shall have a single capital account that reflects all its Interests, regardless of the class of Interests owned by that Member and regardless of the time or manner in which those Interests were acquired. On the Transfer of all or part of an Interest, the capital account of the transferor that is attributable to the transferred Interest or part thereof shall carry over to the transferee Member in accordance with the provisions of Treas. Reg. § 1.704-1 (b) (2) (iv) (1).

4. Return of Capital Contributions. Except with the approval of the Managing Members and as otherwise provided herein or in the Act, no Member shall have the right to withdraw, or receive any return of, his Capital Contribution.

5. Interest. No interest shall be paid by the Company on Capital Contributions or on balances in Members' capital accounts.

6. Loans from Members. Loans by a Member to the Company shall not be considered Capital Contributions. Any amounts contributed to the Company which are not expressly authorized as Additional Capital Contributions shall be considered Loans by a Member to the Company. If any Member shall advance funds to the Company in excess of the amounts required hereunder to be contributed by him to the capital of the Company, the making of such advances shall not result in any increase in the amount of the capital account of such Member. The amounts of any such advances shall be a debt of the Company to such Member and shall be payable or collectible only out of the Company assets in accordance with the terms and conditions upon which such advances are made. Loans must be approved by the Managing Members. No loans shall earn interest unless expressly agreed to in writing by all Managing Members. The repayment of loans from a Member to the Company upon liquidation shall be subject to the order of priority set forth in Article XIII, Section 4 hereof.

## ARTICLE VII.

## ALLOCATIONS AND DISTRIBUTIONS

1. Allocation of Income and Loss.

(a) Except as may be required by Section 704(a) of the Code and Treas. Reg. § 1.704-1(b)(2)(iv)(f)(4), the income, gains, losses, deductions and credits (or items thereof) of the Company shall be shared by the Members in accordance with Schedule A. It is the intention of the Members that allocations of income, gains, losses, deductions and credits (or items thereof) pursuant to this Article VII, Section 1 be in accordance with the Interests for tax purposes.

(b) All items of income, gain, loss, deduction and credit allocable to any Interest that may have been transferred shall be allocated between the transferor and the transferee based upon an interim closing of the books as of the date of the transfer; provided, however, that this allocation must be made in accordance with a method permissible under Section 706 of the Code and the regulations thereunder.

2. Determination of Income and Loss. At the end of each fiscal year of the Company, income, gain, loss, deduction and credit (or items thereof) shall be determined for the accounting period then ending and shall be allocated to the Members in accordance with Article VII, Section 1 hereof.

3. Cash Distributions. The Managing Members have the discretion to distribute to the Members, in accordance with their respective Interests, the amount by which cash on hand exceeds the amount necessary to meet the current costs, expenses, and liabilities of the Company (including, without limitation, a reasonably adequate reserve for working capital and contingencies) as determined by the Managing Members. The distribution should be, at a minimum, sufficient to allow the Members to pay the income tax allocated to the Members as a result of the income generated by the Company. The Company shall not make any distribution to the Members if, immediately after giving effect to the distribution, all liabilities of the Company, other than liabilities to Members with respect to their Interests and liabilities for which the recourse of creditors is limited to specified property of the Company, exceed the fair market value of Company Assets, except that the fair market value of Company Assets that are subject to a liability for which recourse of creditors is limited shall be included in the Company Assets only to the extent that the fair market value of the Company Assets exceeds that liability.

4. Distributions of Other Property. From time to time, the Managing Members also may cause property of the Company other than cash to be distributed to the Members, which distribution must be made in accordance with their respective Interests and may be made subject to existing liabilities and obligations. Immediately prior to such distribution, the capital accounts of the Members shall be adjusted as provided in Treas. Reg. §1.704 l(b)(2)(iv)(f).

## ARTICLE VIII.

## OWNERSHIP OF COMPANY ASSETS

Company Assets shall be deemed to be owned by the Company as an entity, and no Member, individually or collectively, shall have any ownership interest in such Company Assets or any portion thereof. Title to any or all Company Assets shall be held in the name of the Company. All Company Assets shall be recorded as the property of the Company on its books and records, irrespective of the name in which legal title to such Company Assets are held.

## ARTICLE IX.

## FISCAL MATTERS; BOOKS AND RECORDS

1. Bank Accounts; Investments. Capital Contributions, revenues and any other Company funds shall be deposited by the Managing Members in a bank account established in the name of the Company, or shall be invested and/or expended by the Managing Members in furtherance of the Purpose of the Company. No other funds shall be deposited into Company bank accounts or commingled with Company investments. Funds deposited in the Company's bank accounts may be withdrawn only for the purposes described herein or to be distributed to the Members pursuant to this Company Agreement. All such funds shall be deposited and applied in accordance with the terms of this Company Agreement.

