# Exhibit "D"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re:<br><br>DALLAS REAL ESTATE<br>INVESTORS, LLC,<br><br>Debtor. | ) ) ) ) ) ) ) ) | **Case No. 21-41488-elm-11**<br><br>August 11, 2021<br>9:30 a.m. |

TRANSCRIPT OF TELEPHONIC
341(a) MEETING OF CREDITORS

PRESIDING OFFICER: ERIN SCHMIDT,
UNITED STATES TRUSTEE'S OFFICE.

APPEARANCES:

| | |
|---|---|
| For the U.S. Trustee: | Erin Schmidt<br>OFFICE OF THE UNITED STATES TRUSTEE<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242<br>(214) 767-8967 |
| For the Debtor: | Kerry Alleyne<br>JOYCE W. LINDAUER ATTORNEY, PLLC<br>1412 Main Street, Suite 500<br>Dallas, TX 75202<br>(972) 503-4033 |
| For Palisades TC, LLC.: | Suzanne K. Rosen<br>FORSHEY & PROSTOK, LLP<br>777 Main Street, Suite 1550<br>Fort Worth, TX 76102<br>(817) 878-2018 |
| For The Gate Property Owners Association: | Jacob Sparks<br>SPENCER FANE, LLP<br>2200 Ross Avenue, Suite 4800 West<br>Dallas, TX 75201<br>(214) 750-3624 |

Transcribed by:

Kathy Rehling
311 Paradise Cove
Shady Shores, TX 76208
(972) 786-3063

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

FHC $9,250,000 for the real property nine months ago; is that right?

MR. BARTON: Correct.

MR. SPARKS: And who made that offer?

MR. BARTON: Well, there's confidentiality. And I'll -- can talk to the lawyers and see if we can disclose that to you.

MR. SPARKS: And you said that you believe the dirt is worth $10 million; is that right?

MR. BARTON: Correct.

MR. SPARKS: Does that valuation take into account the restrictive covenants on the property?

MR. BARTON: All of the covenants that are in place, correct.

MR. SPARKS: Okay. Thank you. I'll pass the witness.

MS. SCHMIDT: All right. Thank you, Mr. Sparks.

Ms. Rosen, any questions?

MS. ROSEN: Your Honor.

EXAMINATION BY MS. ROSEN

MS. ROSEN: Good morning, Mr. Barton. I have a quick question. I'm looking at Docket No. 16, which were the original schedules, and I'm looking at Schedule G, which is on Page 16 of 18. And there you have listed a settlement agreement -- a settlement agreement contract to be assumed.

And that's with Palisades. Is it the Debtor's intention to assume that executory contract?

MR. BARTON: Yes.

MS. ROSEN: And are you aware that when an executory contract is assumed that the Debtor is required to pay any outstanding defaults?

MR. BARTON: I don't understand what you mean.

MS. ROSEN: It means that when a debtor assumes a contract, in order to be able to assume an executory contract, you have to pay any amounts that are owing on the contract in order to be able to assume it.

MR. BARTON: Correct.

MS. ROSEN: Okay. And so my question is it says here that the executory -- the settlement agreement, as an executory contract, is to be assumed. And do you know how much is currently owed? I think you said earlier it was something over $4 million under the settlement agreement.

MR. BARTON: It's less than $4 million because there's been payments that have already been made.

MS. ROSEN: Okay. So less than $4 million, but over $3 million?

MR. BARTON: Correct.

MS. ROSEN: And how is the Debtor going to be able to assume that executory contract? With what money?

MR. BARTON: It's in negotiations as we speak with

parties that are going to invest into -- into the Debtor's entity and pay off the settlement agreement.

MS. ROSEN: And what's the time schedule on that?

MR. BARTON: Right now, we believe it will be done in less than 60 days.

MS. ROSEN: And what's the status of the negotiations? Are these just verbal negotiations? Do you have -- have you exchanged a letter of intent or a term sheet? Or what's the -- what's the status on those negotiations?

MR. BARTON: There was a letter of intent and it moved to a term sheet and now we're working on a actual contract that would be the final document for the closing.

MS. ROSEN: Okay. Do you recall --

(Interruption.)

MS. SCHMIDT: All right. We are back on the record. Ms. Rosen, do you want to ask your question again, if you can remember what it was?

MS. ROSEN: I'll do my best.

Okay. So, Mr. Barton, last week, Palisades and the Debtor and some other of the related entities entered into an agreed order on a motion that had previously been filed by Palisades. And as part of that agreed order, FHC Acquisition, Dallas Real Estate Lenders, and the Debtor and Palisades agreed to provide each other with copies of any

letters of intent, term sheets, purchase and sale agreements, or similar documents relating to any investment or potential investment in the Frisco property, FHC Acquisition, or Dallas Real Estate Lenders.

And it sounds like you are telling me that the Debtor has a letter of intent and a term sheet with a third party relating -- that will result in some sort of a recapitalization of the property. And I guess my question is, have those documents been provided to Palisades? To my knowledge, they have not. And when will they be provided?

MR. BARTON: Yes. I can check with our lawyers, I know they've been given to them, and it's, you know, in the process of getting over to Palisades.

MS. ROSEN: By your lawyers, do you mean Ms. Lindauer?

MR. BARTON: Ms. Lindauer and also Mr. Metzger, Steve Metzger.

MS. ROSEN: And is -- I apologize. Who's on the line from Ms. Lindauer's firm?

MS. ALLEYNE: Kerry Alleyne.

MS. ROSEN: Hi. Ms. Alleyne, would you mind, please, providing us with copies of those documents?

MS. ALLEYNE: I mean, I'll check in on the status with Ms. Lindauer and Mr. Metzger. I wasn't involved, so I'll look into it.

MS. ROSEN: I just want to make a formal demand for those records. I mean, that was part of our deal last week, was that those things are supposed to be provided. And I appreciate Mr. Barton saying that those will be provided to us, and I just -- we need -- we need to get those documents. Okay.

MS. ALLEYNE: Well, --

MS. ROSEN: So, Mr. Barton, --

MS. ALLEYNE: -- not going to accept this as a venue for a formal demand. I will check into it. I have no idea what occurred. I wasn't involved.

MS. ROSEN: Okay. No, I appreciate it. We've just got a court order that those are to be turned over, and I just want to make sure that those are going to be turned over.

MR. BARTON: We'll get it done.

MS. ROSEN: Okay.

MR. BARTON: No problem.

MS. ROSEN: Okay. I appreciate it. Thank you.

Mr. Barton, okay. Another question. As to FHC (inaudible) level relating to the property, is there any bank debt on the property?

MR. BARTON: Yes.

MS. ROSEN: How much is that bank debt?

MR. BARTON: I believe it's $3-1/2 -- $3.2 [million]

MS. SCHMIDT: All right. With that, I'm going to go ahead and conclude the meeting of creditors. I'm going to hit the stop button on the recorder.

(Whereupon, after 50 minutes, the meeting of creditors was concluded.)

--oOo--

CERTIFICATE

I certify that the foregoing is a correct transcript to the best of my ability from the electronic sound recording provided of the proceedings in the above-entitled matter.

**/s/ Kathy Rehling** **08/19/2021**

_____________________________________ ____________________

Kathy Rehling, CETD-444 Date
Certified Electronic Court Transcriber

INDEX

PROCEEDINGS 3

WITNESSES

Tim Barton, Debtor's Representative

Examination by Ms. Schmidt 4
Examination by Mr. Sparks 24
Examination by Ms. Rosen 27

EXHIBITS

END OF MEETING 36

INDEX 37