Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DALLAS REAL ESTATE** | § | |
| **INVESTORS, LLC,** | § | **CASE NO. 21-41488-elm** |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

# DEBTOR'S DISCLOSURE STATEMENT

**TABLE OF CONTENTS**

ARTICLE I – INTRODUCTION ....................................................................................3

ARTICLE II - REPRESENTATIONS.............................................................................9

ARTICLE III - FINANCIAL STATUS OF THE DEBTOR.........................................11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY............................12

ARTICLE V- SUMMARY OF THE PLAN ................................................................13

ARTIVLE VI – PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS .........13

ARTICLE VII – MEANS FOR IMPLEMENTATION OF PLAN ..............................15

ARTICLE VIII – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES..........................................................................................................15

ARTICLE IX – FEASIBILITY OF PLAN.................................................................16

ARTICLE X – ALTERNATIVES TO DEBTOR'S PLAN .........................................16

ARTICLE XI - RISKS TO CREDITORS UNDER CREDITOR'S PLAN .................17

ARTICLE XII - TAX CONSEQUENCES TO THE DEBTOR...................................17

ARTICLE XIII - PENDING LITIGATION...............................................................20

ARTICLE XIV - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE........................................................................................................20

EXHIBITS:

Plan of Reorganization ......................Exhibit A

Monthly Operating Reports ..............Exhibit B

# ARTICLE I
# INTRODUCTION

## Identity of the Debtor

**1.01** Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on June 22, 2021 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

**Capitalized words in this Disclosure Statement shall have the meanings assigned to them in the Debtor's Plan of Reorganization.**

## Purpose of This Disclosure; Source of Information

**1.02** The Debtor submits this Disclosure Statement pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan. A copy of the Plan is attached hereto as **Exhibit "A"** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. This Disclosure Statement describes the operations of the Reorganized Debtor contemplated under the Plan.

The source of information for this Disclosure Statement is the Debtor's records and all filings in this case.

## Explanation of Chapter 11

**1.03** Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## Explanation of the Process of Confirmation

**1.04** Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05** Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06** The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07** Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

**Voting Procedures**

**1.08** **Unimpaired Claims**. Administrative Claimants are not impaired under the Plan.

**1.09** **Impaired Classes**. The Class 1 and 2 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by all Classes. Each holder of an Allowed Claim in Classes 1 and 2may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant or Equity Interest Holder eligible to vote on the Plan. For all Classes, the ballot must be returned to the Debtor's attorney, Joyce Lindauer, Attorney at Law, 1214 Main St., Suite 500, Dallas, Texas 75202. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**1.10** **Acceptances**. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**Best Interests of Creditors Test**

**1.11** Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly,

the proposed plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. Since **the Plan proposes to pay all creditors in full** on their allowed claims, the Debtor believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

**Definition of Impairment**

**1.12** As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or
>
> notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:
>
> cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**Classification and Treatment of Claims and Interests**

**1.13** The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

**1.14** Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute or have been litigated to a Final Order, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.15** In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

**Requirements for Confirmation of the Plan**

**1.16** At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(i) such class has accepted the plan; or

(ii) such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii) with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding five years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that its contributions to the Debtor and the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**Cramdown**

**1.17** The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.18** "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c) the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

> (a) that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

> (b) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.19** In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. The absolute priority rule requires that prior to the Debtor retaining or receiving any non-exempt property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

## ARTICLE II
## REPRESENTATIONS

**2.01** This Disclosure Statement is provided pursuant to Section 1125 of the Code to all the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02** The information contained in this Disclosure Statement has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

**2.03** No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure Statement. The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure Statement should not be relied upon by you in reaching your decision on how to vote on the Plan. Any representation or inducement made to you not contained herein should be reported to the attorneys for the Debtor who shall deliver such information to the Court for such action as may be appropriate.

**2.04** ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05** THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06** THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07** THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

# ARTICLE III
# FINANCIAL STATUS OF THE DEBTOR

## Financial History and Background of the Debtor

**3.01** The Debtor shall continue its business after the Confirmation Date. The Debtor owns a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). The other 50% equity interest owner of DREL is Palisades TC, LLC ("Palisades"). Under the Plan the Debtor will obtain an interim loan in the approximate amount of $5,000,000.00 for the purpose of a) assuming and performing a pre-petition executory agreement with Palisades to purchase Palisades' equity interest in DREL, and b) funding Plan payments to the Debtor's general unsecured creditors pursuant to the Plan.

