# Exhibit "30"

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DALLAS REAL ESTATE INVESTORS, LLC,** | § | **CASE NO. 21-41488-elm** |
| | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S RESPONSE TO PALISADES TC, LLC'S
MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7 OR
DISMISS FOR CAUSE UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE**

COMES NOW Dallas Real Estate Investors, LLC, ("DREI" or "Debtor"), Debtor in the above titled and numbered bankruptcy proceedings, and files this its *Response to Palisades TC, LLC's Motion to Convert Bankruptcy Case to Chapter 7 or Dismiss for Cause Under Section 1112(b) of the Bankruptcy Code* (Dkt. Nos. 47 and 52 or the "Motion"), and would show the Court as follows:

1. Debtor admits the allegations in Paragraph 1 of the Motion concerning the Court's jurisdiction and the instant matter constituting a "core proceeding."

2. Debtor admits the allegation in Paragraph 2 of the Motion that Debtor possesses no cash or bank accounts but denies the allegations that the Debtor has no employees, no business operations since its operations are ongoing. Debtor further denies the allegation that it has no

ability to fund a chapter 11 plan. Debtor admits the allegations concerning its fifty percent (50%) equity interest in Dallas Real Estate Lenders, LLC ("DREL"), and as to DREL's ownership interest in FHC Acquisition, LLC, which itself owns the referenced property in Frisco, Texas (the "Frisco Property"), but denies that the equity interest in DREL "has no value." Debtor denies the allegations concerning the value of the Frisco Property and its insufficiency "to repay the bank," noting that the language used in that allegation clearly indicates a supposition or conclusion on Palisades' part. Debtor denies the allegation concerning the additional supposition that the Debtor's equity interest in DREL is "rapidly diminishing," noting that the covenants upon which this supposition is made are not identified, and further noting that it has resources necessary to properly develop the Frisco Property. Debtor denies the allegation that the Frisco Property's value is somehow reduced by any administrative expenses implicated by these Chapter 11 bankruptcy proceedings. Debtor denies the allegation that it "is incurring continuing loss and has no reasonable likelihood of rehabilitation," so conversion of this case to one under Chapter 7 would not be warranted or advisable given the circumstances of this case.

3. Debtor denies the allegation in Paragraph 3 of the Motion regarding that the purpose of filing the instant bankruptcy case being for reasons other than to rehabilitate its business. Debtor further denies the allegation that its business is "non-existent." Debtor denies the allegation concerning a "frantic search… for a new investor." Debtor it has the means to repay Palisades the amount owed under the settlement agreement through new financing. Palisade's efforts seeking conversion or dismissal will serve to destroy that financing arrangement and will not be in the best interests of the creditors. Debtor, denies it filed bankruptcy "to gain a tactical advantage in the litigation to prevent Palisades from pursuing its rights… in state court." Debtor admits the allegation concerning the current lack of cash flow, but denies it has no other means of curing the

default under the settlement agreement. Debtor denies the hyperbolic allegation that it is "gambling at the expense of Palisades, DREL and FHC Acquisition, noting that it has already located an investor to participate in the real property development project. As such, Debtor reiterates its denial that conversion or dismissal of this case is appropriate or warranted. Consequently, Debtor denies the allegation that appointment of a Chapter 7 Trustee would be proper.

4. Debtor admits the allegation in Paragraph 4 of the Motion.

5. Debtor admits the allegation in Paragraph 5 of the Motion concerning Timothy Barton's ("Barton") ownership of various real estate development entities operating in the Dallas-Fort Worth area. Debtor denies the allegation as to the use of "multiple levels of Barton-owned or controlled entities between Barton and the real estate project. Further, the term "multiple levels of Barton-owned or controlled entities" is undefined. Debtor admits the allegation as to the amount of Palisades' investment in the two referenced projects, namely the "Turtle Creek Property" and the "Frisco Property." Debtor denies the exaggerated allegation that these two projects "remain nothing more than dirt," noting that significant preparation and planning has gone into both projects.

6. Debtor admits the allegations in Paragraph 6 of the Motion concerning the amount of the $4 million capital contribution by Palisades to acquire the stated 49.95% equity interest in Five Star GM, LLC. Debtor denies the Movant's belief regarding the organizational structure regarding the Turtle Creek Property project is accurate. Debtor also admits the allegation concerning the ongoing bankruptcy of 2999TC, LLC (Case No. 20-43204 filed in the United States Bankruptcy Court for the Northern District of Texas), but notes that such bankruptcy has no

bearing on these proceedings, and further notes that mention of such case is intended solely to taint the Court's view of this particular Debtor.

