# Exhibit "38"

**20200131000144690 01/31/2020 03:46:04 PM NO 1/11**

**After recording return to:**

John E. Bloomer, Esq.
Spencer Fane LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024

# THE GATE

## NOTICE OF APPLICABILITY

***[HOTEL/CONDOMINIUM/RETAIL/RESTUARANT]***

## Hotel Development Area

**[Lot 13[1]]**

**VOTES:** **Lot 13: .1112**

**ASSESSMENT UNITS:** **Lot 13: .1112**

**Declarant:** **IGO – USA LP, a Texas limited partnership**

**Cross reference to AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS for The Gate, recorded under Clerk's File No. 20160923001280990, in the Official Public Records of Collin County, Texas.**

---

[1] Note: The above-referenced "Lot 13" was formerly known as Lot 13, Block A of THE GATE, Block A, Lots 1 Through 20, an Addition to the City of Frisco, Collin County, Texas, according to the map thereof recorded in Volume 2016, Pages 211-215, Map Records, Collin County, Texas, which Lot is further referenced on Attachment 3, The above-referenced "Lot 13" now means the Lot as legally described on Attachment 1.

# NOTICE OF APPLICABILITY OF THE GATE MASTER DECLARATION

***[Hotel/Condominium/Retail/Restaurant]***

Hotel Development Area
[Lot 13]

This Notice of Applicability of The Gate Master Declaration (this "**Notice of Applicability**") is made and executed by IGO – USA LP, a Texas limited partnership ("**Declarant**") and is as follows:

**1.** **Applicability of Master Declaration**. This Notice of Applicability is recorded with respect to approximately 4.5385 acres of land located in Collin County, Texas, as more particularly described and depicted on Attachment 1 attached hereto and incorporated herein (the "**Development Area**"). The Development Area is a portion of the Declarant's property described on Exhibit B to that certain AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS for a development commonly referred to as "The Gate," recorded under Clerk's File No. 20160923001280990, in the Official Public Records of Collin County, Texas (the "**Master Declaration**," as may be further amended, modified and/or restated from time to time), which may be made a part of the Development (as defined in the Master Declaration) and fully subjected to the terms, covenants, conditions, restrictions, reservations, easements, servitudes, liens and charges set forth in the Master Declaration.

Pursuant to Section 9.05 of the Master Declaration and to the extent permitted by the Master Declaration, Declarant may from time to time and at any time record a Notice of Applicability for the purpose of encumbering the Development Area with the Master Declaration and any previously recorded Development Area Declaration as further set forth therein, which shall be effective as to such Development Area. Declarant shall also set forth in the Notice of Applicability those numbers of votes and Assessment Units which are allocated to the Development Area.

**2.** **Property Incorporated Into Development**. The provisions of the Master Declaration shall apply to the Development Area. The Development Area is hereby included within and made a part of the Development, and is hereby subjected to the terms, covenants, conditions, restrictions, reservations, easements, servitudes, liens and charges of the Master Declaration.

**3.** **Designation of Lot**. Declarant hereby designates the Development Area as a "Lot" for the purpose of the Master Declaration. If all or any portion of the Development Area is further subdivided or reconveyed by use of a replat or otherwise used to create or establish a condominium regime or other common-interest form of ownership (as such, a "**Subdivision**"), then each such applicable portion of the Development Area which constitutes a Subdivision is hereinafter referred to as a "**Sub-Lot**", which each such Sub-Lot may be designated as a separate "Lot" by Declarant or, if after the Development Period, the Board (as applicable) and will (in any event) continue to be owned, held, encumbered, leased, used, occupied, and enjoyed subject to (among other things) all then-existing encumbrances applicable to the Lot, including without limitation, this Notice of Applicability, the Master Declaration and the other Development Documents, as each may be further amended, modified and/or restated from time to time as provided herein or therein.

