# Exhibit "39"

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**<u>SECURITY AGREEMENT AND FIXTURE FILING</u>**

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Deed of Trust") is executed effective as of January 30, 2020, by FHC ACQUISITION, LLC, a Texas limited liability company, (the "Grantor"), whose address for notice hereunder is 1755 Wittington Place, Suite 340, Dallas, Texas 75234, to DAVID L. BATY ("Trustee"), whose address is 2595 Preston Road, Suite 300, Frisco, Texas 75034 (and any substitute or successor trustees), for the benefit of TEXAS REPUBLIC BANK, N.A. ("Beneficiary"), whose address for notice hereunder is 2595 Preston Road, Suite 300, Frisco, Texas 75034, Attention: David L. Baty.

**ARTICLE I**
**<u>DEFINITIONS</u>**

**Section 1.1 <u>Definitions</u>.** As used herein, the following terms shall have the following meanings:

"Anti-Terrorism Laws": Any and all present or future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, orders and ordinances of any Governmental Authority relating to terrorism or money laundering, including, without limitation, the United and Strengthening America By Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Pub. L. No. 107-56); the Trading With the Enemy Act (50 U.S.C.A. App 1 <u>et seq.</u>); the International Emergency Economic Powers Act (50 U.S.C.A. §1701-1706); Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 and the United States Treasury Department's Office of Foreign Assets Control list of "Specifically Designated and Blocked Persons" (as published from time to time in various mediums).

"Constituent Party": Any (i) general partner, manager or managing member of Grantor, as applicable, and (ii) signatory to this Deed of Trust on Grantor's behalf that is an entity or other business organization.

"Indebtedness": The principal of, interest on and all other amounts, payments and premiums due under the Note and secured by the other Loan Documents (as defined hereinbelow), together with and including all other direct and indirect indebtedness now or any time in the future owing or to be owing by Grantor to Beneficiary, regardless of how evidenced or incurred, it being understood that it is contemplated that Grantor will become further indebted to Beneficiary in the future. The term "Obligations" as that term is defined in the Loan Agreement shall be included within the definition of Indebtedness as used in this Deed of Trust.



UNOFFICIAL

"Leases": All leases, master leases, subleases, licenses, concessions, or other agreements (whether written or oral) that grant to third parties a possessory interest in or the right to use or occupy any part of the Mortgaged Property, together with all security and other related deposits or payments made in connection therewith. The term "Leases" shall also include all guarantees of and security for the Tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto which are expressly permitted hereunder.

"Loan": The Loan made to Grantor by Beneficiary as evidenced and secured by the Loan Documents.

"Loan Agreement": The Loan Agreement even date herewith, executed by Grantor and Beneficiary, as the same may be amended, modified, supplemented, and restated from time to time.

"Loan Documents": (a) The Loan Agreement, (b) the Promissory Note (the "Note") of even date herewith, executed by Grantor, payable to the order of Beneficiary, in the stated principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00), (c) this Deed of Trust, (d) all other documents now or hereafter executed by Grantor, or any other person or entity, to evidence, secure or guaranty the payment of all or any portion of the Indebtedness or the performance of all or any portion of the Obligations or otherwise executed in connection with the Note or this Deed of Trust, and (f) all modifications, restatements, extensions, renewals and replacements of the foregoing.

"Mortgaged Property": (a) the real property described as **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas**, together with any greater estate therein as hereafter may be acquired by Grantor (the "Land"), (b) all buildings, structures and other improvements, now or at any time situated, placed or constructed upon the Land (the "Improvements"), (c) all materials, supplies, equipment, apparatus and other items of personal property now owned or hereafter acquired by Grantor and now or hereafter attached to, installed in or used in connection with any of the Improvements or the Land, and water, gas, electrical, storm and sanitary sewer facilities and all other utilities whether or not situated in easements (the "Fixtures"), (d) all right, title and interest of Grantor in and to all goods, accounts, general intangibles, instruments, documents, chattel paper and all other personal property of any kind or character, including such items of personal property as defined in the UCC, now owned or hereafter acquired by Grantor and now or hereafter affixed to, placed upon, used in connection with, arising from or otherwise related to the Land and Improvements or which may be used in or relating to the planning, development, financing or operation of the Mortgaged Property, including, without limitation, furniture, furnishings, equipment, machinery, money, insurance proceeds, accounts, contract rights, trademarks, goodwill, chattel paper, documents, trade names, licenses and/or franchise agreements,

rights of Grantor under leases of Fixtures or other personal property or equipment, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Grantor with any governmental authorities, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs (the "Personalty"), (e) all reserves, escrows or impounds required under this Deed of Trust (including, without limitation, the reserve accounts described in Section 3.14 (together with all cash and instruments held therein, and all interest and other property receivable in respect thereof)) and all deposit accounts maintained by Grantor with respect to the Mortgaged Property, (f) all plans, specifications, shop drawings and other technical descriptions prepared for construction, repair or alteration of the Improvements, and all amendments and modifications thereof (the "Plans"), (g) all leases, ground leases, subleases, licenses, concessions, occupancy agreements, rental contracts, or other agreements (written or oral) now or hereafter existing relating to the use or occupancy of all or any part of the Mortgaged Property, together with all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof (whether before or after the filing by or against Grantor of any petition of relief under 11 U.S.C. § 101 et seq., as same may be amended from time to time (the "Bankruptcy Code")) and all related security and other deposits (the "Leases") and all of Grantor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a Tenant of any Lease under the Bankruptcy Code, (h) all of the rents, revenues, issues, income, deposits, proceeds, profits, and all other payments of any kind under the Leases for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the Mortgaged Property whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code, including, without limitation, all amounts payable and all rights and benefits accruing to Grantor under the Leases and all other "Rents" (as such term is defined in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, as amended) (the "Rents"), (i) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, property management agreements, utility contracts, maintenance agreements, franchise agreements, service contracts, permits, licenses, certificates and entitlements in any way relating to the development, construction, use, occupancy, operation, maintenance, enjoyment, acquisition or ownership of the Mortgaged Property (the "Property Agreements"), (j) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances appertaining to the foregoing, and all right, title and interest, if any, of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the Land or any part thereof, (k) all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof, (l) all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now owned or hereafter acquired by Grantor, (m) all mineral, water, oil and gas rights now owned or hereafter acquired and relating to all or any part of the Mortgaged Property, (n) all right, title and interest of Grantor in and to all trade names, trademarks, service marks, logos, copyrights, goodwill, books and records and all other general

UNOFFICIAL

intangibles relating to or used in connection with the operation of the Mortgaged Property; and (o) all of Grantor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any Governmental Authority (as defined in the Loan Agreement) pertaining to the Land, Improvements, Fixtures or Personalty. As used in this Deed of Trust, the term "Mortgaged Property" shall mean all or, where the context permits or requires, any portion of the above or any interest therein.