2. Records Required by Act; Right of Inspection.
   (a) During the existence of the Company and for a period of four (4) years thereafter, unless the Managing Members approves of an alternative procedure, the Managing Members or the Manger's agent, at the expense of the Company, shall maintain all records required to be kept pursuant to the Act, including, without limitation, (i) a current list of the names, addresses and Member's Interests held by each of the Members (including, if any class or group of interest is established under the Certificate of Formation or this Company Agreement, the names of the Members who are Members of each such class or group); (ii) copies of federal, state and local information or income tax returns for each of the Company's six (6) most recent tax years; (iii) copies of this Company Agreement and the Certificate of Formation, including all amendments or restatements; (iv) if such information is not otherwise set forth in the Certificate of Formation or this Company Agreement, a written statement of (A) the amount of the cash contribution and a description and statement of the agreed value of any other contribution made by each Member, and the amount of the cash contribution and a description and statement of the agreed value of any other contribution that the Member has agreed to make in the future as an Additional Contribution, (B) the times at which any Additional Contributions are to be made or events requiring contributions to be made, (C) events requiring the Company to be dissolved and its affairs wound up, and (D) the date on which each Member became a Member of the Company; (v) correct and complete books and records of account of

the Company; and (vi) copies of any financial statements of the Company for the three (3) most recent years.

(b) On written request, an initial Member or an approved assignee of an Interest (an "Eligible Person") may examine and copy in person or by the Eligible Person's representative, at any reasonable time, for any proper purpose, and at the Eligible Person's expense, records required to be maintained under the Act and such other information regarding the business, affairs and financial condition of the Company as is just and reasonable for the Eligible Person to examine and copy. Upon written request by any Eligible Person made to the Managing Members at the address of the Company's principal office in the United States specified in Article III, Section 3 hereof, the Company shall provide to the Eligible Person copies of (i) this Company Agreement and the Certificate of Formation and all amendments or restatements, and (ii) any of the tax returns of the Company described above.

3. Books and Records of Account. The Managing Members, at the expense of the Company as set forth in the Operating Budget, shall maintain for the Company adequate books and records of account that shall be prepared in accordance with sound accounting principles.

4. Tax Returns and Information. The Members intend for the Company to be treated as a disregarded entity for tax purposes. The Managing Members, at the expense of the Company, shall prepare or cause to be prepared all federal, state and local income and other tax returns that the Company is required to file. Within the shorter of (i) such period as may be required by applicable law or regulation, or (ii) seventy-five (75) days after the end of each calendar year, the Managing Members shall send or deliver to each Person who was a Member at any time during such year such tax information as shall be reasonably necessary for the preparation by such Person of his federal income tax return and state income and other tax returns.

5. Delivery of Financial Statements to Members. As to each calendar year, the Managing Members may send to each Member, or upon request of a member, a copy of (i) a balance sheet of the Company as of the end of the calendar year, (ii) an income statement of the Company for such calendar year, (iii) a statement of changes in Member capital accounts for such calendar year. Such financial statements shall be delivered by no later than thirty (30) days following the end of the calendar year to which the statements apply. Unless the Managing Members so elects, such statements need not be audited.

6. Audits. The Managing Members may conduct an audit of the Company books, with respect to the annual financial statements under Article IX, Section 5 above. The cost of the audit shall be borne by the Company. The audits shall be performed by an accounting firm approved by the Managing Members. Not more than one (1) audit shall be required for any fiscal year.

7. Fiscal Year. The Company's fiscal year shall end on December 31 of each calendar year.

8. Tax Elections. The Company shall make the following elections on the appropriate tax returns:

(a) to adopt the calendar year as the Company's fiscal year;

(b) to adopt the appropriate method of accounting and to keep the Company's books and records in accordance with the rules and regulations regarding income tax accounting as opposed to accounting for financial reporting purposes;

(c) if a distribution of Company Assets as described in Section 734 of the Code occurs or if a transfer of Interest as described in Section 743 of the Code occurs, on written request of any Member, to elect, pursuant to Section 754 of the Code, to adjust the basis of Company Assets;

(d) to elect to amortize the organizational expenses of the Company ratably over a period of sixty (60) months as permitted by Section 709(b) of the Code; and

(e) any other election the Managing Members may reasonably deem appropriate and in the best interest of the Members.

Neither the Company nor any Managing Members may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law.

## ARTICLE X

## MANAGEMENT OF THE COMPANY

1. Control by the Members. The Managing Members, shall manage and control the operation of this Company through their exercise of the decision making powers granted herein.

2. Management.

(a) The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of the Managing Members. The Managing Members need not be a resident of the State of Texas.