**3.02** The Debtor's assets consist of its 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") as described above.

In the Schedules of Assets and Liabilities, the Debtor lists aggregate liabilities in the amount of $4,309,989.59 as of the Petition Date. The Claim of Palisades TC, LLC is scheduled in the amount of $3,500,000.00 and is the largest Claim in this Case. For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case, and the Court's register of claims filed in the Case.

The Frisco Independent School District and the City of Frisco filed Secured Claims for property taxes allegedly owed by the Debtor; however, the Debtor does not own the subject real property and is not obligated for the taxes. The taxing authorities are not treated or paid under the Plan.

## Current Operations

**3.03** The Debtor's current operations are reflected in its monthly operating reports filed with the Court. All the Debtor's monthly operating reports filed to date are attached hereto as ***Exhibit "B"***.

## Future Management of the Debtor

**3.04** Future management of the Debtor shall consist of the Debtor's Managing Member and staff.

## Source of Information for Disclosure Statement

**3.05** The source of information for this Disclosure Statement is the Debtor and its records, as well as the filings in this case.

## ARTICLE IV
## ANALYSIS AND VALUATION OF PROPERTY

### 4.01 Property

The only asset of the Debtor is a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). In the Debtor's opinion the value of the Property is $10,000,000.00. The City of Frisco appraises the Property at $5,255,150 for tax purposes.

### 4.02 Liquidation Analysis

Liabilities are shown in the amounts scheduled by the Debtor, unless otherwise stated.

**Assets**

| | |
|---|---|
| Equity interest in DREL | $3,500,000.00[1] |
| Less 5% liquidation costs | <$175,000.00> |
| **Total Assets** | $3,325,000.00 |

**Liabilities**

| | | |
|---|---|---|
| Administrative Expenses and UST Fees | | $10,000[2] |
| Class 1 | Claims of Palisades, TC, LLC | $3,500,000 |
| Class 2 | General Unsecured Claims | $293,652 |
| Class 3 | Insider Claims | $516,337 |
| Class 4 | Equity Interests | |
| **Total Liabilities** | | $4,319,989 |

| | |
|---|---|
| **TOTAL ASSETS LESS TOTAL LIABILITIES** | **<$994,989>** |

***NOTE:***

---

1. In its Motion for Relief from Stay filed in this Case (Doc. No. 25), Palisades alleges that there is no equity in the Property, meaning that Palisades believes that the Property is worth no more than the amount of its Claim, which the Debtor scheduled for $3,500,00.00. The Debtor assumes that in a Chapter 7 liquidation the only bidding party, if any, for its interest in DREL would be Palisades.

2. Debtor's estimate.

- **The above analysis indicates that in a Chapter 7 liquidation Unsecured Claimants would receive nothing.**

- **This Plan pays 100% to Unsecured Claims, with interest.**

## ARTICLE V
## SUMMARY OF THE PLAN

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
|---|
| Class 1: Allowed Claims of Palisades TC, LLC |
| Class 2: General Unsecured Claims |
| Class 3: Insider Claims |
| Class 4: Equity Interests |

## ARTICLE VI
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

***A. NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy

Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**General Provisions Regarding Treatment of Claims.**

**No pre-payment penalty**. No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

**Default remedies.** In the event of a default under the Plan, the affected Claimant or its counsel shall provide notice to counsel for the Debtor/Reorganized Debtor. The Debtor/Reorganized Debtor shall have twenty (20) days to cure the default. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of notice, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to contract or state law outside the Bankruptcy Court without further notice.

**Plan voting.** Impaired Claims are entitled to vote to accept or reject the Plan.

**Class 1: Allowed Claims of Palisades TC, LLC**

This Claim shall be paid in full. This Claim shall bear interest at the rate of five percent (5%) per annum, accruing as of the Effective Date. Monthly installments of interest-only shall commence on the first day of the first month following the Effective Date and continue on the first day of each succeeding month until a final lump sum payment of the full remaining balance is made on the last day of the sixth (6th) month following the Effective Date. This Class is IMPAIRED.

**Class 2 Allowed General Unsecured Claims**

Class 2 shall consist of Allowed Unsecured Claims, other than the Claims of Class 3 Insiders. Class 2 Claims shall be paid in full in 24 equal monthly installments of principal and interest, commencing on the first (1st) day of the first calendar month following the Effective Date and continuing on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date at the rate of 2% per annum. This Class is IMPAIRED.