7. Debtor denies the allegation in Paragraph 7 of the Motion and states that the document speaks for itself.

8. Debtor is unable to admit or deny the allegation in Paragraph 8 regarding how quickly Palisades "soured" on its business relationship with Debtor. Debtor admits to the timing of the lawsuit filed by Palisades against Five Star MM and Barton in the 193rd District Court in Dallas County, Texas, and as to the allegations asserted in the Petition filed in that case, but denies that such allegations are true, either in whole or in part. Debtor admits the allegation concerning Palisade's request for the referenced injunctive relief in that case, but notes that the request for such injunctive relief was precipitous and improper as Palisades failed to make a proper request for access to Five Star GM's books and records, and further failed to submit a request for accounting, to the extent such is required under Delaware law which governs the Five Star GM Company Agreement. As such, Debtor never "obstructed" Palisades access to books or records in violation of the aforementioned Agreement.

9. Debtor admits the allegations in Paragraph 9 of the Motion concerning the amount of the $3.5 million capital contribution by Palisades to acquire the stated 50% equity interest in DREL and as to the organizational structure asserted to exist in the Frisco Property project.

10. Debtor denies the allegation in Paragraph 10 of the Motion and states that the document speaks for itself document speaks for itself.

11. Debtor denies the allegations in Paragraph 11 and states that the document speaks for itself. Debtor admits the allegation concerning the $3 million "FHC Loan." Debtor admits the

allegation concerning Palisades' right to preferred equity returns to the extent the DREL Company Agreement so provides.

12. Debtor is unable to admit or deny the allegation in Paragraph 12 regarding how quickly Palisades "soured" on its business relationship with Debtor. Debtor admits to the timing of the lawsuit filed by Palisades against Debtor and Barton in the 298th District Court in Dallas County, Texas, and as to the allegations asserted in the Petition filed in that case, but denies that such allegations are true, either in whole or in part. Debtor admits the allegation concerning Palisade's request for the referenced injunctive relief in that case but notes that the request for such injunctive relief was precipitous and improper as Palisades failed to make a proper request for access to DREL's books and records, and further failed to submit a request for accounting, to the extent such is required under Texas law which governs the DREL Company Agreement. As such, Debtor never "obstructed" Palisades access to books or records in violation of the Agreement.

13. Debtor admits the allegation in Paragraph 13 of the Motion concerning the parties' entry into a global settlement agreement ("Settlement Agreement"). Debtor admits the allegation as to the identity of the parties to the Settlement Agreement. Debtor admits the allegation concerning the inclusion of Palisades manager, Joaquin de Monet (individually) and JMJ Development LLC in section 2.4 of the Settlement Agreement as parties to the agreement. Debtor admits the allegation concerning the purpose of the Settlement Agreement, to the extent that it was intended to settle the two state court suits mentioned heretofore.

14. Debtor denies the allegations in Paragraph 14 of the Motion save to state that the document speaks for itself.

15. Debtor denies the allegations in Paragraph 15 save to state that the document speaks for itself.

16. Debtor admits the allegation in Paragraph 16 of the Motion to the extent that Palisades sent the “JMJ Entities” a “Default Letter” dated June 16, 2021, and that the content of said Default Letter was as represented.

17. Debtor denies the allegations in Paragraph 17, save to admit the document speaks for itself.

18. Debtor denies the allegations in Paragraph 18 of the Motion

19. Debtor admits the allegation in Paragraph 19 of the Motion that it has no cash or bank accounts but denies the allegation that it has no employees or business operations since its operations are ongoing in the form of preparation and planning on each of the aforementioned projects. Debtor would note that generation of revenue will occur once the projects is completed. Debtor admits the allegation that the value of the property upon which the equity interest in DREL amounts to $10 million. Debtor denies the allegation concerning Palisades assessment of value of Debtor’s interest in DREL as being “much lower (and possibly worth $0)” since such is a self-supporting supposition. Debtor further denies the amount of monies claimed to be due and owing since (1) no accounting of said amounts has been tendered, and (2) the amount provided is a mere guess at amounts owed. Further, the $7.75 million aggregate amount provided clearly falls short of the $10 million valuation of the properties. Debtor is unable to admit or deny the current value assessment of the Frisco Property at $6.34 million but would note that such number is only a tax assessment and not a fair market sale value assessment of that property. Given the current state of rapidly increasing real estate values in the Dallas-Fort Worth real estate market in recent years and the prime location of the real estate in question, Debtor believes its valuation of $10 million to be a conservative appraisal. As such, this amount would clearly be enough to cover repayment of the FHC Loan and either the Settlement Payment or the Palisades preferred equity investment.