**4.** **Allocation of Votes**. Pursuant to Section 2.04 of the Master Declaration, Declarant hereby assigns votes to the Development Area as set forth on Attachment 2 attached hereto and incorporated herein by reference, which shall be deemed the Allocable Assessment Share, as such term is defined in the Master Declaration; subject, however, to further adjustment as determined in accordance with the terms and provisions set forth in Section 2.04 of the Master Declaration. The votes allocated to the Development Area by this Notice of Applicability may be cast on all matters to be voted on by the Members of the Association in accordance with the Master Declaration.

**5.** **Special Common Areas / Service Areas**. Pursuant to Section 2.06(b) of the Master Declaration, Declarant hereby designates as a Special Common Area associated with the Development Area made subject to this Notice of Applicability, that portion of the "Special Common Areas Allocation" as set forth on Attachment 3 attached hereto and incorporated herein by reference. Declarant hereby allocates the initial Special Common Area Assessments to the Development Area in the amount of $4,333.58. The Special Common Areas are not for the exclusive use and enjoyment of the Owner of the Development Area, but instead, are identified herein as Special Common Areas for the sole purpose of allocating payment of any Special Common Area Assessments attributable thereto to the Owner of the Development Area, which such Special Common Area Assessments shall be determined from time to time by the Association. No Service Areas are located in the Development Area.

**6.** **Allocation of Working Capital**. Pursuant to Section 4.08 of the Master Declaration, Declarant hereby allocates the initial working capital assessment to the Development Area in the amount of $40,032.00, ("**Initial Working Capital Assessment**") with the determination of any working capital assessment for the Development Area to be thereafter determined in accordance with the terms and provisions set forth in Section 4.08 of the Master Declaration. The Initial Working Capital Assessment shall not be due or payable unless and until FHC (as defined below) either transfers, conveys, or grants the Development Area to a third party, or otherwise transfers any of FHC's ownership interest to any third party, FHC shall cause such third party shall pay (or FHC shall pay, if necessary) the Initial Working Capital Assessment as described in the Master Declaration at the time of (and as a condition to the effectiveness of) such transfer, and where FHC transfers, conveys, or grants less than all of the Development Area to a third party, then FHC shall cause such third party shall pay (or FHC shall pay, if necessary) such portion of the Initial Working Capital Assessment in proportion to the portion of the Development Area which FHC transfers, conveys, or grants to such third party at the time of (and as a condition to the effectiveness of) such transfer. Any subsequent transfers, conveyances, or grants, and the applicable potion of the related Working Capital Assessment, shall be determined in accordance with Section 4.08 of the Master Declaration and be paid by the transferee or (if necessary) the Lot or Sub-Lot Owner at the time of (and as a condition to the effectiveness of) such transfer.

**7.** **Allocation of Assessment Units**. Pursuant to Section 4.09 of the Master Declaration, Declarant hereby assigns Assessment Units to the Development Area as set forth on Attachment 2.

**8.** **Subdivision Restriction**. If the Subdivision of all or any portion of the Development Area is contemplated to occur, no portion of the votes, Assessment Unit allocation, Special Common Areas Allocation, Special Common Area Assessments, or the working capital assessment, each as herein allocated to the Development Area, may be amended, modified,

assigned, transferred, or controlled by any person or entity other than as agreed to in writing by Declarant or, if after the Development Period, the Board, as applicable. If there is more than one (1) Owner of all or any portion of a Lot (including a Sub-Lot) within the Development Area but excluding any Qualified Residential Owner (as hereinafter defined), then the liability for each Assessment within the Development Area, together with such interest thereon and costs of collection thereof as provided in the Master Declaration, will be the joint and several personal obligation of each Owner of all or any portion of a Lot (which includes each Sub-Lot) within the Development Area and is hereby (and will forever be) secured by a lien granted under the terms of the Master Declaration and conveyed by Declarant to the Association against each such Lot (which includes each Sub-Lot) and all Improvements now or hereafter existing thereon (such lien, with respect to any Lot not in existence on the date hereof, will be deemed granted and conveyed at the time that such Lot is created, but such lien priority shall be deemed to relate back to the time and date of recording of this Notice of Applicability).