"Obligations": All of the agreements, covenants, conditions, warranties, representations and other obligations (other than to repay the Indebtedness) made or undertaken by Grantor or any other person or entity to Beneficiary or others as set forth in the Loan Documents.

"Prohibited Person": Any person or entity that (i) is specifically named or listed in, or is otherwise subject to, any Anti-Terrorism Laws; (ii) is owned or controlled by, or acting for or on behalf of any person or entity specifically named or listed, or otherwise subject to, any Anti-Terrorism Laws; (iii) Beneficiary is prohibited from dealing with, or engaging in any transaction with, pursuant to any Anti-Terrorism Laws; or (iv) is affiliated with any person or entity described in clauses (i) through (iii) of this definition.

"State": The State of Texas.

"Tenants": All tenants under the Leases, if any.

"Title Company": Chicago Title Insurance Company.

"UCC": The Uniform Commercial Code of the State or, if the creation, perfection and enforcement of any security interest herein granted is governed by the laws of a state other than the State, then, as to the matter in question, the Uniform Commercial Code in effect in that state.

**Section 1.2** **<u>Other Terms</u>.** Capitalized terms not otherwise defined herein shall have the meaning set forth in the Loan Agreement.

## ARTICLE 2
## GRANT

**Section 2.1** **<u>Grant</u>.** To secure the full and timely payment of the Indebtedness and the full and timely performance of the Obligations, Grantor hereby GRANTS, BARGAINS, SELLS, CONVEYS and ASSIGNS to Trustee (and with respect to any portions of the Mortgaged Property that constitute personal property, to Beneficiary) the Mortgaged Property; TO HAVE AND TO HOLD the Mortgaged Property to Trustee, IN TRUST, WITH POWER OF SALE, and Grantor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER

UNOFFICIAL

DEFEND the title to the Mortgaged Property unto Trustee and Beneficiary and their respective successors, substitutes and assigns.

## ARTICLE 3
## WARRANTIES, REPRESENTATIONS AND COVENANTS

Grantor warrants, represents and covenants to Beneficiary as follows:

**Section 3.1** **Title to Mortgaged Property and Lien of this Instrument.** Grantor owns the Mortgaged Property free and clear of any liens, claims or interests, except for (i) the lien of this Deed of Trust, (ii) the Permitted Exceptions (as defined in the Loan Agreement), (iii) the electric services agreement to be entered into between Grantor and CoServ in place of an existing electric services agreement that is the subject of a recorded memorandum of electric services agreement (the "Electric Services Agreement"), and (iv) the Performance Agreements (as defined in the Loan Agreement). This Deed of Trust creates valid, enforceable first priority liens and security interests against the Mortgaged Property. Grantor warrants that Grantor has good, indefeasible and insurable title to the Mortgaged Property and has the full power, authority and right to execute, deliver and perform its obligations under this Deed of Trust.

**Section 3.2** **First Lien Status.** Grantor shall preserve and protect the first lien and security interest status of this Deed of Trust and the other Loan Documents. If any lien or security interest is asserted against the Mortgaged Property, Grantor shall promptly, and at its expense, (a) give Beneficiary a detailed written notice of such lien or security interest (including origin, amount and other terms), and (b) pay the underlying claim in full or take such other action so as to cause it to be released or, in Beneficiary's discretion, provide a bond or other security satisfactory to Beneficiary for the payment of such claim.

**Section 3.3** **Payment and Performance.** Grantor shall pay the Indebtedness when due under the Loan Documents and shall perform the Obligations in full when they are required to be performed.

**Section 3.4** **Replacement of Fixtures and Personalty.** Grantor shall not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements, unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is obsolete and is replaced by an article of equal or better suitability and value, owned by Grantor subject to the liens and security interests of this Deed of Trust and the other Loan Documents, and free and clear of any other lien or security interest except such as may be first approved in writing by Beneficiary.

**Section 3.5** **Maintenance of Rights of Way, Easements, Licenses and Franchises.** Grantor shall maintain all rights of way, easements, grants, privileges, licenses, certificates, permits, entitlements and franchises necessary for the use of the Mortgaged Property and will not, without the prior consent of Beneficiary, consent to any public restriction (including any zoning ordinance) or private restriction as to the use of the Mortgaged Property, except for the



UNOFFICIAL

Permitted Exceptions (as defined in the Loan Agreement) and except as otherwise provided for in the Parking Development and Easement Agreement (as defined in the Loan Agreement), the Electric Services Agreement, and the Performance Agreements (as defined in the Loan Agreement). Grantor shall comply with all restrictive covenants affecting the Mortgaged Property, and all zoning ordinances and other public or private restrictions as to the use of the Mortgaged Property.

**Section 3.6 __Inspection__.** Grantor shall permit Beneficiary and its agents, representatives and employees to inspect the Mortgaged Property and conduct such environmental and engineering studies as Beneficiary may require, provided that such inspections and studies shall not materially interfere with the use and operation of the Mortgaged Property.

**Section 3.7 __Notices by Governmental Authority, Tenant, Fire and Casualty Losses, Etc__.** Grantor shall timely comply with and promptly furnish to Beneficiary true and complete copies of any official notice or claim by any Governmental Authority or any Tenants under Leases pertaining to the Mortgaged Property. Grantor shall immediately notify Beneficiary of any fire or other casualty or any notice of taking or eminent domain action or proceeding affecting the Mortgaged Property.

**Section 3.8 __Condemnation Awards and Insurance Proceeds__.**

(a) **__Condemnation Awards__.** Grantor assigns all awards and compensation for any condemnation or other taking, or any purchase in lieu thereof, to Beneficiary and authorizes Beneficiary to collect and receive such awards and compensation and to give proper receipts and acquittances therefor, and Beneficiary may apply the same to the Indebtedness and Obligations secured hereby in accordance with Section 4.8 below.

(b) **__Insurance Proceeds__.** Grantor assigns all insurance proceeds resulting from a Casualty to Beneficiary and authorizes Beneficiary to collect and receive such proceeds in accordance with the terms hereof:

(i) If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (a "Casualty"), Grantor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, Grantor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be completed in accordance with applicable law.

(ii) Beneficiary may apply any insurance proceeds it may receive to the payment of the Indebtedness or allow all or a portion of such proceeds to be used for the restoration of the Mortgaged Property.

UNOFFICIAL

(iii) Insurance proceeds applied to restoration will be disbursed on receipt of satisfactory plans and specifications, contracts and subcontracts, schedules, budgets, lien waivers and architects' certificates, and otherwise in accordance with prudent commercial construction lending practices for construction loan advances (including appropriate retainages to ensure that all work is completed in a workmanlike manner).