(b) The Managing Members may designate one or more individuals as officers of the Company, who shall have such titles and exercise and perform such powers and duties as shall be assigned to them from time to time by the Managing Members. The Managing Members shall designate the salary and/or bonuses the Officers are to receive, if any. Officers need not be Members, the Managing Members or residents of the State of Texas. Any officer may be removed by the Managing Members at any time, with or without cause. Each officer shall hold office until his or her

successor shall be duly designated and take office or until the earlier of the officer's death, resignation or removal. Any number of offices may be held by the same Person. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Managing Members.

3. Powers of the Managing Members. Subject to the foregoing powers and limitations, the Managing Members, shall have the power and authority to manage the affairs of the Company, and shall have the authority to take any action deemed to be necessary, convenient or advisable in connection with the management of the Company given such actions are approved by a majority of the Managing Members. As long as prior notice is given, any Managing Member may exercise the powers granted within this agreement as the consent of the other Managing Member(s) shall be implied unless expressly objected to by the other Managing Member(s). In the event, the Managing Members are unable to reach a consensus of a majority of the Members, then such issue shall be resolved by a vote of the majority in interest of all Members. The Managing Members shall have the power to establish and maintain accounts of the Company at financial institutions and the Managing Members shall be authorized signatories on such financial institution accounts. The Managing Members shall also have the following respective duties:

(a) shall expend sums on behalf of the Company;

(b) shall be responsible for the distribution of funds, including the timing of such distributions, to the Members by way of cash, income, return of capital, profits or otherwise, all in accordance with the provisions of this Agreement and perform all matters in furtherance of the objectives of the Company and this Agreement;

(c) has the right to execute any and all agreements, contracts, documents, certifications and instruments necessary and convenient in connection with the powers described in these regulations;

(d) Any act of the Managing Members purporting to bind the Company, shall bind the Company and the ratification or consent of the Members to any such act(s) shall not be required;

(e) The Managing Members shall have the full right and authority to execute any and all documents and instruments relating to the business and affairs of the Company, without the joinder of the Members, or any other person or entity, and any person dealing with the Company may rely upon the Managing Members' execution of any such document or instrument as the act and deed of the Company, without the necessity for further inquiry; and

(f) The Managing Members shall not receive compensation for management services to the Company other than the reimbursement of any and all out-of-pocket expenses reasonably incurred by the in connection with the furtherance of its duties, obligations and responsibilities hereunder or otherwise with respect to the

management and operation of the business and affairs of the Company. Managing Members may contract with the Company and receive compensation for other services not related to the duties of a Managing Member.

4. Powers of the President. The President shall have the following rights and powers in subject to the following restrictions:

(a) managing the daily operations of the business unless such management conflicts with the powers reserved to the Managing Members or unless the Managing Members restrict such powers.

(b) with prior notice to the Managing Members, may contract on behalf of the Company for the employment and services of employees and/or independent contractors and delegate to such persons the duty to manage and supervise certain operations of Company unless the Managing Members requests to approve such decisions;

(c) may incur reasonably, ordinary, and necessary expenses in order to manage the daily operations of the Company within the monetary limits set by the Managing Members above which will require the Managing Members' approval;

(d) shall contract on behalf of the Company for the employment and services of employees and/or independent contractors and delegate to such persons the duty to manage and supervise any of the assets or operations of the Company;

(e) with prior notice to the Managing Members, may negotiate or execute any agreements, contracts, documents, certifications and instruments which may bind the company without consent of the non-managing Members;

(f) those powers delegated to him by the Managing Members which may be ongoing or for a particular purpose and may be revoked at any time by the Managing Members;

5. Ownership of Information and Materials. The Managing Members shall, upon completion of or upon any earlier termination of its management hereunder, deliver to the Company all books and records and written financial or accounting data and information of or relating to the Company and the Property whether or not prepared by the Managing Members or supplied to the Managing Members by the Company or the Company's contractors or agents, which information shall at all time be the property of the Company.

6. Licenses. The Managing Members shall, at the company's expense, qualify to do business and obtain and maintain such licenses as may be required for the performance by the Managing Members of its services hereunder.

7. Resignation and Removal. Any Managing Member or the President may resign at any time after giving prior notice of such resignation to the Members at least thirty (30) days prior to the effective date of the resignation. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the

Members, if any. Such persons may only be removed by a unanimous vote of all Members entitled to vote and with cause which is defined as the willful and gross misconduct or gross negligence which must result in material economic damage to the company and its members

8. Controlling Management Limitation. Notwithstanding any other provision of this Agreement, no Member or officer of the Company including, without limitation, the President or Treasurer may take any action on behalf of the Company which would acquire the approval of the Voting Members of Dallas Real Estate Lenders, LLC, a Delaware limited liability company and Sole Member of the Company ("DREL") or Palisades pursuant to the Company Agreement of DREL.