**Class 3: Allowed Insider Claims**

Class 3 shall consist of the Allowed Claims of Insiders of the Debtor. Class 3 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 3 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 4 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF PLAN

**7.01 Implementation of Plan**. The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). The other 50% equity interest owner of DREL is Palisades TC, LLC ("Palisades"). Under the Plan the Debtor will obtain an interim loan in the approximate amount of $5,000,000.00 for the purpose of a) assuming and performing a pre-petition executory agreement with Palisades to purchase Palisades' equity interest in DREL, and b) funding Plan payments to the Debtor's creditors pursuant to the Plan.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01 Rejection of Executory Contracts and Unexpired Leases**. All of the Debtor's unexpired leases of real property and executory contracts are hereby deemed rejected as of the Effective Date of the Plan unless specifically assumed by separate motion and order prior to the Confirmation Date or as part of Confirmation of the Plan in this case.

The Debtor hereby ASSUMES the executory Agreement between it (and others) and Palisades TC, LLC dated January 11, 2021, and will perform the Agreement under the terms described in the above treatment of Class 1 Claims.

**8.02 Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**8.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is

filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE IX
## FEASIBILITY OF PLAN

**9.01** The Debtor asserts that its Plan is feasible based on **Exhibit "B."** The funds necessary to fund the Plan will come from an interim loan in the approximate amount of $5,000,000.00. The Debtor has identified a prospective lender and anticipates that it will be able to obtain an interim loan due to the significant value of the real property in which the Debtor has an indirect interest.

All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action. To the extent of any recovery on claims and causes of action that belong to the Reorganized Debtor as disclosed herein, if any, such funds will be contributed by the Reorganized Debtor (less costs and expenses associated with any litigation) to pay the Class 2 creditors with Allowed Claims.

### Procedure for Filing Proofs of Claims and Proofs of Interests

**9.02** All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**9.03** If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed. The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours. If the equity security interest of an Equity Interest Holder is properly reflected in the book and records of the Debtor, a proof of interest need not be filed.

## ARTICLE X
## ALTERNATIVES TO DEBTOR'S PLAN

**10.01** If this Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. It is also possible that the Debtor's case may be dismissed if this Plan is not confirmed.

## ARTICLE XI
## RISKS TO CREDITORS UNDER THE PLAN

**11.01** Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that an interim loan will provide the funds to pay the Debtor's obligations under the Plan. The Debtor does not "guarantee" that the expenses will equal those in the projections; however, the Debtor believes that the projections are reasonable. The Debtor anticipates that the Reorganized Debtor will meet its projections and will be able to pay back its creditors as set forth herein.

## ARTICLE XII
## TAX CONSEQUENCES TO THE DEBTOR

**12.01** TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or The Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances

or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"***COD***" shall mean cancellation of indebtedness income.
"***NOL***" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

If the creditors give up all or a portion of their debt in return for stock the Company would change the debt to equity on its books and the Creditor would own their stock with a cost basis equal to the amount of debt given up to purchase it.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## ARTICLE XIII
## PENDING LITIGATION

**13.01** On August 26, 2021 Palisades TC, LLC filed a *Motion to Enforce Agreed Order on Emergency Motion for Order Finding Stay Does Not Apply or, Alternatively, for Relief from the Automatic Stay to File Memorandum of Agreement and For Sanctions*, which the Debtor has opposed. On August 24, 2021, Palisades TC, LLC filed a *Motion to Convert Case from Chapter 11 to 7 or dismiss for Cause Under Section 1112(b) of the Bankruptcy Code*, which the Debtor has also opposed.

## ARTICLE XIV
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**14.01** On August 4, 2021, the Court entered an Order approving the Debtor's employment of Joyce W. Lindauer Attorney, PLLC as counsel for the Debtor in this Case.

Respectfully Submitted By:

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com

**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*

President of the Debtor as
Proponent of the Plan

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DALLAS REAL ESTATE** | § | |
| **INVESTORS, LLC,** | § | **CASE NO. 21-41488-elm** |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

# DEBTOR'S PLAN OF REORGANIZATION

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW Dallas Real Estate Investors, LLC, ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Plan of Reorganization (the "Plan"). The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). The other 50% equity interest owner of DREL is Palisades TC, LLC ("Palisades"). Under the Plan the Debtor will obtain an interim loan for the purpose of a) assuming and performing a pre-petition executory agreement with Palisades to purchase Palisades' equity interest in DREL, and b) funding Plan payments to the Debtor's creditors pursuant to the Plan. The sources and uses of funds to execute the Plan are described in more detail in the Disclosure Statement accompanying this Plan. Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.