20. Debtor denies the allegation in Paragraph 20 of the Motion. The Debtor's amended Debtor's Statement of Financial Affairs ("SOFA") is on file at Docket No. 50 and speaks for itself.

21. Debtor denies the allegations in Paragraph 21 of the Motion and states that as reflected in its schedules (as may have been amended) that it has business operations and debt sufficient to reorganize. Debtor denies Palisades' characterization of its claim against the Debtor. Debtor admits the allegations concerning the identity of the listed unsecured creditors and the aggregate amount of the debt owed to them. Debtor denies the allegation that the debt owed to JMJ Development, LLC is a capital contribution, or that such should be recharacterized as an "equitable subordination." Debtor denies that such debts are owed to FHC Acquisition and not the Debtor.

22. Debtor admits the allegation in Paragraph 22 of the Motion that it is the Manager of DREL, and that DREL is sole member of FHC Acquisition. Debtor admits the allegation concerning the relationship between DREL and FHC Acquisition to the extent the FHC Acquisition Company Agreement so provides. Debtor admits the allegation concerning the requirement for Palisades' approval of certain actions to the extent the FHC Acquisition Company Agreement so provides. Debtor admits the allegation regarding its managerial control over DREL and FHC Acquisition.

23. Debtor denies the allegations in Paragraph 23 of the Motion

24. Debtor denies the allegation in Paragraph 24 and states that the referenced Frisco Property Purchase and Sale Agreement ("PSA") speaks for itself. Debtor denies the allegation in Paragraph 24 of the Motion concerning the articulated dates of sale, commencement of construction, and expiration of such dates as they have been convoluted and are not accurate.

Debtor is not required to admit or deny the allegations as to the supposition that Debtor is incurring a "performance deadline fee," or that any such fees have accrued.

25. Debtor denies the allegation in Paragraph 25 of the Motion that it has allowed FHC Acquisition to default under the terms of the FHC Loan. Debtor admits the allegation as to the extensions granted by the referenced lender and the testimony of Barton thereto at the 341 Meeting of Creditors. Debtor admits it has not provided written documentation of such extensions to date but will do so as soon as possible.

26. Debtor admits the allegation in Paragraph 26 of the Motion that the Debtor's Bankruptcy Schedules state its intent to assume the Settlement Agreement with Palisades. Debtor admits the allegation concerning Barton's testimony as to the Debtor's negotiations with an investor or investors that will be investing in the Frisco Property, that the proceeds gleaned from such agreement will permit it to make the Settlement Payment to Palisades, that a letter of intent and term sheet have been executed for such investment, and that a contract for such investment is being or has been developed. Debtor admits the allegation that such letters of intent, term sheet, and contract are required pursuant to terms of the reference Agreed Order dated August 3, 2021. Debtor purports to provide such documentation as soon as possible. Provision of such documentation would overturn any argument supporting conversion or dismissal of this case.

27. Debtor denies the allegation in Paragraph 27 that this bankruptcy case should be converted to one under Chapter 7 or dismissed for cause, since any deficiencies in the agreements may be cured by provision of the documentation mentioned *supra*. Debtor denies the allegation that it has no ongoing business operations. Debtor denies the allegation that any administrative expenses in this case are causing loss to the bankruptcy estate in an amount that would warrant conversion or dismissal. The Debtor does indeed have a business to rehabilitate, despite the

absence of cash or cash equivalents on the petition date. Debtor denies that it lacks the resources to develop the Frisco Property since it has a commitment from another investor that will provide such resources. Debtor is not required to admit or deny Palisades' supposition that it is in default of the PSA (that does not apply to it) or that it is incurring any deadline performance fees. Debtor denies the allegation that its equity is being negatively impacted and that it is unable to develop the Frisco Property. Debtor denies the allegation that these bankruptcy proceedings were filed improperly as litigation tactic against Palisades to keep it from pursuing any rights it may have in state court. Debtor denies the shortsighted allegation that conversion of this case to one under Chapter 7 is appropriate since it would deny the rehabilitation of the Debtor, deny the development of the Property, and deny the opportunity for all creditors and equity investors to be repaid from the proceeds of sale of the developed property. Debtor denies the allegation (or more aptly, characterization) that the instant case is a "two-party dispute" warranting conversion or dismissal as a "bad faith filing." The circumstances do not indicate that this is merely a "two-party dispute."