For purposes of this Section 8, the term "**Qualified Residential Owner**" shall mean and only include, (a) a single person, or such person's legal heir(s), (b) a married couple, or such married couple's legal heir(s), (c) a trustee on behalf of a trust formed for the purposes of estate planning by such persons described under sections 8(a) or 8(b), or (d) a duly formed and validly existing legal entity in good standing (both in the state of Texas, to the extent required by law, and, if applicable, such entity's state of formation) which is authorized to transact business in the state of Texas which is properly authorized and otherwise legally permitted to acquire, own, operate, finance, manage, lease, use, and sell the Qualified Residential Unit (as hereinafter defined) to another Qualified Residential Owner, which in the case of any such applicable Qualified Residential Owner and related Qualified Residential Unit, satisfies all of the following terms, conditions and requirements:

(i) the "**Qualified Residential Unit**", as hereinafter referred to, must be a "single-family" residential condominium unit which has its own separate legal description and ad valorem property tax identification number issued by the City of Frisco (Texas), which is designed, developed, constructed (or reconstructed, if applicable) and otherwise a part of the multi-unit residential condominium regime or other form of residential common-ownership development (the "**Residential Condominium Development**") constructed on a Lot or Sub-Lot as designated and otherwise approved in writing by the Owner of the Lot or Sub-Lot (as applicable, on the one hand) and Declarant or the Board (as applicable, on the other hand);

(ii) as of the date the Qualified Residential Owner acquires the Qualified Residential Unit, the Qualified Residential Owner must acquire by means of an insurable conveyance deed all of the indefeasible fee simple title to the applicable Qualified Residential Unit, including the owner's related proportionate share of co-ownership interest in the "common area" improvements in the Residential Condominium Development (as hereinafter defined); and

(iii) conveyance of title to the Qualified Residential Unit shall be made subject to all applicable terms, conditions, and requirements set forth in this Notice of Applicability (as may be amended from time to time), the new Notice of Applicability applicable to the Residential Condominium Development, the Master Declaration, and all documents, instruments, agreements, rules and regulations (whether or not filed of

record) which are applicable to the ownership, possession, operation, financing, management, leasing, use and/or sale of the Qualified Residential Unit.

**9.** **Uses and Obligations Imposed on the Development Area**. On or about the date hereof, Declarant conveyed all of the Development Area to FHC Acquisition, LLC, a Texas limited liability company ("**FHC**"), pursuant to the terms and conditions set forth in that certain Purchase and Sale Agreement dated effective October 23, 2018, by and between Declarant, as the seller, and FHC (as successor-in-interest to JMJ Acquisitions, LLC), as the purchaser, as amended and assigned, the "**PSA**", the terms of which are incorporated herein by reference and made a part hereof. Also, on or about the date hereof, Declarant, FHC, IGO – Frisco 1 LLC ("**IGO-Frisco**"), and The Gate Property Owners Association, Inc. entered into that certain Master Development and Consent Agreement ("**MDA**") which amended (in part) certain terms and conditions set forth in the PSA and the Declaration.

The undersigned as Declarant and Development Reviewer hereby approves the development of the Development Area as only a mixed use project consisting of a full-service luxury (either a 4 or 5 star rated) brand name flagged hotel development, with not less than 420 underground and/or podium parking spaces (collectively, the "**Parking Spaces**"), which such development may include the Residential Condominium Development, ancillary restaurant, full service bar(s), meeting/function space, pool (which may include a rooftop pool), pool deck, pool support restaurant and bar and retail amenities, all as contemplated and agreed to by the parties under the terms of the PSA and the MDA (collectively, the "**Project**").