**Section 3.9 <u>Transfer or Encumbrance of Mortgaged Property</u>.**

(a) Without the prior written consent of Beneficiary,

(i) neither Grantor nor any other person or entity having an ownership or beneficial interest in Grantor shall (A) directly or indirectly sell, transfer, convey, mortgage, pledge, or assign any interest in the Mortgaged Property or any part thereof (including any partnership, membership, or any other ownership interest in Grantor); (B) further encumber, alienate, grant a lien or grant any other interest in the Mortgaged Property or any part thereof (including any partnership, membership, or other ownership interest in Grantor), whether voluntarily or involuntarily; or (C) enter into any easement or other agreement granting rights in or restricting the use or development of the Mortgaged Property except as provided for in the Parking Development and Easement Agreement (as defined in the Loan Agreement) and the Incentive Agreements, and except for the electric easement required to be granted by Grantor to CoServ pursuant to Section 8 of the Electric Services Agreement;

(ii) no new general partner, manager, member, or limited partner having the ability to control the affairs of Grantor shall be admitted to or created in Grantor (nor shall any existing general partner, manager or member or controlling limited partner withdraw from Grantor), and no change in Grantor's organizational documents relating to control over Grantor and/or the Mortgaged Property shall be effected; and

(iii) no transfer of any ownership interest in Grantor shall be effected.

(b) As used in this Section 3.9, "transfer" shall include (i) an installment sales agreement wherein Grantor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Grantor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Grantor's right, title and interest in and to any Leases or any Rents; (iii) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any partnership interest in any member or manager in Grantor that is a partnership; (iv) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any membership interest of any member or manager in Grantor that is a

UNOFFICIAL

limited liability company; (v) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any voting stock in any member or manager in Grantor that is a corporation; (vi) the sale, transfer, conveyance, mortgage, pledge, or assignment of any membership interest in any member or manager of Grantor that is a limited liability company; and (vii) the sale, transfer, conveyance, mortgage, pledge, or assignment of any partnership interest in any member or manager of Grantor that is a limited partnership. "Transfer" is specifically intended to include any pledge or assignment, directly or indirectly, of an ownership interest in Grantor or its general partner, member, or limited partner for purposes of securing so-called "mezzanine" indebtedness to such transferor.

(c) Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Indebtedness immediately due and payable upon Grantor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Beneficiary's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Beneficiary has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d) Beneficiary's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any interest in Grantor shall not be deemed to be a waiver of Beneficiary's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property made in contravention of this paragraph shall be null and void and of no force and effect.

**Section 3.10** **Insurance.** Unless waived in writing by Beneficiary, Grantor shall maintain in full force until full payment of the Loan such insurance on the Mortgaged Property as is satisfactory in all respects to Beneficiary, including, without limitation:

(a) Commercial general liability insurance covering Grantor, in such amounts as Beneficiary may reasonably require, but in any event not less than One Million and No/100 Dollars ($1,000,000.00) bodily injury and/or property damage liability per occurrence.

Beneficiary reserves the right herein, when it reasonably deems necessary, to require additional physical damage hazard insurance such as, but not limited to: (a) collapse due to faulty construction and/or error design and/or faulty workmanship; and (b) contingent liability from the operation of any building laws pertaining to non-conforming property.

Casualty and business interruption or rental insurance policies shall name Beneficiary as mortgagee under New York (or equivalent, in other areas) long form noncontributory



UNOFFICIAL

endorsement and evidenced by the delivery of the original or certified copy of the policy (or insurance certificate) to Beneficiary. Liability and worker's compensation insurance shall be evidenced by a certificate of insurance issued to Beneficiary. All insurance required herein shall be issued by responsible carriers reasonably acceptable to Beneficiary and guarantee at least fifteen (15) days' prior written notice to Beneficiary of cancellation, non-renewal or material change. **TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO: (I) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT BENEFICIARY SPECIFIED; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT THE GRANTOR'S EXPENSE.**

**Section 3.11** **Notification of Adverse Changes**. Grantor shall promptly notify Beneficiary of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Grantor or would materially and adversely affect the value of the Mortgaged Property or any portion thereof.

**Section 3.12** **Indemnification**. **GRANTOR AGREES TO INDEMNIFY, DEFEND AND HOLD BENEFICIARY HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, CHARGES, ACTIONS, SUITS, PROCEEDINGS, LAWSUITS, OBLIGATIONS, LIABILITIES, FINES, PENALTIES, COSTS AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES INCURRED BY BENEFICIARY, ALLEGED BY OR IN FAVOR OF GRANTOR OR ANY PRINCIPAL, PARTNER, STOCKHOLDER, OFFICER, DIRECTOR, EMPLOYEE OR AGENT THEREOF, OR BY OR IN FAVOR OF ANY BROKER, REALTOR, AGENT OR OTHER PARTY CLAIMING BROKERAGE COMMISSIONS OR FINDER'S FEES IN CONNECTION WITH THE LOAN, OR IN CONNECTION WITH MAKING OR COLLECTING THE LOAN OR ENFORCING THE LOAN DOCUMENTS. GRANTOR SHALL FURTHER INDEMNIFY BENEFICIARY AND HOLD BENEFICIARY HARMLESS AGAINST ANY AND ALL LIABILITIES (INCLUDING ANY AND ALL TAXES AND SPECIAL ASSESSMENTS LEVIED AGAINST THE MORTGAGED PROPERTY OR ANY IMPROVEMENTS, FIXTURES, OR PERSONAL PROPERTY LOCATED THEREON), OBLIGATIONS, LOSSES, DAMAGES, PENALTIES, ACTIONS, JUDGMENTS, SUITS, CLAIMS, COSTS, EXPENSES, AND DISBURSEMENTS OF ANY KIND OR NATURE WHATSOEVER WHICH MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST BENEFICIARY, IN ANY WAY RELATING TO, OR ARISING OUT OF, THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREIN, OR THE CONSTRUCTION**



UNOFFICIAL

**AND/OR OPERATION OF THE MORTGAGED PROPERTY, TO THE EXTENT THAT ANY SUCH INDEMNIFIED LIABILITIES RESULT, DIRECTLY OR INDIRECTLY, FROM ANY CLAIMS MADE OR ACTIONS, SUITS, OR PROCEEDINGS COMMENCED BY OR ON BEHALF OF ANY PERSON OR ENTITY OTHER THAN BENEFICIARY. THE OBLIGATIONS AND PROVISIONS OF THIS PARAGRAPH SHALL CONTINUE AND REMAIN IN FULL FORCE AND EFFECT AFTER THE LOAN AND OTHER OBLIGATIONS OF GRANTOR UNDER THIS DEED OF TRUST AND UNDER THE OTHER LOAN DOCUMENTS HAVE BEEN PAID OR DISCHARGED IN FULL AND SHALL SURVIVE THE TERMINATION OF THIS DEED OF TRUST AND THE REPAYMENT OF THE LOAN. NOTWITHSTANDING ANYTHING CONTAINED IN THIS SECTION 3.12 TO THE CONTRARY, THE OBLIGATIONS AND INDEMNITIES CONTAINED HEREIN SHALL NOT APPLY TO CLAIMS, CHARGES, ACTIONS, SUITS, PROCEEDINGS, LAWSUITS, OBLIGATIONS, LIABILITIES, FINES, PENALTIES, COSTS AND EXPENSES CAUSED SOLELY BY BENEFICIARY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

**Section 3.13** __Payment of Taxes__. Grantor shall pay or cause to be paid before delinquent, all taxes and assessments of every character in respect of the Mortgaged Property, or any part thereof, and promptly thereafter deliver to Beneficiary evidence reasonably satisfactory to Beneficiary of the timely payment of such taxes and assessments. After payment of the taxes imposed on Grantor or the Mortgaged Property, Grantor may protest the imposition of such taxes, and any refund resulting from such tax protest shall be paid directly to Grantor. However, if an Event of Default has occurred and is continuing, Grantor shall direct the payment of any refund resulting from such tax protest to be paid directly to Beneficiary.