## ARTICLE X.

## RIGHTS, POWERS AND OBLIGATIONS OF MEMBERS

1. Authority; Liability to Third Parties.

(c) No Member (other than Managing Member or an officer) has the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditure on behalf of the Company.

(d) No Member (including any Member who is Managing Member or Officer) shall be liable for the debts, obligations or liabilities of the Company, including under a judgment, decree or order of a court.

(e) The members may amend the regulations with the approval of a majority-in-interest of the members entitled to vote and with approval of the Managing Members. Any amendments to the role of the Managing Members would also require the approval of the Managing Members.

(f) Except as otherwise limited by the terms and provisions contained in these regulations, the Members shall have all of the rights, and be afforded the status, of Members as set forth in these regulations and by law.

(g) Except as provided herein, no Member shall have any right or power to (1) take part in the management or control of the Company or its business or affairs, (2) transact any business for the Company, or (3) sign for or bind the Company in any way.

(h) No Member shall have the right to withdraw from the Company unless approved by the Managing Members.

(i) No Member shall have the right or power to cause the dissolution and winding up of the Company by court decree or otherwise.

(j) All Members hereby agree to execute any and all instruments that they may be required to execute by any approved purchaser of said property in order to effect a sale of the Company Property.

2. Breach. In addition to a member failing to adhere to these regulations, a Member will breach this Agreement if he

(a) attempts to withdraw from the Company without approval;

(b) interferes in the management of the Company affairs;

(c) engages in conduct which could result in the Company losing its tax status as a Company;

(d) engages in conduct that tends to bring the Company into disrepute;

(e) breaches any confidentiality provisions of this Agreement;

(f) fails to meet any commitment to the Company; or

(g) owns a Company interest that becomes subject to a charging order, attachment, garnishment, or similar legal proceedings.

3. Remedies. A Member who is in breach of this Agreement shall be liable to the Company for damages caused by such breach. The Company may offset the damages against any distributions or return of capital to the Member who has breached this Agreement. Additionally, if a Member violates the terms of this agreement that person may be terminated as a member and their capital contributions shall be refunded without interest including any profits or losses accrued up to the date of the breach. If necessary such capital contribution may be converted to a loan to the company if the assets are not available to refund the capital contribution at the time of the breach and is subject to reasonable interest and payment terms as determined by the Managing Members. These remedies are in addition to any additional remedies that may be available under the law.

4. Transfers of Interests. A Member may make a Transfer of such Member's Interest, only upon the approval of the Managing Members:

(a) The Member or the proposed transferee must file with the Company a written and dated instrument of such Transfer, in form and substance reasonably satisfactory to the Managing Members, executed by both the transferor and the proposed transferee, which instrument shall (i) contain the acceptance by the proposed transferee of all of

the terms and provisions of this Company Agreement, to the extent applicable to an assignee of an Interest, and identify all liabilities which the transferee shall assume upon the transfer of the Member's Interest; (ii) contain such representations as the Managing Members may deem necessary or advisable to assure that such Transfer need not be registered under any applicable federal or state securities laws; (iii) instruct the Managing Members as to the Interest to be transferred and to whom and at what address Company distributions and Notifications in respect of such Interest should henceforth be sent; and (iv) contain any information required under the Code that is reasonably requested by the Managing Members.

(b) Unless expressly waived by the Managing Members, the transferor or transferee shall deliver to the Company an opinion of counsel reasonably acceptable to the Managing Members that (i) such Transfer is exempt from the registration requirements of the Securities Act of 1933, as amended, applicable state securities laws, and any rules or regulations promulgated thereunder, and will not otherwise cause the Company to be in violation of such laws and regulations; (ii) the Transfer will not result in the termination of the Company within the meaning of Section 708(b) of the Code; and (iii) the Transfer will not adversely affect the status of the Company as a partnership under the Code.

(c) The Transfer is approved by the Managing Members, and the transferor Member.

5. Effect of Transfer of Member's Interest. A Transfer of an Interest does not entitle the transferee to become, or to exercise rights or powers of, a Member. A Transfer only entitles the transferee to receive cash distributions and allocations of Company profits and losses to the extent of the Interest transferred. Until the transferee is admitted as a Member pursuant to Article XI, Section 4 below, the transferor Member shall continue to be a Member and to be entitled to exercise any rights or powers of a Member with respect to the Interest transferred.