**EXHIBIT "A"**

**TABLE OF CONTENTS**

ARTICLE I - DEFINITIONS AND USE OF TERMS .................... 3

ARTICLE II - CONCEPT OF THE PLAN .................... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS .................... 6

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .................... 7

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS .................... 7

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN .................... 9

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES .................... 10

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS .................... 10

ARTICLE IX - EFFECT OF CONFIRMATION .................... 11

ARTICLE X - MISCELLANEOUS PROVISIONS .................... 12

ARTICLE XI - MODIFICATION OF THE PLAN .................... 13

ARTICLE XII - RETENTION OF JURISDICTION .................... 13

# ARTICLE I
## DEFINITIONS AND USE OF TERMS

**Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 21-41488-elm-11, styled as Dallas Real Estate Investors, LLC, pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means November 9, 2021, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

“**Business Day**” shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

“**Claim**” shall have the meaning set forth in Bankruptcy Code § 101(5).

“**Claimant**” or “**Creditor**” means the holder of a Claim or interest in Assets.

“**Class**” means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

**“Collateral”** means the real or personal property securing a Secured Claim.

“**Confirmation**” means the Bankruptcy Court’s entry of the Confirmation Order.

“**Confirmation Date**” means the date on which the Order confirming this Plan is entered.

“**Confirmation Hearing**” means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

“**Confirmation Order**” means the Order confirming this Plan.

“**Contested**” when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor’s Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor’s Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

“**Debtor**” means Dallas Real Estate Investors, LLC, the Debtor herein. Where the context so requires, “**Debtor**” shall also include the Reorganized Debtor.

“**Disputed**” with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor’s bankruptcy schedules as “disputed, contingent or unliquidated” and for which such Creditor or Interest holder has not filed a Proof of Claim.

“**Effective Date**” means the thirtieth (30th) day after the Confirmation Date.

“**Estate**” means the bankruptcy estate of the Debtor in this Case.

“**Fee Claim**” means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means June 22, 2021, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Chapter 11 Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**"Priority Wage Claim"** means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

**"Priority Unsecured Claim"** means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**"Reorganized Debtor"** means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general Unsecured Claim for the remainder, pursuant to Bankruptcy Code § 506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01** The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). The other 50% equity interest owner of DREL is Palisades TC, LLC ("Palisades"). Under the Plan the Debtor will obtain an interim loan in the approximate amount of $5,000,000.00 for the purpose of a) assuming and performing an executory pre-petition agreement with Palisades to purchase Palisades' equity interest in DREL, and b) funding Plan payments to the Debtor's creditors pursuant to the Plan.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
|---|
| Class 1: Allowed Claims of Palisades TC, LLC |
| Class 2: General Unsecured Claims |
| Class 3: Insider Claims |
| Class 4: Equity Interests |

## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

***A. NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

> **Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities

incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**General Provisions Regarding Treatment of Claims.**

**No pre-payment penalty**. No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

**Default remedies.** In the event of a default under the Plan, the affected Claimant or its counsel shall provide notice to counsel for the Debtor/Reorganized Debtor. The Debtor/Reorganized Debtor shall have twenty (20) days to cure the default. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of notice, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to contract or state law outside the Bankruptcy Court without further notice.

**Plan voting.** Impaired Claims are entitled to vote to accept or reject the Plan.

**Class 1: Allowed Claims of Palisades TC, LLC**

This Claim shall be paid in full. This Claim shall bear interest at the rate of five percent (5%) per annum, accruing as of the Effective Date. Monthly installments of interest-only shall commence on the first day of the first month following the Effective Date and continue on the first day of each succeeding month until a final lump sum payment of the full remaining balance is made on the last day of the sixth (6th) month following the Effective Date. This Class is IMPAIRED.

**Class 2 Allowed General Unsecured Claims**

Class 2 shall consist of Allowed Unsecured Claims, other than the Claims of Class 5 Insiders. Class 2 Claims shall be paid in full in 24 equal monthly installments of principal and interest, commencing on the first (1st) day of the first calendar month following the Effective Date and continuing on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date at the rate of 2% per annum. This Class is IMPAIRED.