28. Debtor admits the allegation in Paragraph 28 of the Motion to the extent that it contains a faithful representation of 11 U.S.C. § 1112(b)(1) but denies that such is applicable here because dismissal or conversion is not in the best interest of all creditors or the estate, and consequently denies that any "cause" exists that would warrant such conversion or dismissal. While Palisades has an interest in these proceedings, its demand that only its interest be met by conversion or dismissal is both one-sided and shortsighted. Debtor denies the allegation that it is not properly managing the Frisco Property.

29. Debtor admits the allegation in Paragraph 29 of the Motion to the extent that it contains a faithful representation of 11 U.S.C. § 1112(b)(4)(A) but denies that such is applicable here because (1) no diminution of the estate is occurring, (2) Palisades presented no actual evidence

of such diminution, and (3) there exists a reasonable likelihood of rehabilitation in this case. Debtor admits the allegation concerning the Court's discretion at determining "cause" in these proceedings but would not that no such cause exists given the circumstances of this case.

30. Debtor admits the allegation in Paragraph 30 of the Motion to the extent that it contains a faithful representation of the cited case law but would note that such is inapplicable here because neither a "substantial continuing loss [n]or diminution of the estate" is occurring. Here, the asset is not declining in value, but rather is likely increasing in value.

31. Debtor admits the allegation in Paragraph 31 that an absence of reasonable likelihood of rehabilitation may support an argument that cause exist, but such absence does not exist in this case. While the case law offered to establish the required absence of likelihood of rehabilitation may be accurate, it does not apply given the circumstances of this case. Here, the Debtor intends to demonstrate to the Court the viability of its plan and the benefits it will provide to *all* creditors.

32. Debtor denies the Movant's characterization of the law in Paragraph 32 of the Motion and would note that in any event, such cited case law such is inapplicable here. While the Debtor may have no current revenues, it does not lack access to capital as mentioned *supra*. As such, rehabilitation of the Debtor is likely.

33. Debtor denies the allegation in Paragraph 33 of the Motion that either element required for the Court to find cause allowing it to convert or dismiss this case exists as mentioned *supra*. Debtor bases its argument for cause solely on (1) lack of revenue (but not lack of access to capital), (2) the unsubstantiated supposition that fees in a PSA that implicate a different party (i.e. JMJ Acquisitions) and which does not obligation the Debtor, (3) diminution of equity in real estate in an appreciating real estate market. Debtor admits the allegation to the extent it has no current

revenues but does have cash flow from an alternate investing source. As such the first element is *not* satisfied.

34. Debtor denies the allegation in Paragraph 34 of the Motion, that there exists no likelihood of rehabilitation. Again, Palisades presumes, but shows no evidence of diminution of the estate due to supposed imposition of fees. As for the possibility of loss of indirect investment in the Frisco Property, such would only occur if Palisades were permitted to obstruct the investment in that project by an outside investor. Palisades should not be able to use the result of its actions to create the circumstances that would cause a failure of rehabilitation. Doing so, and then claiming "Failure!" would constitute a manipulation and intended misuse of the Bankruptcy Code by Palisades. Debtor denies the lack of cash flow since outside investors have committed to providing funding to enable completion of the Frisco Property project. Debtor further denies the allegation concerning a supposed negative cash flow from "increasing administrative expenses" which are presumed, but for which no evidence is provided. Debtor proposes to provide documentation of a source and amount of financing that will satisfy Palisade's demand for such. Debtor denies the allegation concerning a lack of resources needed to repay the FHC Loan and Settlement Payment or preferred Equity Return (the last of which Palisades has not provided an exact figure or accounting of such). Debtor denies the allegation that its equity interest in DREL "has little or no value" since such allegation supposes that the real property in question has no value unless it is developed.