In connection with the design, development and construction of the Project and the related Parking Spaces, in accordance with the terms and provisions set forth in the PSA (including without limitation, Section 6.8(e) thereof) and the MDA (including without limitation, Sections 1.4 and 1.8 thereof), FHC and any other applicable Owner of all or any portion of the Development Area (other than Declarant or any of its affiliates) are jointly and severally, and irrevocably and unconditionally, required at its sole cost, risk and expense (among other things):

(a) to design, develop, and construct on the applicable portion of the Development Area in which the Residential Condominium Development and the hotel development will (collectively) be constructed as part of the Project (the "**Hotel Development Area**"), one hundred twenty (120) Parking Spaces (the "**Dedicated Parking Spaces**") for the sole, exclusive, and free use and benefit of the respective Owner of Lot 7 and Lot 14[2] (as applicable) including their respective successors and assigns (each, the "**Adjacent Lot Owner**"), and cause the issuance of a final and permanent certificate of occupancy from the City of Frisco (Texas) ("**City**") for the Project (including the applicable Dedicated Parking Spaces), to occur on or before December 30, 2024, time being of the essence (the "**Completion Deadline**"). As contemplated in Section 6.8 of the PSA, and as amended per Section 1.5 of the MDA, subject to the satisfaction (if at all) of various terms and conditions set forth in the PSA and MDA by the Completion Deadline, FHC is entitled to receive from Declarant an assignment of the

[2] Note: Any reference to "Lot 7" or "Lot 14" means, as applicable, Lot 7 or Lot 14, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas.

Project Incentives (as defined in the PSA) for the Project (if any) to help reimburse FHC for the costs, fees and expenses incurred by it in connection with its duties and obligations related to the Dedicated Parking Spaces (whether the design, development, and construction thereof or otherwise), which such costs (including any related Claims, as defined in the MDA) are to be paid for, reimbursed from and otherwise satisfied (if at all) solely from the Project Incentives, with no costs, fees or expenses for any such amounts to be paid for, reimbursed by, or the responsibility of, Declarant, IGO-Frisco or any Adjacent Lot Owner;

(b) to irrevocably and unconditionally provide for the benefit of Lot 7, Lot 14, and each applicable Adjacent Lot Owner during their period of ownership of Lot 7 and Lot 14, a perpetual non-exclusive easement for pedestrian and vehicular ingress and egress access to, from, and across those portions of the Hotel Development Area which are reasonably necessary and otherwise required for Adjacent Lot Owner and its designees to freely and without interruption access the parking garage and other portions of the easement areas agreed to by the parties for the use of the Dedicated Parking Spaces, which such easement areas shall include (without limitation), all hotel development entrances, exits, drives, ramps and other common areas including, but not limited to, any elevator or stairwells serving the parking garage as the same exist from time to time; and

(c) must enter into and record against title to the Development Area, Lot 7 and Lot 14, a parking agreement (whether one or more) the terms of which shall be consistent with the terms of the PSA and the MDA (as applicable) which may otherwise further define the rights and obligations of FHC (including any successor-in-title to all or any portion of the Development Area) and the Adjacent Lot Owners and its designees related to the Dedicated Parking Spaces, which such parking agreement shall be deemed a covenant running with the land and be a permitted exception to title to the Development Area effective as of the date and time immediately after the recording of this Notice of Applicability.

**10.** **Miscellaneous**. This Notice of Applicability constitutes a Notice of Applicability as contemplated under Section 9.05 of the Master Declaration. Any term capitalized, but not defined herein, shall have the meaning ascribed to such term as set forth in the Master Declaration, the terms of which are incorporated herein by reference.

[*Remainder of this page intentionally left blank.*]

EXECUTED to be effective as of the 31st day of January, 2020.

**DECLARANT**:

**IGO – USA LP,**
a Texas limited partnership

By: IGO – USA GP LLC,
a Texas limited liability company,
its General Partner

By: ____________________
Anas A. Kozbari, Manager

THE STATE OF TEXAS §
§
COUNTY OF COLLIN §

This instrument was acknowledged before me on this the 21 day of January, 2020, by Anas A. Kozbari, Manager of IGO – USA GP LLC, a Texas limited liability company, General Partner of IGO – USA LP, a Texas limited partnership, on behalf of said limited partnership.

____________________
Notary Public in and for the State of Texas

VIKTORYIA DZERANIUK
Notary Public, State of Texas
Comm. Expires 11-20-2023
Notary ID 132258741

## Attachment 1

## DEVELOPMENT AREA

Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas.[3]




[3] Note: The above-referenced "Lot 13" was formerly known as Lot 13, Block A of THE GATE, Block A, Lots 1 Through 20, an Addition to the City of Frisco, Collin County, Texas, according to the map thereof recorded in Volume 2016, Pages 211-215, Map Records, Collin County, Texas, which Lot is further referenced on Attachment 3.

## **Attachment 2**

## ALLOCATION OF VOTES AND ASSESSMENT UNITS

| LOT DESIGNATION | VOTES | ASSESSMENT UNITS |
|---|---|---|
| Lot 13[4] | .1112 | .1112 |

[4] The reference to "Lot 13" and the related allocation of votes and assessment units refer to former Lot 13, as referenced in the Master Declaration, which such Lot is further referenced on Attachment 3.

# Attachment 3

## SPECIAL COMMON AREAS ALLOCATION

### COMMON AREAS ALLOCATION

| Building | Type | Allocation |
|---|---|---|
| LOT 1 | Office & Restaurant | 9.311% |
| LOT 2 | Office & Restaurant | 9.725% |
| LOT 3 | Office & Restaurant | 9.725% |
| LOT 4 | Office & Restaurant | 9.529% |
| LOT 5 | Luxury Residential & Retail | 10.813% |
| LOT 6 | Luxury Residential & Retail | 8.828% |
| LOT 7 | Retail & Restaurant | 0.397% |
| LOT 9 | TOWNHOME | 1.281% |
| LOT 10 | TOWNHOME | 1.281% |
| LOT 11 | TOWNHOME | 1.281% |
| LOT 12 | TOWNHOME | 1.281% |
| LOT 13 | Hotel & Amenities (Retail &Restaurant) | 11.12% |
| LOT 14 | Retail & Restaurant | 0.427% |
| LOT 15 | Retail & Restaurant | 0.431% |
| LOT 16 | Retail & Restaurant | 0.431% |
| LOT 17 | Luxury High Rise - Residential & Retail | 9.738% |
| LOT 18 | Luxury Residential & Retail | 13.92% |
| LOT 19 | Retail & Restaurant | 0.239% |
| LOT 20 | Retail & Restaurant | 0.239% |

### SPECIAL COMMON AREAS ALLOCATION

| | | | | |
|---|---|---|---|---|
| Street M 600 feet | LOT 18 97% | LOT 19 1.50% | LOT 20 1.50% | |
| Street K 200 feet | LOT 17 41% | LOT 18 59% | | |
| Street J 600 feet | LOT 17 100% | | | |
| Street F 250 feet | LOT 15 4% | LOT 16 4% | LOT 13 92% | |
| Street E& F.A.U.E 905 feet | LOT 13 100% | | | |
| South of Bldg 6 300 feet | LOT 6 96% | LOT 7 4% | | |
| Street C 500 feet | LOT 5 55% | LOT 6 45% | | |
| Street B 300 feet | LOT 5 55% | LOT 6 45% | | |
| Townhomes 618 feet | LOT 9 25% | LOT 10 25% | LOT 11 25% | LOT 12 25% |
| Offices 1470 feet | LOT 1 25% | LOT 2 25% | LOT 3 25% | LOT 4 25% |




COMMON AREAS
SPECIAL COMMON AREAS
COMMON AREAS

**THE GATE**
**COMMON/SPECIAL COMMON AREAS DEPICTION**

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
01/31/2020 03:46:04 PM
$66.00 TBARNETT
20200131000144690