**Section 3.14** __Tax and Insurance Impounds__. Upon written notice to Grantor Beneficiary may establish a reserve account and Grantor shall deposit on the date of such notice and on each anniversary thereof, with respect to property taxes and assessments an amount sufficient as determined by Beneficiary to enable payment of one (1) full year of property taxes and assessments prior to their due date and with respect to insurance premiums, an amount sufficient as determined by Beneficiary to enable payment of one (1) full year of insurance premiums prior to their due date. Beneficiary may re-calculate the foregoing monthly amounts from time to time to assure that funds are reserved in amounts sufficient to enable the payment of property taxes and assessments and insurance premiums prior to their respective due dates). Beneficiary shall make payments of property taxes and assessments and insurance premiums out of such account before the same shall be delinquent to the extent that there are funds available therein and Beneficiary has received appropriate documentation to establish the amount(s) due and the due date(s) as and when provided above. Each of the reserve accounts described herein shall be a custodial account established by Beneficiary, shall not constitute a trust fund, and, to the extent permitted by law, may be commingled with other money held by Beneficiary or its servicer. Grantor acknowledges and agrees that such accounts are subject to the sole dominion, control and discretion of Beneficiary, its authorized agents or designees, subject to the terms hereof. Grantor shall not have the right to make any withdrawal from any such account.

UNOFFICIAL

Notwithstanding anything to the contrary contained herein, if an Event of Default has occurred, any amounts deposited into or remaining in any such account may be applied in any manner as Beneficiary may elect in Beneficiary's discretion (including, without limitation, to the payment of any of the Indebtedness). Grantor shall not be entitled to any earnings or interest on funds deposited into any of such accounts. If Beneficiary determines that any amounts paid by Grantor are insufficient for the payment of such taxes, assessments, levies, charges and/or insurance premiums, Beneficiary shall notify Grantor of the increased amounts required to pay all amounts when due, whereupon Grantor shall pay to Beneficiary within thirty (30) days thereafter the additional amount as stated in Beneficiary's notice. Upon an Event of Default, Beneficiary may apply all or any part of such deposits to the payment of any of the Indebtedness.

**Section 3.15 Hazardous Materials Representations and Warranties.**

(a) **Hazardous Materials.** The Land and Improvements are not and have not been a site for the use, generation, manufacture, storage, treatment, release, threatened release, discharge, disposal, transportation or presence of any oil, flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, including, without limitation, any substances which are "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under the Hazardous Materials Laws, as described below, and/or other applicable environmental laws, ordinances or regulations (collectively, the "Hazardous Materials").

(b) **Hazardous Materials Laws.** The Land and Improvements are in compliance with all laws, ordinances and regulations relating to Hazardous Materials ("Hazardous Materials Laws"), including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; and, all comparable state and local laws, laws of other jurisdictions or orders and regulations (including, without limitation, the Texas Water Code, the Texas Health & Safety Code and the Texas Solid Waste Disposal Act).

(c) **Hazardous Materials Claims.** There are no claims or actions ("Hazardous Materials Claims") pending or threatened against Grantor or the Mortgaged Property by any Governmental Authority or by any other person or entity relating to Hazardous Materials or pursuant to the Hazardous Materials Laws.

UNOFFICIAL

(d) **Storage Tanks.** No storage tanks (including, without limitation, petroleum or heating oil storage tanks), underground or above-ground, are present on or under the Land or have been on or under the Land.

**Section 3.16 Hazardous Materials Covenants.**

(a) **No Hazardous Activities.** Grantor shall not cause or permit the Land or Improvements to be used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials except in compliance with all applicable Hazardous Materials Laws.

(b) **Compliance.** Grantor shall comply and cause the Land and Improvements to comply with all Hazardous Materials Laws.

(c) **Notices.** Grantor shall promptly notify Beneficiary in writing of: (i) the discovery of any Hazardous Materials on, under or about the Land and Improvements; (ii) any knowledge by Grantor that the Land and Improvements do not comply with any Hazardous Materials Laws; (iii) any Hazardous Materials Claims; and (iv) any knowledge of Grantor with respect to the discovery of any occurrence or condition involving Hazardous Materials in, on or under the real property adjoining or in the vicinity of the Land.

(d) **Remedial Action.** In response to the presence of any Hazardous Materials on, under or about the Land or Improvements, Grantor shall immediately take, at Grantor's sole expense, all remedial action required by any Hazardous Materials Laws or any judgment, consent decree, settlement or compromise in respect to any Hazardous Materials Claims.

**Section 3.17 Covenants Regarding Leases.** Grantor shall (a) not enter into any Leases without the prior written consent of Beneficiary, (b) timely comply with the terms and provisions and fulfill all obligations of the landlord under each of such Leases, (c) not assign, transfer, pledge or mortgage any rentals under such Leases, (d) not terminate or cancel any such Leases without the prior written consent of Beneficiary, and (e) not modify or amend any of such Leases without the prior written consent of Beneficiary.

**Section 3.18 Compliance with Laws.** Grantor shall promptly comply with all governmental laws, ordinances and regulations applicable to the Mortgaged Property and Grantor's use and operation of the Mortgaged Property.

**Section 3.19 Maintenance of Mortgaged Property.** Grantor shall or shall cause the Tenants under the Leases to, at all times maintain, preserve and keep the Mortgaged Property in good repair and condition and from time to time make all necessary and proper repairs and

UNOFFICIAL

replacements and not commit or permit any waste on or of the Mortgaged Property and not do anything to the Mortgaged Property that may materially impair its value.

**Section 3.20** **Financial Statements.** In accordance with the terms of the Loan Agreement, Grantor shall furnish to Beneficiary and cause any guarantors to promptly furnish to Beneficiary such Financial Statements (as defined in the Loan Agreement) and reports relating to Grantor and each guarantor as Beneficiary may request.

**Section 3.21** **Costs and Expenses.** Grantor shall promptly pay Beneficiary upon demand all costs and expenses incurred by Beneficiary in connection with: (a) the preparation of this Deed of Trust and all other Loan Documents and the closing of the Loan and any amendment, supplement, or modification of, or any waiver or consent under or with respect to, any of the Loan Documents; and (b) the enforcement or satisfaction by Beneficiary of any of Grantor's obligations under this Deed of Trust or the other Loan Documents. For all purposes of this Deed of Trust, Beneficiary's costs and expenses shall include, without limitation, all appraisal fees, cost engineering and inspection fees, legal fees, environmental consultant fees and the cost to Beneficiary of any title insurance premiums and title surveys. Grantor recognizes and agrees that formal written appraisals of the Mortgaged Property by a licensed independent appraiser may be required by Beneficiary's internal procedures and/or federal regulatory reporting requirements on an annual and/or specialized basis and that Beneficiary may, at its option, require inspection of the Mortgaged Property.

**Section 3.22** **Third-Party Agreements; Management Fee.** Grantor shall not execute or enter into any agreement with any third party providing for management and operation of the Property and/or the Improvements without the prior written consent of Beneficiary except that Grantor may enter into a management agreement and/or development agreement with a related entity for certain pre-development activitied conducted on the Mortgaged Property. Grantor shall not terminate, replace or appoint any property manager or terminate or materially amend the management agreement for the Mortgaged Property without Beneficiary's prior written approval. Any change in ownership or control of the property manager shall be cause for Beneficiary to re-approve such property manager and management agreement. Each property manager shall hold and maintain all necessary licenses, certifications and permits required by law. Grantor shall fully perform all of its covenants, agreements and obligations under any management agreement.

**Section 3.23** **Anti-Terrorism Laws.**

(a) Without limiting the requirements of Section 3.18 hereof, Grantor has taken and shall continue to take until the Indebtedness is fully repaid and all Obligations are performed in full, such measures as are required by any and all Anti-Terrorism Laws to assure Beneficiary that the funds invested in Grantor and/or used to make payments of the Indebtedness and/or the Obligations are derived from (a) transactions and sources that do not violate any Anti-Terrorism Laws nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction from which they originated; and (b) permissible sources under Anti-Terrorism Laws or, to the extent such funds originate



UNOFFICIAL

outside the United States, under the laws of the jurisdiction from which they originated. If Beneficiary reasonably believes that Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties may have breached any of the representations, warranties or covenants set forth in this Deed of Trust or the other Loan Documents relating to any Anti-Terrorism Laws or the identity of any person or entity as a Prohibited Person, then, Beneficiary shall have the right, with or without notice to Grantor, to (1) notify the appropriate Governmental Authority and to take such action as such Governmental Authority or applicable Anti-Terrorism Law may direct; (2) withhold advances and segregate the assets constituting the Loan or any of Grantor's funds or assets deposited with or otherwise controlled by Beneficiary pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States Governmental Authority or court) or decline any prepayment or consent request; and/or (4) declare an Event of Default and immediately accelerate the Indebtedness in connection therewith. Grantor agrees that none of Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties will assert any claim (and hereby waives, for itself and on behalf of the foregoing parties any claim it may now or hereafter have) against Beneficiary or any of its affiliates, successors, assigns, representatives or agents for any form of damages as a result of the foregoing actions, regardless of whether or not Beneficiary's reasonable belief is ultimately demonstrated to be accurate or not.

(b) Grantor acknowledges and understands that Beneficiary may be required, and hereby authorizes Beneficiary to obtain, verify and record information that identifies Grantor, Guarantor, Constituent Party and any other affiliate or related person or entity to the foregoing parties, which information may include the names and addresses of such parties and other information that will allow Beneficiary to identify such parties in accordance with the requirements of certain Anti-Terrorism Laws.

(c) None of Grantor, Guarantor, Constituent Party nor any person owning any interest in Grantor, Guarantor or Constituent Party (i) is a Prohibited Person, or (ii) has violated any Anti-Terrorism Laws.

(d) None of the funds of Grantor, any Constituent Party or Guarantor have been derived from any activity in violation of or prohibited by any Anti-Terrorism Laws.

(e) If at any time Grantor obtains knowledge that Grantor, any Constituent Party or Guarantor is, or becomes, a Prohibited Person or are indicted, arraigned or custodially detained on charges or allegations involving or relating to any Anti-Terrorism Laws, Grantor shall immediately notify Beneficiary of same.

(f) Grantor shall promptly deliver, or shall cause any Guarantor or Constituent Party to promptly deliver, to Beneficiary any reasonable evidence (including any requested certifications) confirming compliance by all such parties with all Anti-

UNOFFICIAL

Terrorism Laws and confirming that none of such parties (nor any person owning an interest in Grantor, Guarantor or any Constituent Party) is a Prohibited Person.

## ARTICLE 4
## DEFAULT AND FORECLOSURE

**Section 4.1 Events of Default.** The term "Event of Default," as used herein, shall mean the occurrence of any one or more of the following events (including the passage of time, if any, specified therefor) (provided that if any such event occurs and Beneficiary subsequently agrees in writing that it will not exercise any rights hereunder as a result thereof, the occurrence of such event shall no longer be deemed an "Event of Default" hereunder insofar as the state of facts giving rise to such event is concerned, but the same shall not operate as or be deemed to be a waiver with respect to any identical or similar state of facts in existence or occurring theretofore or thereafter):

(a) the occurrence of an "Event of Default" as that term is defined in the Loan Agreement;

(b) the failure or refusal of Grantor to pay when due the Indebtedness or any part thereof, and Grantor fails to cure such default in payment within ten (10) days after written notice of same shall have been sent to Grantor; provided, however, Beneficiary shall not be required to furnish such notice more than two (2) times in any calendar year;

(c) the failure or refusal of Grantor punctually and properly to perform, observe, and comply with any covenant, agreement or condition (which does not otherwise include the payment of the Indebtedness covered by Section 4.1(b) above) contained herein, or in any other Loan Document, and Grantor fails to remedy such breach of any such obligation within thirty (30) days after written notice of same shall have been sent to Grantor;

(d) the failure for any reason of the liens created by this Deed of Trust to constitute the only first and prior liens against the entire Mortgaged Property;

(g) a "transfer" in violation of Section 3.9 hereof; or

(h) condemnation of a sufficient part of the Mortgaged Property as to materially affect Grantor's ability to perform its obligations hereunder or the value of the Mortgaged Property.

**Section 4.2 Remedies.** If an Event of Default occurs, Beneficiary may, at Beneficiary's election, and by or through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses:

UNOFFICIAL

(a) **Acceleration.** Declare the Indebtedness to be immediately due and payable, without further notice, presentment, protest, notice of intent to accelerate, notice of acceleration, demand or action of any nature whatsoever (each of which hereby is expressly waived by Grantor), whereupon the same shall become immediately due and payable.

(b) **Entry on Mortgaged Property.** Enter the Mortgaged Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Grantor remains in possession of the Mortgaged Property after an Event of Default and without Beneficiary's prior written consent, Beneficiary may invoke any legal remedies to dispossess Grantor.

(c) **Operation of Mortgaged Property.** Hold, lease, develop, manage, operate or otherwise use the Mortgaged Property upon such terms and conditions as Beneficiary may deem reasonable under the circumstances (making such repairs, alterations, additions and improvements and taking other actions, from time to time, as Beneficiary deems necessary or desirable), and apply all Rents and other amounts collected by Beneficiary or Trustee in connection therewith in accordance with the provisions of Section 4.8.

(d) **Foreclosure and Sale.** Sell or offer for sale the Mortgaged Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction. Such sale shall be made in accordance with the applicable provisions of Section 51.002 of the Texas Property Code, as amended, or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust relating to the sale of real estate or by Chapter 9 of the UCC relating to the sale of collateral after default by a debtor (as such laws now exist or may be hereafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. At any such sale (i) whether made under the power herein contained, the UCC, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to be physically present, or to have constructive possession of, the Mortgaged Property (Grantor shall deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if Trustee had been actually present and delivered to purchaser at such sale, (ii) each instrument of conveyance executed by Trustee shall contain a special warranty of title, binding upon Grantor, (iii) each recital contained in any instrument of conveyance made by Trustee shall be prima facie evidence of the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Indebtedness, advertisement and conduct of such sale in the manner provided herein and otherwise by law, and appointment of any successor Trustee hereunder, (iv) any prerequisites to the validity of

UNOFFICIAL

such sale shall be conclusively presumed to have been performed, (v) the receipt of Trustee or other party making the sale shall be a sufficient discharge to the purchaser or purchasers for his or their purchase money and no such purchaser or purchasers, or his or their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or non-application thereof, and (vi) to the fullest extent permitted by law, Grantor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against Grantor, and against all other persons claiming or to claim the property sold or any part thereof, by, through or under Grantor. Beneficiary may be a purchaser at such sale and if Beneficiary is the highest bidder, may credit the portion of the purchase price that would be distributed to Beneficiary against the Indebtedness in lieu of paying cash.

(e) **Receiver.** Make application to a court of competent jurisdiction for, and obtain from such court as a matter of strict right and without notice to Grantor or regard to the adequacy of the Mortgaged Property for the repayment of the Indebtedness, the appointment of a receiver of the Mortgaged Property, and Grantor irrevocably consents to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Section 4.8.

(f) **UCC.** Exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the personal property or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the personal property, and (ii) request Grantor at its expense to assemble the personal property and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Any notice of sale, disposition or other intended action by Beneficiary with respect to the personal property sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Grantor.

(g) **Other.** Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity (including an action for specific performance of any covenant contained in the Loan Documents, or a judgment on the Note either before, during or after any proceeding to enforce this Deed of Trust). Beneficiary shall have the right at any time and from time to time, without notice to Grantor (any such notice being expressly waived), to set-off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held, and any other indebtedness at any time owing by Beneficiary to or for the credit or the account of Grantor, against any and all of the indebtedness of Grantor evidenced by the Note or the Loan Agreement and/or secured by the Deed of Trust, irrespective of whether



UNOFFICIAL

or not Beneficiary shall have made any demand under the Note or any other Loan Document and although such indebtedness may be unmatured. Beneficiary agrees to notify Grantor promptly after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of Beneficiary under this subsection are in addition to any other rights and remedies (including, without limitation, other rights of set-off) which Beneficiary may have under the Note or the other Loan Documents or otherwise.

**Section 4.3 Separate Sales.** The Mortgaged Property may be sold in one or more parcels and in such manner and order as Trustee, in his sole discretion, may elect; the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

**Section 4.4 Remedies Cumulative, Concurrent and Nonexclusive.** Beneficiary shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity (including the UCC), which rights (a) shall be cumulative and concurrent, (b) may be pursued separately, successively or concurrently against Grantor or others obligated under the Note and the other Loan Documents, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Beneficiary, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Beneficiary in the enforcement of any rights, remedies or recourses under the Loan Documents or otherwise at law or equity shall be deemed to cure any Event of Default.

**Section 4.5 Release of and/or Resort to Collateral.** Beneficiary may release, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Property, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Mortgaged Property.

**Section 4.6 Waiver of Redemption, Notice and Marshalling of Assets.** To the fullest extent permitted by law, Grantor hereby irrevocably and unconditionally waives and releases (a) all benefit that might accrue to Grantor by virtue of any present or future statute of limitations or law or judicial decision exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (b) all notices of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (c) any right to a marshalling of assets or a sale in inverse order of alienation.

**Section 4.7 Discontinuance of Proceedings.** If Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Beneficiary shall have the unqualified right to

UNOFFICIAL

do so and, in such an event, Grantor and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Obligations, the Loan Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Beneficiary thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

**Section 4.8** **Application of Proceeds.** The proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, management, operation or other use of the Mortgaged Property, shall be applied by Beneficiary or Trustee (or the receiver, if one is appointed) in the following order unless otherwise required by applicable law:

(a) to the payment of the reasonable costs and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation (i) Trustee's and receiver's fees and expenses, (ii) court costs, (iii) attorneys' and accountants' fees and expenses, (iv) costs of advertisement, (v) insurance premiums and (vi) the payment of all ground rent, real estate taxes and assessments, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold;

(b) to the payment of all amounts (including interest), other than the unpaid principal balance of the Note and accrued but unpaid interest, which may be due to Beneficiary under the Loan Documents;

(c) to the payment of the Indebtedness and performance of the Obligations in such manner and order of preference as Beneficiary in its sole discretion may determine; and

(d) the balance, if any, to the payment of the persons legally entitled thereto.

**Section 4.9** **Occupancy After Foreclosure.** The purchaser at any foreclosure sale pursuant to Section 4.2(d) shall become the legal owner of the Mortgaged Property. All occupants of the Mortgaged Property shall, at the option of such purchaser, become tenants of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand. It shall not be necessary for the purchaser at said sale to bring any action for possession of the Mortgaged Property other than the statutory action of forcible detainer in any justice court having jurisdiction over the Mortgaged Property.

**Section 4.10** **Additional Advances and Disbursements; Costs of Enforcement.**

(a) If any Event of Default exists, Beneficiary shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Grantor. All sums advanced and expenses incurred at any time by Beneficiary under this Section 4.10, or

UNOFFICIAL

otherwise under this Deed of Trust or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the Default Rate (as defined in the Note), and all such sums, together with interest thereon, shall be secured by this Deed of Trust.

(b) Grantor shall pay all expenses (including attorneys' fees and expenses) of or incidental to the perfection and enforcement of this Deed of Trust and the other Loan Documents, or the enforcement, compromise or settlement of the Indebtedness or any claim under this Deed of Trust and the other Loan Documents, and for the curing thereof, or for defending or asserting the rights and claims of Beneficiary in respect thereof, by litigation or otherwise.

**Section 4.11 __No Mortgagee in Possession__.** Neither the enforcement of any of the remedies under this Article 4, the assignment of the Rents and Leases under Article 5, the security interests under Article 6, nor any other remedies afforded to Beneficiary under the Loan Documents, at law or in equity shall cause Beneficiary to be deemed or construed to be a mortgagee in possession of the Mortgaged Property, to obligate Beneficiary to lease the Mortgaged Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

**Section 4.12 __Actions and Proceedings__.** Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Grantor, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Mortgaged Property.

## ARTICLE 5
## ASSIGNMENT OF RENTS AND LEASES

**Section 5.1 __Assignment__.** Grantor does hereby assign to Beneficiary all of Grantor's right, title and interest in, to and under: (a) all Leases of the Mortgaged Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Mortgaged Property or any portion thereof, whether now existing or entered into after the date hereof and all amounts payable and all rights and benefits accruing to Grantor; and (b) the Rents. Without in any way limiting or restricting any of Beneficiary's other rights, benefits or privileges hereunder, Grantor and Beneficiary hereby expressly agree that Beneficiary shall be entitled to and all rights, benefits or privileges provided for in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, as amended (the "TAR"). Upon the occurrence of an Event of Default, Beneficiary shall have all of the rights granted pursuant to the Loan Documents and the TAR.

**Section 5.2 __Effect of Assignment__.** The foregoing assignment shall not cause Beneficiary to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Mortgaged Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; or

UNOFFICIAL

(c) responsible or liable for any waste committed on the Mortgaged Property by the Tenants under any of the Leases or any other parties; for any dangerous or defective condition of the Mortgaged Property; or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any Tenant, licensee, employee, invitee or other person. Beneficiary and Trustee shall not directly or indirectly be liable to Grantor or any other person as a consequence of: (i) the exercise or failure to exercise by Beneficiary or Trustee, or any of their respective employees, agents, contractors or subcontractors, any of the rights, remedies or powers granted to Beneficiary or Trustee hereunder; or (ii) the failure or refusal of Beneficiary to perform or discharge any obligation, duty or liability of Grantor arising under the Leases.

## ARTICLE 6
## SECURITY AGREEMENT

**Section 6.1** **Security Interest.** This Deed of Trust constitutes a "Security Agreement" on personal property within the meaning of the UCC and other applicable law with respect to the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements. To this end, Grantor grants to Trustee and Beneficiary, a first and prior security interest in the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements and all other Mortgaged Property which is personal property to secure the payment of the Indebtedness and performance of the Obligations, and agrees that Beneficiary shall have all the rights and remedies of a secured party under the UCC with respect to such property. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements sent to Grantor at least ten (10) days prior to any action under the UCC shall constitute reasonable notice to Grantor.

**Section 6.2** **Financing Statements.** Grantor hereby authorizes Beneficiary to file, in form and substance satisfactory to Beneficiary, such financing statements and such further assurances as Beneficiary may, from time to time, consider necessary to create, perfect and preserve Beneficiary's security interest hereunder and Beneficiary may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest. Grantor's chief executive office is in the State at the address set forth in the first paragraph of this Deed of Trust.

**Section 6.3** **No Obligation of Trustee or Beneficiary.** The security interest herein granted shall in no event cause Trustee or Beneficiary to be deemed or construed as a mortgagee in possession of the Mortgaged Property, to obligate Trustee or Beneficiary to lease the Mortgaged Property or attempt to do so, or to take any action, incur any expense or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

**Section 6.4** **Fixture Filing.** This Deed of Trust shall also constitute a "fixture filing" for the purposes of the UCC against all of the Mortgaged Property which is or is to become fixtures. Information concerning the security interest herein granted may be obtained at the



UNOFFICIAL

addresses of Debtor (Grantor) and Secured Party (Beneficiary) as set forth in the first paragraph of this Deed of Trust.

**Section 6.5** **Continuing Effect Notwithstanding Termination of Deed of Trust.** It is expressly agreed that until the security interest granted hereby has been released in writing by Beneficiary, this Deed of Trust shall remain fully effective as a security agreement, notwithstanding that the lien on real property that is created by this Deed of Trust may be extinguished or released, by foreclosure of this Deed of Trust or otherwise.

## ARTICLE 7
## CONCERNING THE TRUSTEE

**Section 7.1** **Certain Rights.** With the approval of Beneficiary, Trustee shall have the right to select, employ and consult with counsel. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by him in the performance of his duties hereunder. Grantor shall, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and indemnify, defend and save Trustee harmless against, all liability and reasonable expenses which may be incurred by him in the performance of his duties. Grantor's obligations under this Section 7.1 shall not be reduced or impaired by principles of comparative or contributory negligence.

**Section 7.2** **Retention of Money.** All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law), and Trustee shall be under no liability for interest on any moneys received by him hereunder.

**Section 7.3** **Successor Trustees.** If Trustee or any successor Trustee shall die, resign or become disqualified from acting in the execution of this trust, or Beneficiary shall desire to appoint a substitute Trustee, Beneficiary shall have full power to appoint one or more substitute Trustees and, if preferred, several substitute Trustees in succession who shall succeed to all the estates, rights, powers and duties of Trustee. Such appointment may be executed by any authorized agent of Beneficiary, and as so executed, such appointment shall be conclusively presumed to be executed with authority, valid and sufficient, without further proof of any action.

**Section 7.4** **Perfection of Appointment.** Should any deed, conveyance or instrument of any nature be required from Grantor by any successor Trustee to more fully and certainly vest in and confirm to such successor Trustee such estates, rights, powers and duties, then, upon request by such Trustee, all such deeds, conveyances and instruments shall be made, executed, acknowledged and delivered and shall be caused to be recorded and/or filed by Grantor.

UNOFFICIAL

## ARTICLE 8
## MISCELLANEOUS

**Section 8.1 Limitation on Interest.** It is the intention of the parties hereto to conform strictly to applicable usury laws. Accordingly, all agreements between Grantor and Beneficiary with respect to the Loan are hereby expressly limited so that in no event, whether by reason of acceleration of maturity or otherwise, shall the amount paid or agreed to be paid to Beneficiary or charged by Beneficiary for the use, forbearance or detention of the money to be lent hereunder or otherwise, exceed the maximum amount allowed by law. If the Loan would be usurious under applicable law (including the laws of the state where the Mortgaged Property is located and the laws of the United States of America), then, notwithstanding anything to the contrary in the Loan Documents: (a) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, taken, reserved, charged or received under the Loan Documents shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the Indebtedness; and (b) if maturity is accelerated by reason of an election by Beneficiary, or in the event of any prepayment, then any consideration which constitutes interest may never include more than the maximum amount allowed by applicable law. In such case, excess interest, if any, provided for in the Loan Documents or otherwise, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread from the date of advance until payment in full so that the actual rate of interest is uniform through the term hereof. If such amortization, proration, allocation and spreading is not permitted under applicable law, then such excess interest shall be canceled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited on the Indebtedness. The Loan Documents are contracts made under and shall be construed in accordance with and governed by the laws of the State, except that if at any time the laws of the United States of America permit Beneficiary to contract for, take, reserve, charge or receive a higher rate of interest than is allowed by the laws of the State (whether such federal laws directly so provide or refer to the law of any state), then such federal laws shall to such extent govern as to the rate of interest which Beneficiary may contract for, take, reserve, charge or receive under the Loan Documents.

**Section 8.2 Notices.** Any notice, consent or other communication required or permitted to be given under any of the Loan Documents to Beneficiary or Grantor must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

| | |
|---|---|
| If to Beneficiary: | Texas Republic Bank, N.A.<br>Attention: David L. Baty<br>2595 Preston Road<br>Frisco, Texas 75034 |
| If to Grantor: | FHC Acquisition, LLC, a Texas limited liability company<br>1755 Wittington Place, Suite 340<br>Dallas, Texas 75234 |

UNOFFICIAL

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 8.2. Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

**Section 8.3** **Covenants Running with the Land.** All Obligations contained in this Deed of Trust are intended by Grantor, Beneficiary and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property. As used herein, "Grantor" shall refer to the party named in the first paragraph of this Deed of Trust and to any subsequent owner of all or any portion of the Mortgaged Property (without in any way implying that Beneficiary has or will consent to any such conveyance or transfer of the Mortgaged Property). All persons or entities who may have or acquire an interest in the Mortgaged Property shall be deemed to have notice of, and be bound by, the terms of the Loan Documents; however, no such party shall be entitled to any rights thereunder without the prior written consent of Beneficiary.

**Section 8.4** **Attorney-in-Fact.** Grantor hereby irrevocably appoints Beneficiary and its successors and assigns, as its attorney-in-fact, which agency is coupled with an interest, (a) to execute and/or record any notices of completion, cessation of labor or any other notices that Beneficiary deems appropriate to protect Beneficiary's interest, (b) upon the issuance of a deed pursuant to the foreclosure of this Deed of Trust or the delivery of a deed in lieu of foreclosure, to execute all instruments of assignment, conveyance or further assurance with respect to the Leases, Rents, Personalty, Fixtures, Plans and Property Agreements in favor of the grantee of any such deed and as may be necessary or desirable for such purpose, (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Beneficiary's security interests and rights in or to any of the collateral, and (d) to perform any obligation of Grantor hereunder; however: (i) Beneficiary shall not under any circumstances be obligated to perform any obligation of Grantor; (ii) any sums advanced by Beneficiary in such performance shall be added to and included in the Indebtedness and shall bear interest at the Default Rate; (iii) Beneficiary as such attorney-in-fact shall only be accountable for such funds as are actually received by Beneficiary; and (iv) Beneficiary shall not be liable to Grantor or any other person or entity for any failure to take any action which it is empowered to take under this Section.

**Section 8.5** **Successors and Assigns.** This Deed of Trust shall be binding upon and inure to the benefit of Beneficiary and Grantor and their respective successors and assigns. Grantor shall not, without the prior written consent of Beneficiary, assign any rights, duties or obligations hereunder.

**Section 8.6** **No Waiver.** Any failure by Trustee or Beneficiary to insist upon strict performance of any of the terms, provisions or conditions of the Loan Documents shall not be deemed to be a waiver of same, and Trustee or Beneficiary shall have the right at any time to insist upon strict performance of all of such terms, provisions and conditions.

UNOFFICIAL

**Section 8.7** **Subrogation.** To the extent proceeds of the Note have been used to extinguish, extend or renew any indebtedness against the Mortgaged Property, then Beneficiary shall be subrogated to all of the rights, liens and interests existing against the Mortgaged Property and held by the holder of such indebtedness and such former rights, liens and interests, if any, are not waived, but are continued in full force and effect in favor of Beneficiary.

**Section 8.8** **Waiver of Stay, Moratorium and Similar Rights.** Grantor agrees, to the full extent that it may lawfully do so, that it will not at any time insist upon or plead or in any way take advantage of any appraisement, valuation, stay, marshalling of assets, extension, redemption or moratorium law now or hereafter in force and effect so as to prevent or hinder the enforcement of the provisions of this Deed of Trust or the indebtedness secured hereby, or any agreement between Grantor and Beneficiary or any rights or remedies of Beneficiary.

**Section 8.9** **Governing Law.** THIS DEED OF TRUST SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.

**Section 8.10** **Headings.** The Article, Section and Subsection titles hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Sections or Subsections.

**Section 8.11** **Entire Agreement.** This Deed of Trust and the other Loan Documents embody the entire agreement and understanding between Beneficiary and Grantor and supersede all prior agreements and understandings between such parties relating to the subject matter hereof and thereof. Accordingly, the Loan Documents may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**Section 8.12** **Counterparts.** This Deed of Trust may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

**Section 8.13** **Waivers.** In the event the Mortgaged Property or any part thereof is foreclosed upon in any manner, and a deficiency is created as a result of the purchase price at such foreclosure sale, Grantor does hereby irrevocably waive all rights to claim any offset against the deficiency as provided in Section 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

**Section 8.14** **Additional Waivers. GRANTOR WAIVES ANY RIGHTS GRANTOR HAS UNDER, OR ANY REQUIREMENT IMPOSED BY, (I) CHAPTER 43 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE, AS AMENDED, (II) SECTION 17.001 OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED, (III) RULE 31 OF THE TEXAS RULES OF CIVIL PROCEDURE, AS AMENDED.**

UNOFFICIAL

**Section 8.15** __WAIVER OF JURY TRIAL__. **TO THE MAXIMUM EXTENT PERMITTED BY LAW, GRANTOR AND BENEFICIARY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS DEED OF TRUST, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS HEREUNDER OR IN ANY WAY RELATING TO THE LOAN OR THE MORTGAGED PROPERTY (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS DEED OF TRUST, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS DEED OF TRUST WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR BENEFICIARY TO MAKE THE LOAN.**

**Section 8.16** __**Vendor's Lien**__. A portion of the proceeds of the loan evidenced by the Note was advanced as purchase money for the Mortgaged Property, for which a coextensive and cumulative vendor's lien is retained in favor of Beneficiary in Deed dated as of the Date Hereof from IGO-USA LP, a Texas limited partnership, to Grantor.

[REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

UNOFFICIAL

EXECUTED as of the date first above written.

FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

By:____________________
Timothy Barton, President

STATE OF TEXAS §
§
COUNTY OF Dallas §

This instrument was acknowledged before me this 30 day of January 2020, by Timothy Barton, President of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of FHC Acquisition, LLC, a Texas limited liability company, on behalf of said limited liability companies.

____________________
Notary Public

Bella D Khusal
Printed name of Notary

My Commission Expires:
09/24/2022

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
02/03/2020 07:58:34 AM
$130.00 NPRECELLA
20200203000144950

UNOFFICIAL