6. Admission of Transferee as Member. An approved transferee of an Interest desiring to be admitted as a Member must execute a counterpart of, or an agreement adopting, this Company Agreement. The admission of such transferee (including, without limitation, a transferee by reason of the death of a Member) is subject to the Managing Members acting in his sole discretion. Upon admission of the transferee as a Member, the transferee shall have, to the extent of the Interest transferred, the rights and powers and shall be subject to the restrictions and liabilities of a Member under this Company Agreement, the Articles of Formation and the Act. The transferee shall also be liable, to the extent of the Interest transferred, for the unfulfilled obligations, if any, of the transferor Member to make Capital Contributions. Whether or not the transferee of an Interest becomes a Member, the transferor Member is not released from any liability to the Company under this Company Agreement, the Certificate of Formation or the Act.

7. Other Business. The Members may engage in or possess interests in other business ventures (unconnected with the Company) of every kind and description, independently or with others, except those business in direct competition with the Company upon approval of the

Managing Members. Neither the Company nor the other Members shall have any rights in or to such independent ventures or the income or profits therefrom.

8. Voting by Members. Any decisions, directions, approvals and consents required by the Members shall be made by the vote of a Majority-in-Interest (whether by actual vote or deemed vote as provided herein) of the Members, unless this Company Agreement expressly provide that a decision shall be made by the 2/3 or unanimous vote or consent of all of the Members, which shall mean the 2/3 of the membership interests or unanimous vote of all membership interests or consent of the Members entitled to vote hereunder at the time that the vote is taken, or deemed taken.

## ARTICLE XI.

## MEETINGS OF MEMBERS

1. Place of Meeting. All meetings of Members shall be held at the principal office of the Company as provided in Article III above or at such other place as may be designated by the Member(s) calling the meeting.

2. Annual Meeting. Commencing with the calendar year next following the calendar year in which the Company was organized, annual meetings of the Members may be held on any day of the year at such hour as may be designated in the notice of the meeting, if such day is a Business Day, and if not a Business Day, then on the next following day that is a Business Day. If the annual meeting is not held on the date above specified, the Managing Members shall cause a meeting in lieu thereof to be held as soon thereafter as convenient, and any business transacted or election held at that meeting shall be as valid as if held at the annual meeting. Failure to hold the annual meeting at the designated time shall not work a dissolution of the Company. This provision shall not be construed to require the holding of any annual meeting.

3. Special Meetings. Special meetings of the Members may be called by resolution of the Members holding thirty percent (30%) or more of the Interests, for the purpose of addressing any matter upon which the Members may vote under this Company Agreement. Members may call a meeting by delivering to the Managing Members one or more written requests signed by the requisite number of Members, stating that the signing Members wish to call a meeting and indicating the specific purpose for which the meeting is to be held. Action at the meeting shall be limited to those matters specified in the call of the meeting. This provision shall not be construed to require the holding of any special meetings.

4. Notice. A Notification of all annual and special meetings, stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered by the Managing Members within a reasonable time period prior to the meaning with the presumption that reasonable notices is not less than twenty (20) nor more than sixty (60) days before the meeting to each Member. If the Managing Members fails to timely deliver such notices, then any Member may deliver such

notices to the other Members. The period of prior notice for any special meeting, which the Managing Members or any Member deems to be an emergency meeting, shall be shortened to such reasonable period of time, consistent with the nature of the emergency, sufficient to give actual notice to each Member.

5. Waiver of Notice. Attendance of a Member at a meeting or action taken by written consent shall constitute a waiver of Notification of the meeting, except where such Member attends for the express purpose of objecting to the transaction of any business on the grounds that the meeting is not lawfully called or convened. Notification of a meeting may also be waived in writing. Attendance at a meeting is not a waiver of any right to object to the consideration of matters required to be included in the Notification of the meeting but not so included, if the objection is expressly made at the meeting.

6. Quorum and Attendance. Members representing a Majority-in-Interest of the Members shall constitute a quorum at any meeting of the Members, whether present in person or by proxy.

7. Voting.
   (a) All Members who are not in default hereunder shall be entitled to vote at meetings unless their membership interests are non-voting. Members may vote either in person or by proxy at any meeting. Each Member's percentage voting power at a meeting shall be in proportion to his Interest. Notwithstanding anything contained herein to the contrary, all references to approval or voting by the Members shall mean those Members who are entitled to vote hereunder at the time the vote is taken on such matter.

   (b) The Managing Members shall be elected by the Majority in Interest and may only be removed in accordance with these regulations.

8. Adjournment. The Managing Members of the meeting shall have the power to adjourn the meeting from time to time, without notice, other than announcement of the time and place of the resumption of the adjourned meeting. Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

9. Conduct of Meetings. The Managing Members shall conduct the meetings of the Members, including, without limitation, the determination of Persons entitled to vote, the existence of a quorum, the satisfaction of the requirements of this Article XI, the conduct of voting, the validity and effectiveness of any proxies, and the determination of any controversies, votes or challenges arising in connection with or during the meeting or voting. The Managing Members shall designate a Person to take minutes of each meeting. The minutes of each meeting of the Members shall be kept in a minute book and shall be approved by the Managing Members at the next meeting of Members.

10. Telephone Meetings. Members, Representatives or any committee appointed by the Members, may participate in a meeting by means of telephone conference or similar

communications, and participation in a meeting pursuant to this subsection shall constitute presence in person at the meeting.

11. Action by Written Consent. Any action that may be taken at a meeting of the Members may be taken without a meeting, upon prior written notice to each Member of the proposed action, if a consent in writing, setting forth the action to be taken, shall be signed by Members who are entitled to vote hereunder and who are holding the percentage of Interests required to approve such action under this Company Agreement. Such consent shall have the same force and effect as a vote of the signing Members at a meeting duly called and held pursuant to this Article XII. Notification of any action taken by means of a written consent of Members shall be sent, within a reasonable time after the date of the consent, by the Managing Members, to all Members who did not sign the written consent.

12. Proxies. A Member may vote either in person or by proxy executed in writing by the Member or its Representative. A facsimile, electronic mail, telegram, telex, cablegram or similar transmission by the Member, or a photographic, photo static, facsimile or similar reproduction of a writing executed by the Member shall be treated as an execution in writing for purposes of this Article. Proxies for use at any meeting of Members or in connection with the taking of any action by written consent shall be filed with the Managing Members, before or at the time of the meeting or execution of the written consent, as the case may be. All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the Managing Members who shall decide all questions touching upon the qualification of voters, the validity of the proxies, and the acceptance or rejection of votes, unless an inspector or inspectors shall have been appointed by the Managing Members, in which event such inspector or inspectors shall decide all such questions. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Should a proxy designate two or more Persons to act as proxies, unless such instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers thereunder are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one, or if an even number attend and a majority do not agree on any particular issue, the Company shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Interests that are the subject of such proxy are to be voted with respect to such issue.

13. Information.

a. In addition to the other rights specifically set forth in this Company Agreement, each Member is entitled to all information to which that Member is entitled to have access pursuant to the Act under the circumstances and subject to the conditions therein stated.

b. The Members acknowledge that, from time to time, they may receive information from or regarding the Company or each other in the nature of trade secrets or that otherwise

is confidential, the release of which may be damaging to the Company or each other or Persons with which they do business. Each Member shall hold in strict confidence any information it receives regarding the Company or each other that is identified as being confidential (and if that information is provided in writing, that is so marked) and may not disclose it to any Person other than another Member or Managing Member, except for disclosures (i) compelled by law (but the Member must notify the Managing Members and the other Members promptly of any request for that information, before disclosing it if practicable), (ii) to advisors or representatives of the Member, (iii) to Persons to which that Member's Interest may be transferred as permitted by this Company Agreement, but only if the recipients have agreed to be bound by the provisions of this Article, (iv) of information that such Member has also received from a source independent of the Company that the Member reasonably believes obtained the information without breach of confidentiality, or (v) of matters which have become of public knowledge. The Members acknowledge that breach of the provisions of this Article may cause irreparable injury to the Company for which monetary damages are inadequate, difficult to compute, or both. Accordingly, the Members agree that the provisions of this Article may be enforced by specific performance.

## ARTICLE XII.

## INTENTIONALLY OMITTED

## ARTICLE XIII.

## DISSOLUTION AND WINDING UP

1. Events Causing Dissolution. The Company shall be dissolved upon the first of the following events to occur:

   (a) the expiration of the term of duration of the Company set forth in the Certificate of Formation;

   (b) the written consent of 2/3 (two-thirds) of the Membership interests entitled to vote hereunder at any time with approval of the Managing Members to dissolve and wind up the affairs of the Company;

   (c) the occurrence of any other event that causes the dissolution of a limited liability company under the Act.

2. Winding Up. If the Company is dissolved pursuant to Article XIII, Section 1, the Company's affairs shall be wound up as soon as reasonably practicable in the manner set forth below.

(a) The winding up of the Company's affairs shall be supervised by a liquidator. The liquidator shall be the Managing Members or, if the Managing Members prefers, a liquidator or liquidating committee selected by the Managing Members.

(b) In winding up the affairs of the Company, the liquidator shall have the right and unlimited discretion, for and on behalf of the Company;

(i) to prosecute and defend civil, criminal or administrative suits;
(ii) to collect Company Assets, including obligations owed to the Company;
(iii) to settle and close the Company's business;
(iv) to dispose of and convey all Company Assets for cash, and in connection therewith to determine the time, manner and terms of any sale or sales of Company Assets, having due regard for the activity and condition of the relevant market and general financial and economic conditions;
(v) to pay all reasonable selling costs and other expenses incurred in connection with the winding up of the proceeds of the disposition of Company Assets;
(vi) to discharge the Company's known liabilities and, if necessary, to set up, for a period not to exceed five (5) years after the date of dissolution, such cash reserves as the liquidator may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company;
(vii) to distribute any remaining proceeds from the sale of Company Assets to the Members;
(viii) to prepare, execute, acknowledge and file articles of dissolution under the Act and any other certificates, tax returns or instruments necessary or advisable under any applicable law to effect the winding up and termination of the Company; and
(ix) to exercise, without further authorization or consent of any of the parties hereto or their legal representatives or successors in interest, all of the powers conferred upon the Managing Members under the terms of this Company Agreement to the extent necessary or desirable in the good faith judgment of the liquidator to perform its duties and functions.

3. <u>Compensation of Liquidator</u>. The liquidator appointed as provided herein shall not be entitled to receive any compensation for its services unless otherwise agreed upon by the liquidator and the Managing Members.

4. <u>Distribution of Company Assets and Proceeds of Sale Thereof</u>.

(a) Upon completion of all desired sales of Company Assets, and after payment of all selling costs and expenses, the liquidator shall distribute the proceeds of such sales, and the Company Assets that are to be distributed in kind, to the following groups in the following order of priority:

(i) to the extent permitted by law, to satisfy Company liabilities to creditors, including Members who are creditors (other than for past due Company

distributions) of the Company, whether by payment or establishment of reserves;

(ii) to satisfy Company obligations to Members to pay past due Company distributions;

(iii) to the Members, in accordance with the positive balance in their respective Capital Accounts; and

(iv) to the Members in accordance with their respective Interests.

(b) The claims of each priority group specified above shall be satisfied in full before satisfying any claims of a lower priority group. If the assets available for disposition are insufficient to dispose of all of the claims of a priority group, the available assets shall be distributed in proportion to the amounts owed to each creditor or the respective capital account balances or Interests of each Member in such group.

5. Final Audit. Within a reasonable time following the completion of the liquidation, the liquidator shall supply to each of the Members a statement which shall set forth the assets and the liabilities of the Company as of the date of complete liquidation and each Member's pro rata portion of distributions pursuant to these regulations.

6. Deficit Capital Accounts. Notwithstanding anything to the contrary contained in this Company Agreement, and notwithstanding any custom or rule of law to the contrary, to the extent that the deficit, if any, in the Capital Account of any Member results from or is attributable to deductions and losses of the Company (including non-cash items such as depreciation), or distributions of money pursuant to this Company Agreement to all Members in proportion to their respective Interests, upon dissolution of the Company such deficit shall not be an asset of the Company and such Member shall not be obligated to contribute such amount to the Company to bring the balance of such Member's Capital Account to zero.

## ARTICLE XIV.

## INDEMNIFICATION AND INSURANCE

1. Indemnification and Advance of Expenses. The Company shall indemnify and/or advance expenses to a Person who was, is, or is threatened to be made a named defendant or respondent in a proceeding because the person (i) is or was a Managing Members, Member, officer, employee or agent of the Company, or (ii) is or was serving at the request of the Company as a Managing Member, Member, director, officer, partner, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise, to the fullest extent provided by, and in accordance with the procedures set forth in, any applicable laws; provided, however, that in the following respects as applied to the Company, the following provisions shall apply:

(a) Indemnification of any Person who has satisfied the standard of conduct set forth in the Act shall be mandatory rather than optional. The determination under the Act that indemnification shall be made shall also constitute authorization of indemnification under the Act.

(b) Advancement of expenses to a Person who has satisfied the requirements of the Act shall be mandatory rather than optional.

(c) Payment or reimbursement of expenses to a Person pursuant to the Act in connection with his appearance as a witness or other participation in a proceeding shall be mandatory rather than optional.

2. Insurance. Subject to certain provisions in the Act, the Company may, but shall not be obligated to, purchase and maintain insurance or other arrangements on behalf of any Person who is or was a Managing Member, Officer, Member, employee, agent or other Person identified above in Article XIV, Section 1 against any liability asserted against him or incurred by him in such a capacity or arising out of his status as such a Person, whether or not the Company would have the power to indemnify him against that liability under Article XIV, Section 1 or otherwise.

3. Limit on Liability of Members. The indemnification set forth in this regulations shall in no event cause the Members to incur any personal liability beyond their total Capital Contributions, nor shall it result in any other liability of the Members to any third party.

## ARTICLE XV.

## MISCELLANEOUS PROVISIONS

1. Entire Agreement. This Company Agreement contain the entire agreement among the Members relating to the subject matter hereof, and all prior agreements relative hereto which are not contained herein are terminated.

2. Law Governing. This Company Agreement shall be governed by and construed in accordance with the local, internal laws of the State of Texas. In particular, this Company Agreement are intended to comply with the requirements of the Act and the Certificate of Formation. In the event of a direct conflict between the provisions of this Company Agreement and the mandatory provisions of the Act or any provision of the Certificate of Formation, the Act and the Certificate of Formation, in that order of priority, will control. In the event that the Act is re-codified by the Legislature, then any such references made within this document shall refer to the newly codified Act and its corresponding sections.

3. Conference Telephone Meetings. Meetings of the Members, Managing Members or any committee may be held by means of conference telephone or similar communications equipment so long as all Persons participating in the meeting can hear each other. Participation in a meeting by means of conference telephone shall constitute presence in

person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business thereat on the ground that the meeting is not lawfully called or convened.

4. Successors and Assigns. Subject to restrictions on Transfers and assignments herein, this Company Agreement shall be binding upon and shall inure to the benefit of the Members and their respective heirs, legal representatives, successors and assigns.

5. Severability. This Company Agreement are intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Company Agreement or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, but the extent of such invalidity or unenforceability does not destroy the basis of the bargain among the Members as expressed herein, the remainder of this Company Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

6. Headings. The Article and Article headings appearing in this Company Agreement are for convenience of reference only and are not intended, to any extent or for any purpose, to limit or define the text of any Article.

7. Construction. Whenever required by the context, as used in this Company Agreement, the singular number shall include the plural, and vice versa, and the gender of all words used shall include the masculine, feminine and the neuter. Unless expressly stated herein, all references to Articles refer to articles of this Company Agreement, and all references to Schedules are to schedules attached hereto, each of which is made a part hereof for all purposes.

8. Offset. Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

9. Effect of Waiver or Consent. A waiver or consent to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run. No waivers shall be enforceable unless in writing and running in favor of the Person claiming the benefit of same.

10. Further Assurance. In connection with this Company Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments, and perform any additional acts, that may be necessary or appropriate to effectuate and perform the provisions of this Company Agreement and those transactions.

11. Waiver of Certain Rights. Each Member irrevocably waives any right it may have to maintain any action for dissolution of the Company or for partition of the Property of the Company.

12. Counterparts and Binding Effect. This Company Agreement may be executed in one or more counterparts, each of which shall be an original but all of which taken together shall constitute a single document. This Company Agreement shall be binding upon each Member as evidenced by their signatures below.

13. Attorney's Fees. If any Member becomes involved in litigation or proceedings arising out of this Agreement or the performance thereof, the court or tribunal in such litigation or proceeding, or in a separate suit, shall award attorney's fees to the prevailing party. Unless judgment goes by default, the attorney fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorney's fees actually incurred in good faith, regardless of the size of the judgment, it being the intention of the Members to fully compensate for all the attorney's fees paid or incurred in good faith.

14. Amendment of Agreement. This Company Agreement may be amended only in writing, in whole or in part, at any time only by the execution thereof by 2/3 of the Membership interests entitled to vote thereon with Managing Members' approval.

15. Joinder of Managing Members. The Initial Managing Members have joined in this Company Agreement for the purposes of acknowledging his appointment and agreeing to all requirements for performance by Managing Members hereunder. A Successor Managing Member, if any, shall also be required to join in this Company Agreement in the same manner and for the same purpose as the Initial Managing Members.

16. Notices. Notifications, as defined above, given under this Company Agreement shall be duly given to the appropriate addresses, fax number, email addresses set forth below (or to such other addresses or numbers as a party may designate as to itself by notice to the other):

If to Company:

FHC Acquisition, LLC
Attn: Timothy Barton
1755 Wittington Place, Suite 340
Farmers Branch, TX 75234

If to the Member:

Dallas Real Estate Lenders, LLC
Attn: Timothy Barton
1755 Wittington Place, Suite 340
Farmers Branch, TX 75234

With a copy to:

Palisades TC LLC
Attn: Joaquin Charles de Monet, Manager
1919 McKinney Avenue, Suite 100
Dallas, TX 75201

*[Remaining Portion of this Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Members of the Company have evidenced the adoption of this Company Agreement in accordance with the Act by their signatures below, such adoption to be effective as of the date first above written.

**MEMBERS:**

Dallas Real Estate Lenders, LLC
a Delaware limited liability company

By: Dallas Real Estate Investors
a Delaware limited liability company
Its: Manager

By: ______________________
Name: Timothy Barton
Its: President

# SCHEDULE A

| Member Name & Address | Initial Capital Contributions | Interest | Profit/Loss |
|---|---|---|---|
| Dallas Real Estate Lenders, LLC<br>1755 Wittington Place<br>Suite 340<br>Farmers Branch, TX 75234 | $100.00 | 100% | 100% |