**Class 3: Allowed Insider Claims**

Class 3 shall consist of the Allowed Claims of Insiders of the Debtor. Class 3 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 3 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 4 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01 Implementation of Plan**. The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a 50% equity interest in Dallas Real Estate Lenders, LLC, ("DREL") which owns 100% of FHC Acquisition, LLC, ("FHC"), which owns approximately 4.54 acres of unimproved land located at Syria Gate Way, Blk A, Lot 13, Frisco, TX 75034 (the "Property"). The other 50% equity interest owner of DREL is Palisades TC, LLC ("Palisades"). Under the Plan the Debtor will obtain an interim loan in the approximate amount of $5,000,000.00 for the purpose of a) assuming and performing an executory pre-petition agreement with Palisades to purchase Palisades' equity interest in DREL, and b) funding Plan payments to the Debtor's creditors pursuant to the Plan.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Reorganized Debtor.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases not assumed by the Debtor as of the Confirmation Date shall be deemed as rejected by this Plan.

The Debtor hereby ASSUMES the executory Agreement between it (and others) and Palisades TC, LLC dated January 11, 2021, and will perform the Agreement under the terms described in the above treatment of Class 1 Claims.

**7.02 Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01 The Debtor's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

**8.02 Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and

effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is Disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**9.02 Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge**. Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with

the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

**ARTICLE X**
**MISCELLANEOUS PROVISIONS**

**10.01 Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02 Revocation**. The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03 Effect of Withdrawal or Revocation**. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04 Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05 Entire Agreement**. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06 Section 1146 Exemption.** Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07 Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01 Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02 Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03 Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04 Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05 Plan Modification**. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06 Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07 Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08 Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09 Correct Minor Defects**. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10 Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11 Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12 Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Respectfully Submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com

**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*

President of the Debtor as
Proponent of the Plan

**Miscellaneous:**

21-41488-elm11 Dallas Real Estate Investors, LLC

| | | | | |
|---|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Filed: 06/22/2021 | Closed: |
| Assets: y | Judge: elm | Case Flag: REFORM, DsclsDue, REINSTATED | Reopen: | Dismissed: |
| | | | | Dismissed(jdb): |
| | | | Converted: | Discharged: |
| | | | | Discharged(jdb): |

Summary History Parties Filers Docket Sheet Deadlines/Hearings Status Pending Motions Creditors Claims Register

---

**U.S. Bankruptcy Court**

**Northern District of Texas**

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 7/30/2021 at 2:07 PM CDT and filed on 7/30/2021

**Case Name:** Dallas Real Estate Investors, LLC
**Case Number:** 21-41488-elm11
**Document Number:** 32

**Docket Text:**
Chapter 11 Monthly Operating Report for the Month Ending: 06/30/2021 filed by Debtor Dallas Real Estate Investors, LLC. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**DREI.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=7/30/2021] [FileNumber=46962078-0] [a86900b069500acf70cd81c17b046b7fe1f0cb9a2b5986aa69c4a7e9e551bb6b94 bf3d553914d543d1c928199a56ad7572833a548bb8b02e689a839ff0f4f3ab]]

**21-41488-elm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor Dallas Real Estate Investors, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Jeff P. Prostok on behalf of Creditor Palisades TC, LLC
jprostok@forsheyprostok.com,
jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com

Linda D. Reece on behalf of Creditor Frisco ISD
lreece@pbfcm.com

Suzanne K. Rosen on behalf of Creditor Palisades TC, LLC
srosen@forsheyprostok.com, jjones@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com

Laurie A. Spindler on behalf of Creditor City of Frisco
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A. Spindler on behalf of Creditor Dallas County
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**21-41488-elm11 Notice will not be electronically mailed to:**

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

In Re. Dallas Real Estate Investors §
§
§
Debtor(s) §

Case No. 21-41488

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 06/30/2021

Petition Date: 06/23/2021

Months Pending: 0

Industry Classification: 5 3 1 1

Reporting Method: Accrual Basis ◉ Cash Basis ○

Debtor's Full-Time Employees (current): 0

Debtor's Full-Time Employees (as of date of order for relief): 0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☐ Statement of cash receipts and disbursements
- ☐ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☐ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☐ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Joyce Lindauer
Signature of Responsible Party

Joyce Lindauer
Printed Name of Responsible Party

07/26/2021
Date

1412 Main Street, Suite 500. Dallas Texas 75202
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| Part 1: Cash Receipts and Disbursements | | Current Month | Cumulative |
|---|---|---|---|
| a. | Cash balance beginning of month | $0 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. | Cash balance end of month (a+b-c) | $0 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | | Current Month |
|---|---|---|
| a. | Accounts receivable (total net of allowance) | $0 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. | Inventory (Book ○ Market ○ Other ● (attach explanation)) | $0 |
| d | Total current assets | $10,322,453 |
| e. | Total assets | $10,322,453 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $4,950,000 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $809,990 |
| n. | Total liabilities (debt) (j+k+l+m) | $5,759,990 |
| o. | Ending equity/net worth (e-n) | $4,562,463 |

| Part 3: Assets Sold or Transferred | | Current Month | Cumulative |
|---|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | | Current Month | Cumulative |
|---|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $0 | $0 |

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

## Part 5: Professional Fees and Expenses

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | | |

## Part 6: Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

| | | Answer |
|---|---|---|
| a. | Were any payments made on prepetition debt? (if yes, see Instructions) | Yes ◉ No ○ |
| b. | Were any payments made outside the ordinary course of business without court approval? (if yes, see Instructions) | Yes ○ No ◉ |
| c. | Were any payments made to or on behalf of insiders? | Yes ○ No ◉ |
| d. | Are you current on postpetition tax return filings? | Yes ◉ No ○ |
| e. | Are you current on postpetition estimated tax payments? | Yes ◉ No ○ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ○ No ◉ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ○ No ◉ |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ○ No ○ N/A ◉ |
| i. | Do you have: Worker's compensation insurance? | Yes ○ No ◉ |
| | If yes, are your premiums current? | Yes ○ No ○ N/A ◉ (if no, see Instructions) |
| | Casualty/property insurance? | Yes ○ No ◉ |
| | If yes, are your premiums current? | Yes ○ No ○ N/A ◉ (if no, see Instructions) |
| | General liability insurance? | Yes ◉ No ○ |
| | If yes, are your premiums current? | Yes ◉ No ○ N/A ○ (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | Yes ○ No ◉ |

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| | | |
|---|---|---|
| k. | Has a disclosure statement been filed with the court? | Yes ◯ No ◉ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ◉ No ◯ |

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯ No ◉ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯ No ◯ N/A ◉ |

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

| | |
|---|---|
| /s/ Tim Barton | Tim Barton |
| Signature of Responsible Party | Printed Name of Responsible Party |
| President | 07/26/2021 |
| Title | Date |

**Miscellaneous:**

21-41488-elm11 Dallas Real Estate Investors, LLC

| | | | | |
|---|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Filed: 06/22/2021 | Closed: |
| Assets: y | Judge: elm | Case Flag: REFORM, DsclsDue, REINSTATED | Reopen: | Dismissed: |
| | | | | Dismissed(jdb): |
| | | | Converted: | Discharged: |
| | | | | Discharged(jdb): |

Summary History Parties Filers Docket Sheet Deadlines/Hearings Status Pending Motions Creditors Claims Register

**U.S. Bankruptcy Court**

**Northern District of Texas**

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 9/7/2021 at 11:29 AM CDT and filed on 9/7/2021
**Case Name:** Dallas Real Estate Investors, LLC
**Case Number:** 21-41488-elm11
**Document Number:** 57

**Docket Text:**
Chapter 11 Monthly Operating Report for the Month Ending: 07/31/2021 filed by Debtor Dallas Real Estate Investors, LLC. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Dallas Real Estate Investors.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=9/7/2021] [FileNumber=47069108-0
] [3153978de7625455101eef52cf3e9327205d093518599a4cf7beb1586af42b1a8f9
1d58e6dd365c15f6db27f4f8073ca55a48cf4a7fd983e264c1e4d12515b77]]

**21-41488-elm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor Dallas Real Estate Investors, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger on behalf of Interested Party Tim Barton
smetzger@pmklaw.com

Jeff P. Prostok on behalf of Creditor Palisades TC, LLC
jprostok@forsheyprostok.com,
jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com

Linda D. Reece on behalf of Creditor Frisco ISD
lreece@pbfcm.com

Suzanne K. Rosen on behalf of Creditor Palisades TC, LLC
srosen@forsheyprostok.com, jjones@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com

Jacob Sparks on behalf of Creditor The Gate Property Owners Association, Inc.
JSparks@SpencerFane.com, MResa@SpencerFane.com

Laurie A. Spindler on behalf of Creditor City of Frisco
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A. Spindler on behalf of Creditor Dallas County
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**21-41488-elm11 Notice will not be electronically mailed to:**

Joyce Lindauer on behalf of Debtor Dallas Real Estate Investors, LLC
Joyce Lindauer Attorney, PLLC
1412 Main Street, Ste. 500
Dallas, TX 75202

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

Dallas Division

In Re. Dallas Real Estate Investors §
§
§
Debtor(s) §

Case No. 21-41488

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021

Petition Date: 06/23/2021

Months Pending: 1

Industry Classification: 5 3 1 1

Reporting Method: Accrual Basis ◉ Cash Basis ◯

Debtor's Full-Time Employees (current): 0

Debtor's Full-Time Employees (as of date of order for relief): 0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☐ Statement of cash receipts and disbursements
- ☐ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☐ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☐ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Joyce W. Lindauer
Signature of Responsible Party

09/07/2021
Date

Joyce W. Lindauer
Printed Name of Responsible Party

Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| Part 1: Cash Receipts and Disbursements | | Current Month | Cumulative |
|---|---|---|---|
| a. | Cash balance beginning of month | $0 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. | Cash balance end of month (a+b-c) | $0 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | | Current Month |
|---|---|---|
| a. | Accounts receivable (total net of allowance) | $0 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. | Inventory ( Book ○ Market ○ Other ◉ (attach explanation)) | $0 |
| d | Total current assets | $10,322,453 |
| e. | Total assets | $10,322,453 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $4,950,000 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $809,990 |
| n. | Total liabilities (debt) (j+k+l+m) | $5,759,990 |
| o. | Ending equity/net worth (e-n) | $4,562,463 |

| Part 3: Assets Sold or Transferred | | Current Month | Cumulative |
|---|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | | Current Month | Cumulative |
|---|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $0 | $0 |

Debtor's Name Dallas Real Estate Investors | Case No. 21-41488

## Part 5: Professional Fees and Expenses

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | | |

## Part 6: Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

| | | Yes | No | N/A | |
|---|---|---|---|---|---|
| a. | Were any payments made on prepetition debt? (if yes, see Instructions) | ● | ○ | | |
| b. | Were any payments made outside the ordinary course of business without court approval? (if yes, see Instructions) | ○ | ● | | |
| c. | Were any payments made to or on behalf of insiders? | ○ | ● | | |
| d. | Are you current on postpetition tax return filings? | ● | ○ | | |
| e. | Are you current on postpetition estimated tax payments? | ● | ○ | | |
| f. | Were all trust fund taxes remitted on a current basis? | ○ | ● | | |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | ○ | ● | | |
| h. | Were all payments made to or on behalf of professionals approved by the court? | ○ | ○ | ● | |
| i. | Do you have: Worker's compensation insurance? | ○ | ● | | |
| | If yes, are your premiums current? | ○ | ○ | ● | (if no, see Instructions) |
| | Casualty/property insurance? | ○ | ● | | |
| | If yes, are your premiums current? | ○ | ○ | ● | (if no, see Instructions) |
| | General liability insurance? | ● | ○ | | |
| | If yes, are your premiums current? | ● | ○ | ○ | (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | ○ | ● | | |

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| | | |
|---|---|---|
| k. | Has a disclosure statement been filed with the court? | Yes ○ No ● |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ● No ○ |

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○ No ● |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○ No ○ N/A ● |

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

| | |
|---|---|
| /s/ Tim Barton | Tim Barton |
| Signature of Responsible Party | Printed Name of Responsible Party |
| President | 09/07/2021 |
| Title | Date |

**Miscellaneous:**

21-41488-elm11 Dallas Real Estate Investors, LLC

| | | | |
|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Filed: 06/22/2021 Reopen: Converted: |
| Assets: y | Judge: elm | Case Flag: REFORM, DsclsDue, REINSTATED | Closed: Dismissed: Dismissed(jdb): Discharged: Discharged(jdb): |

Summary History Parties Filers Docket Sheet Deadlines/Hearings Status Pending Motions Creditors Claims Register

**U.S. Bankruptcy Court**

**Northern District of Texas**

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 9/22/2021 at 6:14 PM CDT and filed on 9/22/2021

**Case Name:** Dallas Real Estate Investors, LLC
**Case Number:** 21-41488-elm11
**Document Number:** 61

**Docket Text:**
Chapter 11 Monthly Operating Report for the Month Ending: 08/31/2021 filed by Debtor Dallas Real Estate Investors, LLC. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**DREI - August 2021.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=9/22/2021] [FileNumber=47112033-0] [b330c79eac6e3170ae0bd551675b182a98d3134896fcfa7462ebc1e629d22ed912e305467cadc4b851f429f2023d317ed89fbd44ee21076715e20267b4c9a8e2]]

**21-41488-elm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor Dallas Real Estate Investors, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger on behalf of Interested Party Tim Barton
smetzger@pmklaw.com

Jeff P. Prostok on behalf of Creditor Palisades TC, LLC
jprostok@forsheyprostok.com,
jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com

Linda D. Reece on behalf of Creditor Frisco ISD
lreece@pbfcm.com

Suzanne K. Rosen on behalf of Creditor Palisades TC, LLC
srosen@forsheyprostok.com, jjones@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com

Jacob Sparks on behalf of Creditor The Gate Property Owners Association, Inc.
JSparks@SpencerFane.com, MResa@SpencerFane.com

Laurie A. Spindler on behalf of Creditor City of Frisco
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A. Spindler on behalf of Creditor Dallas County
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**21-41488-elm11 Notice will not be electronically mailed to:**

Joyce Lindauer on behalf of Debtor Dallas Real Estate Investors, LLC
Joyce Lindauer Attorney, PLLC
1412 Main Street, Ste. 500
Dallas, TX 75202

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

Fort Worth Division

| | | |
|---|---|---|
| In Re. Dallas Real Estate Investors | § | Case No. 21-41488 |
| | § | |
| | § | |
| Debtor(s) | § | ☐ Jointly Administered |

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021

Petition Date: 06/23/2021

Months Pending: 2

Industry Classification: 5 3 1 1

Reporting Method: Accrual Basis ◉ Cash Basis ○

Debtor's Full-Time Employees (current): 0

Debtor's Full-Time Employees (as of date of order for relief): 0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☐ Statement of cash receipts and disbursements
- ☐ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☐ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☐ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Joyce W. Lindauer
Signature of Responsible Party

09/22/2021
Date

Joyce W. Lindauer
Printed Name of Responsible Party

Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500, Dallas, TX 75202
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| Part 1: Cash Receipts and Disbursements | | Current Month | Cumulative |
|---|---|---|---|
| a. | Cash balance beginning of month | $0 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. | Cash balance end of month (a+b-c) | $0 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | | Current Month |
|---|---|---|
| a. | Accounts receivable (total net of allowance) | $0 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. | Inventory (Book ○ Market ○ Other ◉ (attach explanation)) | $0 |
| d | Total current assets | $10,322,453 |
| e. | Total assets | $10,322,453 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $4,950,000 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $809,990 |
| n. | Total liabilities (debt) (j+k+l+m) | $5,759,990 |
| o. | Ending equity/net worth (e-n) | $4,562,463 |

| Part 3: Assets Sold or Transferred | | Current Month | Cumulative |
|---|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | | Current Month | Cumulative |
|---|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $0 | $0 |

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

## Part 5: Professional Fees and Expenses

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | | |

## Part 6: Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

| | | | Yes | No | N/A | |
|---|---|---|---|---|---|---|
| a. | Were any payments made on prepetition debt? (if yes, see Instructions) | | ● | ○ | | |
| b. | Were any payments made outside the ordinary course of business without court approval? (if yes, see Instructions) | | ○ | ● | | |
| c. | Were any payments made to or on behalf of insiders? | | ○ | ● | | |
| d. | Are you current on postpetition tax return filings? | | ● | ○ | | |
| e. | Are you current on postpetition estimated tax payments? | | ● | ○ | | |
| f. | Were all trust fund taxes remitted on a current basis? | | ○ | ● | | |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | | ○ | ● | | |
| h. | Were all payments made to or on behalf of professionals approved by the court? | | ○ | ○ | ● | |
| i. | Do you have: | Worker's compensation insurance? | ○ | ● | | |
| | | If yes, are your premiums current? | ○ | ○ | ● | (if no, see Instructions) |
| | | Casualty/property insurance? | ○ | ● | | |
| | | If yes, are your premiums current? | ○ | ○ | ● | (if no, see Instructions) |
| | | General liability insurance? | ● | ○ | | |
| | | If yes, are your premiums current? | ● | ○ | ○ | (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | | ○ | ● | | |

Debtor's Name Dallas Real Estate Investors Case No. 21-41488

| | | | |
|---|---|---|---|
| k. | Has a disclosure statement been filed with the court? | Yes ○ | No ◉ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ◉ | No ○ |

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○ No ◉ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○ No ○ N/A ◉ |

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

| | |
|---|---|
| /s/ Tim Barton | Tim Barton |
| Signature of Responsible Party | Printed Name of Responsible Party |
| President | 09/22/2021 |
| Title | Date |