35. Debtor denies the application of the case law to it as set forth in Paragraph 35 of the Motion. Debtor asserts that the sources of capital available to it should inform the Court's decision on how to proceed in this case. Those sources of capital make the viability of any proposed Plan, and the attendant rehabilitation thereunder, not only hopeful but reasonably likely.

Debtor denies the allegation that it is gambling in any way by hoping for an "angel investor." That investor is not hoped for. It exists. Debtor asserts that any unease that Palisades has expressed for the "legitimate creditors," or that its proposed courses of action are somehow in the best interests of the Debtor, demonstrates nothing more than feigned concern; it simply hopes to recoup its claim by means that will ensure the ruin of the Debtor. Given the looming equity investment and resulting rehabilitation of the Debtor, conversion of this case allowing liquidation of the Debtor is inappropriate.

36. Debtor admits the allegation in Paragraph 36 of the Motion to the extent that it is a faithful representation of the cited case law but denies that such is applicable here. Debtor asserts that Palisades cannot support an argument of bad faith since the Debtor is engaged in business operations, has access to capital that will support the development of a viable plan leading to the high likelihood of rehabilitation of the Debtor. Further, while some of the factors articulated in the case law provided exist here, many do not. Debtor denies the allegation that its proposal to offer a viable plan is in any way reminiscent of "terminal euphoria" on the Debtor's part.

37. Debtor admits the allegations in Paragraph 37 of the Motion concerning the analysis of a "totality of the circumstances" analysis being distilled into two inquiries, namely whether the petition serves a valid bankruptcy purpose, and whether the petition is filed to obtain a tactical advantage in litigation accurately reflects the statements in the case law Debtor denies the allegation that no valid bankruptcy purpose is served based on Palisades supposition that the Debtor has no hope of rehabilitation. As mentioned *supra*, it does. Debtor further denies that it is attempting to gain an unfair tactical advantage in the referenced state court litigation, also as mentioned *supra*. Again, this is a supposition on Palisades' part. Debtor simply desires an opportunity to demonstrate the viability of a Plan that will lead to its rehabilitation.

38. Debtor admits the allegation in Paragraph 38 of the Motion to the extent that it is a faithful representation of the cited case law but denies that such is applicable here. Debtor denies the allegation that this is a "two-party dispute" since multiple creditors are implicated in these proceedings. Further, as mentioned heretofore, Debtor seeks no unfair litigation advantage against Palisades. As such, no dismissal or conversion of this case would be appropriate.

39. Debtor denies the allegations in Paragraph 39 of the Motion as to the nature of its assets and business operations, as mentioned previously. It denies the lack of employees and the ability to fund a Chapter 11 plan since alternate funding sources are available to it. Debtor admits the allegation regarding the filing of its bankruptcy petition to the extent of the date of such filing but denies that the purpose of such was to obstruct Palisades from pursuing any rights in state court. Debtor denies that the failure by the JMJ Entities to tender the Settlement Payment would have placed the parties in their pre-settlement position specifically because of the Extension payments made by Debtor.

40. Debtor denies the allegation in Paragraph 40 of the Motion that there is no business to rehabilitate. Debtor further denies the allegation as to the lack of any value in the Debtor's equity interest in DREI. Debtor denies the allegation that the instant bankruptcy was filed in bad faith for the purpose of gaining a litigation advantage in state court matters and to seek a new investor. Notably, as mentioned previously, Debtor already has such an investor. Debtor denies that its use of the instant proceedings is improper and that any grounds for conversion or dismissal exist. Palisades is interested solely in conversion so that the Debtor's assets may be liquidated to the benefit only of Palisades, a non-creditor equity investor in these proceedings. Any concern for the creditors in this case is merely pretended interest.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests the Court enter an Order denying the relief requested therein in its entirety and granting to the Debtor such other relief to which it may show itself justly entitled.

Dated: September 14, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 14, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Joyce W. Lindauer \
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger
smetzger@pmklaw.com

Jeff P. Prostok
jprostok@forsheyprostok.com,
jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com

Linda D. Reece
lreece@pbfcm.com

Suzanne K. Rosen
srosen@forsheyprostok.com,
jjones@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com

Jacob Sparks
JSparks@SpencerFane.com, MResa@SpencerFane.com

Laurie A. Spindler
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer